**EXHIBIT A**

# CREW | citizens for responsibility and ethics in washington

February 2, 2006

United States Secret Service
Freedom of Information and Privacy Acts Branch
245 Murray Drive
Building 410
Washington, D.C. 20223

**Re: Freedom of Information Act Request**

Dear Sir/Madam:

Citizens for Ethics and Responsibility in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and U.S. Department of Homeland Security ("DHS") regulations, 6 CFR part 5.

This request is for all records relating to any visit that any and all of the following individuals made to the White House or the residence of the Vice President from January 1, 2001, to the present. As used herein, the term "White House" includes, but is not limited to, any office within the Executive Office of the President, the residence of the President, the Old and New Executive Office Buildings, and any other office or space on the grounds of the White House. Specifically, we seek any record of visits to the White House or the Vice President's residence by the following individuals:

Jack Abramoff
Michael Scanlon
Neil Volz
Tony Rudy
Shawn Vassell
Kevin Ring
Edwin Buckham
Patrick Pizzella

We seek records of any and all kind, including electronic records, audiotapes, videotapes, photographs, and computer print-outs. Our request includes any telephone messages, voice mail messages, and daily agenda and calendars.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents, as required under <u>Vaughn v. Rosen,</u> 484 F.2d 820 (D.C. Cir. 1973), *cert. denied,* 415 U.S.

11 DuPont Circle, N.W., 2nd Floor • Washington, D.C. 20036
(o) 202.588.5565l(c) 202.841.5096

977 (1972). As you are aware, a <u>Vaughn</u> index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 959 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable, non-exempt portions of the requested records. *See* 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments and that those non-exempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed through the document. <u>Mead Data Central v. U.S. Dep't of the Air Force</u>, 455 F.2d 242, 261 (D.C. Cir. 1977). Claims of non-segregability must be made with the same detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### <u>Request for Expedition</u>

Pursuant to 5 U.S.C. §552(a)(6)(E)(i) and DHS regulations, 6 CFR §5.5(d), CREW requests that the Secret Service expedite the processing of this request in light of the compelling need for the requested information. CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, <u>www.citizensforethics.org</u>, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist who recently pled guilty to several counts of criminal misconduct, and the many powerful individuals linked to Mr. Abramoff, including public officials. As another example, CREW published a report, *Addicted to Porn: How Members of Congress Benefit fro Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. And CREW publishes on its website the numerous ethics complaints it has prepared and that are often based in part on information CREW acquired through the FOIA. It is CREW's hope that by disseminating this type of information, the public will be better able to evaluate the actions of our public officials, making those officials more accountable for their actions and thereby granting the public a more effective voice, including in the voting booth.

As with the Electronic Privacy Information Center and the ACLU, two organizations that the courts have found satisfy the criteria necessary to qualify for

expedition,[1] CREW "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience." ACLU, 321 F.Supp.2d at 30 n.5 (quotation omitted).

There is a particular urgency in informing the public about whether the President, the Vice President, and/or their staff met with Jack Abramoff and the other individuals associated with Mr. Abramoff and to whom this FOIA request pertains. There has been endless speculation in countless media reports about what relationship Mr. Abramoff and his associates had with the White House and, specifically, the President. The public has a need to know whether and when meetings between them took place to evaluate the nature of this association and how it may have influenced the President and his staff in the exercise of his authority.

Pursuant to 6 CFR §5.5(d)(3), I hereby certify that the bases for CREW's request for expedition, as set forth herein, are true and correct to the best of my knowledge and belief. Accordingly, CREW requests that the Secret Service expedite its processing of this FOIA request.

## Fee Waiver Request

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contributed to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes, pursuant to 5 U.S.C. §552(a)(4)(A)(iii). *See, e.g.*, McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, the requested records are likely to contribute to the public's understanding of the individual or individuals that influence, or attempt to influence, the President in the exercise of his authority.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to protecting the citizens' right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze

---

[1] See ACLU v. Dep't of Justice, 321 F.Supp.2d 24, 30 (D.D.C. 2004), EPIC v. Dep't of Defense, 241 F.Supp.2d 5, 11 (D.D.C. 2003).

the information responsive to this request and intends to share its analysis with the public, either through memoranda, reports, or press releases.

Under these circumstances, CREW satisfied fully the criteria for a fee waiver.

If you have any questions about this request, or foresee any problems in releasing fully the requested records on an expedited basis, please call Anne Weismann at (202) 589-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such a determination. Please send the requested documents to Anne Weismann, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Sincerely,

ANNE L. WEISMANN
Chief Counsel
Citizens for Responsibility and Ethics
 in Washington

4

# EXHIBIT B



**DEPARTMENT OF HOMELAND SECURITY**
UNITED STATES SECRET SERVICE
WASHINGTON, D.C. 20223

Freedom of Information and Privacy Acts Branch
245 Murray Drive
Building 410
Washington, D.C. 20223

MAR 1  2006

CREW
11 DuPont Circle, N.W., 2nd Floor
Washington, DC 20036
Attn: Anne L. Weismann, Chief Counsel

File Number:  20060106 - 20060113

Dear Requester:

This letter is intended to acknowledge the receipt of your recent Freedom of Information/Privacy Acts request received by the United States Secret Service on February 16, 2006, for information pertaining to the following:

File No. 20060106 - All records relating to any visit that Jack Abramoff made to the White House or the residence of the Vice President from January 1, 2001 to present,

File No. 20060107 - All records relating to any visit that Michael Scanlon to the White House or the residence of the Vice President from January 1, 2001 to present,

File No. 20060108 - All records relating to any visit that Neil Volz to the White House or the residence of the Vice President from January 1, 2001 to present,

File No. 20060109 - All records relating to any visit that Tony Rudy to the White House or the residence of the Vice President from January 1, 2001 to present,

File No. 20060110 -All records relating to any visit that Shawn Vassell to the White House or the residence of the Vice President from January 1, 2001 to present,

File No. 20060111 - All records relating to any visit that Kevin Ring to the White House or the residence of the Vice President from January 1, 2001 to present,

File No. 20060112 - All records relating to any visit that Edwin Buckham to the White House or the residence of the Vice President from January 1, 2001 to present; and

File No. 20060113 - All records relating to any visit that Patrick Pizzella to the White House or the residence of the Vice President from January 1, 2001 to present.

A search for files responsive to your request is being conducted. When the results of the search are known, you will be notified.

Please use the file number indicated above in all future correspondence with this office.

We solicit your cooperation and assure you that the search will be conducted as expeditiously as possible.

Sincerely,

Kathy J. Lyerly
Special Agent In Charge
Freedom of Information &
Privacy Acts Officer

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

```
JUDICIAL WATCH,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )
                                         )     Civil Action No. 06-310 (JGP)
UNITED STATES SECRET SERVICE,            )
                                         )
            Defendant.                   )
                                         )
```

### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States Secret Service

respectfully moves the Court to dismiss this case for lack of subject matter jurisdiction.  The

accompanying memorandum sets forth the grounds for this motion.


Dated: May 16, 2006                      Respectfully submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General

                                         KENNETH L. WAINSTEIN
                                         United States Attorney

                                         CARL J. NICHOLS
                                         Deputy Assistant Attorney General

                                         JOSEPH H. HUNT
OF COUNSEL:                              Branch Director

MOLLY WEBER                              s/ Justin M. Sandberg
United States Secret Service             ELIZABETH J. SHAPIRO
                                         (D.C. Bar No. 418925)

1

Assistant Branch Director
JUSTIN M. SANDBERG
(Ill. Bar. No. 6278377)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7224
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 514-3489
Facsimile:  (202) 616-8202
E-mail:  justin.sandberg@usdoj.gov

<u>Attorneys for Defendant</u>

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH,          ) | |
|                        ) | |
|        Plaintiff,         ) | |
|                        ) | |
|        v.             ) | Civil Action No. 06-310 (JGP) |
|                        ) | |
| UNITED STATES SECRET SERVICE,    ) | |
|                        ) | |
|        Defendant.       ) | |
|                        ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### INTRODUCTION

Plaintiff filed this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records from visitor logs for the White House Complex ("the Complex") reflecting Jack Abramoff's visits to the Complex from 2001 until early 2006. Because the Secret Service has now released all responsive records, the case is moot, the court lacks further jurisdiction over it, and it should, accordingly, be dismissed.[1]

For the Court to retain jurisdiction over this FOIA action, plaintiff must demonstrate that defendant has improperly withheld agency records. Plaintiff cannot make this showing. In compliance with its agreement with plaintiff, which was signed by the Court, defendant released the requested records, without redaction, on May 10, 2006. Thus, as plaintiff already has

---

[1] The Secret Service does not concede, through its use of the word "responsive" or otherwise, that the records it has produced or searched are in fact "agency" records, as that term is used in the FOIA. Nevertheless, the Secret Service is not contesting the release of the relevant records in this case, and has not withheld any records on this, or any other, basis.

1

obtained all that it could receive from a judgment of the court, namely, the release of the documents sought by its FOIA request, the case is moot and the Court lacks jurisdiction.

Plaintiff cannot revive the court's jurisdiction by arguing that defendant conducted an inadequate search or that other responsive documents exist. The Secret Service conducted a reasonable search by querying the relevant records systems, and the declaration of Special Agent Kathy J. Lyerly more than suffices to establish that the Secret Service's search was calculated to uncover all relevant documents. Because the two documents located as a result of that search were produced in full, the Court should dismiss this case as moot.

## BACKGROUND

On January 20, 2006, plaintiff Judicial Watch submitted a FOIA request for all records "concerning, relating to, or reflecting . . . [a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exits of lobbyist Jack Abramoff from the White House." Complaint for Declaratory and Injunctive Relief ("Complaint"), Feb. 22, 2006, at ¶ 5. The Secret Service acknowledged the request on February 2, 2006, Declaration of Special Agent Kathy J. Lyerly, May 16, 2006, at ¶ 4, and plaintiff filed suit on February 22, 2006. Complaint. On April 25, 2006, the parties entered into a stipulation and order wherein defendant agreed to "produce any and all documents responsive to plaintiff's . . . request without redactions or claims of exemption[ ] on or before May 10, 2006." Joint Stipulation and Agreed Order, April 25, 2006, at 1.

To locate records responsive to plaintiff's request, the Secret Service queried the relevant records systems. Lyerly Decl. at ¶ 9. Those records systems contain (1) Access Control Records System ("ACS") records, and (2) Worker and Visitor Entry System ("WAVES") records. Id. at ¶

2

6. ACS records are generated when a permanent pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the electronic pass readers located at entrances to and exits from the White House Complex. Id. at ¶ 7. ACS records include information such as the pass holder's name and badge number, the time and date of the swipe, and the post at which the swipe was recorded. Id. WAVES records consist of records generated when information is submitted to the Secret Service about workers and visitors whose business requires their presence at the White House Complex. Id. at ¶ 8. WAVES records include information in addition to that included in ACR records. Id.

On May 10, 2006, in accordance with the stipulation and order, defendant released all responsive documents to plaintiff without claiming any exemptions or withholding any documents or portions of documents. Lyerly Decl. at ¶ 19.

## ARGUMENT

## PLAINTIFF'S ACTION IS MOOT AND SHOULD BE DISMISSED BECAUSE DEFENDANT, FOLLOWING A REASONABLE SEARCH, HAS RELEASED DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUEST

The mootness doctrine requires federal courts to decide only "actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). Even if an action poses an actual case or controversy when filed, the mootness doctrine requires courts to dismiss it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir.1990). When an action becomes moot, federal subject matter jurisdiction disappears, see Arizonans for Official English v. Arizona, 520 U.S. 43, 66-67 (1997), and dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate, see Kirkham

3

v. Société Air France, 429 F.3d 288, 291 (D.C. Cir. 2005). Pursuant to Rule 12(b)(1), a court

may consider matters outside the pleadings to determine whether it has jurisdiction. Venetian

Casino Resort, L.L.C. v. EEOC, 409 F.3d 359, 365 (D.C. Cir. 2005).

      "Under 5 U.S.C. § 552(a)(4)(B) [i.e., FOIA], a federal court is authorized only to 'enjoin

the agency from withholding agency records and to order the production of any agency records

improperly withheld.'" Perry v. Block, 684 F.2d 121, 125 (D.C. Cir.1982) (quoting 5 U.S.C. §

552(a)(4)(B)). Therefore, if an agency releases in full all records responsive to a request, "the

substance of the controversy disappears and becomes moot since the disclosure which the suit

seeks has already been made." Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980).

See also Drake v. FAA, 291 F.3d 59, 67 (D.C. Cir. 2002) (FOIA claim mooted by virtue of

FAA's release of all documents responsive to plaintiff's FOIA request); Tijerina v. Walters, 821

F.2d 789, 799 (D.C. Cir. 1987) (case mooted once agency released all non-exempt material to

plaintiff); Perry, 684 F.2d at125 (if appellees have "released all nonexempt material, we have no

further judicial function to perform under the FOIA"). In other words, a FOIA case becomes

moot once an agency releases all responsive documents because, at that point, the plaintiff has

"obtained everything that [it] could recover . . . by a judgment of th[e] court in [its] favor." Hall

v. CIA, 437 F.3d 94, 99 (D.C. Cir. 2006) (internal quotations omitted).

      The Court lacks jurisdiction over this action. Special Agent Lyerly's declaration

establishes that defendant has turned over all of the documents that were sought by plaintiff in its

FOIA request. See Lyerly Decl. at ¶ 19. Therefore, the case is moot, and dismissal pursuant to

Rule 12(b)(1) is warranted. See Drake, 291 F.3d at 67; Tijerina, 821 F.2d at 799; Perry, 684 F.2d

at 125; Crooker, 628 F.2d at 10.

4

Plaintiff cannot avoid dismissal by arguing that defendant has not conducted a reasonable search or that other responsive documents exist. The declaration of Special Agent Lyerly amply satisfies defendant's obligation to establish the adequacy of its search by "demonstrat[ing] that it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); see also Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that an agency is not required to search every record system, but must simply show "that it made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested"). The issue is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). See also Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986) ("An agency's search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."); Wilbur v. CIA, 273 F. Supp. 2d 119, 124 (D. D.C. 2003) (Collyer, J.), aff'd 355 F.3d 675, 359 (D.C. Cir. 2004); Schrecker v. Dept. of Justice, 217 F. Supp. 2d 29, 33 (D.D.C. 2002) (Lamberth, J.), aff'd on other grounds, 349 F.3d 657 (D.C. Cir. 2003).

To establish the sufficiency of its search, the agency need only explain the "scope and method of the search" in "reasonable detail," Perry, 684 F.2d at 127, in non-conclusory declarations submitted in good faith, see Steinberg, 23 F.3d at 551. Such declarations "need not be precise," but must show that a good faith effort was made "to conduct a search for the requested records," Schrecker, 217 F. Supp. 2d at 33, 34, and "aver[ ] that all files likely to contain responsive materials . . . were searched[.]" Wilbur, 273 F. Sup. 2d at 124. "Agency

5

[declarations] are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" <u>Safecard Services, Inc. v. SEC</u>, 926 F.2d 1197, 1202 (D.C. Cir. 1991) (quoting <u>Ground Saucer Watch, Inc. v. CIA</u>, 692 F.2d 770, 771 (D.C. Cir.1981)).

There is no question that defendant conducted a search reasonably calculated to identify responsive documents. The ACR System and the WAVES "control[ ] and monitor[ ] access to the [ ] Complex." <u>Id.</u> at ¶ 6. Presidential Protective Division personnel who "conduct [FOIA] searches as part of their regular responsibilities" searched for both ACR and WAVES records. <u>Id.</u> at ¶ 9. Both kinds of records are stored in electronic format that allows them to be searched by visitor name. <u>Id.</u> at ¶¶ 12-13. Presidential Protective Division personnel searched WAVES and ACR records for records with the name "Jack Abramoff." <u>Id.</u> They used the search terms "Jack Abramoff" for the ACR records and the term "Abramoff" for the WAVES records. <u>Id.</u> The search yielded the two responsive ACR records which were released to plaintiff. <u>Id.</u> at ¶¶ 14, 17. No other responsive records (e.g., WAVES records) were found. <u>See id.</u> at ¶¶ 17-18. That defendant found no WAVES records related to the visits reflected by the ACR records is not surprising because defendant does not possess WAVES records for the time period in which those visits took place. <u>See id.</u> at ¶ 11.

Special Agent Lyerly's declaration describes the relevant databases that were searched, the personnel who conducted the search, the search terms that were used, and the records that were found, Lyerly Decl. at ¶¶ 9-14, and thus demonstrates that defendant has conducted and adequately described a reasonable search for responsive documents. <u>See</u> <u>Perry</u>, 684 F.2d at 127 ("in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that

6

explain in reasonable detail the scope and method of the search conducted by the agency will

suffice to demonstrate compliance with the obligations imposed by the FOIA"); Goland v. CIA,

607 F.2d 339, 352 & n.78 (D.C. Cir. 1978) (detailed descriptions of search were adequate to

sustain CIA's burden of demonstrating a reasonable search).

## CONCLUSION

For the foregoing reasons, the case is moot, and the Court should dismiss this action for

lack of subject matter jurisdiction.


Dated: May 16, 2006                          Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             KENNETH L. WAINSTEIN
                                             United States Attorney

                                             CARL J. NICHOLS
                                             Deputy Assistant Attorney General

                                             JOSEPH H. HUNT
OF COUNSEL:                                  Branch Director

MOLLY WEBER                                  s/ Justin M. Sandberg
United States Secret Service                 ELIZABETH J. SHAPIRO
                                             (D.C. Bar No. 418925)
                                             Assistant Branch Director
                                             JUSTIN M. SANDBERG
                                             (Ill. Bar. No. 6278377)
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Avenue, N.W. #7224
                                             P.O. Box 883 Ben Franklin Station
                                             Washington, D.C. 20044
                                             Telephone: (202) 514-3489

7

Facsimile:  (202) 616-8202
E-mail:  justin.sandberg@usdoj.gov

Attorneys for Defendant

8

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 06-310 (JGP) |
| UNITED STATES SECRET SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF KATHY J. LYERLY
### SPECIAL AGENT IN CHARGE, LIAISON DIVISION AND
### FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER,
### UNITED STATES SECRET SERVICE

I, Kathy J. Lyerly, hereby make the following declaration:

1. I am the Special Agent in Charge of the Liaison Division and the Freedom of Information and Privacy Acts (FOI/PA) Officer for the United States Secret Service (hereinafter Secret Service), which is a component of the Department of Homeland Security (DHS). I have been the Secret Service FOI/PA Officer since December 28, 2003, and have been employed with the Secret Service as a Special Agent (GS-1811) since October 26, 1987.

2. DHS regulations, Title 6, Code of Federal Regulations, Section 5.4, and Appendix A, II(I)(3), vest authority in the FOI/PA Officer, Secret Service, to make initial determinations as to whether to grant Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests for Secret Service records (68 FR 4056, 4058, and 4069).

3. As the Secret Service's FOI/PA Officer, I am familiar with plaintiff's FOIA

request to the Secret Service. Under my direction, the Secret Service conducted a search for

documents responsive to plaintiff's request. That search produced two records, both of which

were released in full without redactions or claims of exemptions. A chronological description of

the correspondence in this matter and the processing of plaintiff's FOIA request is set forth

below.

4.    By letter to the Secret Service dated January 20, 2006, and received January 23,

2006, plaintiff submitted a FOIA request for records "concerning, relating to, or reflecting . . .

[a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s)

of lobbyist Jack Abramoff from the White House."

5.    By letter dated February 2, 2006, I acknowledged receipt of plaintiff's FOIA

request and advised plaintiff that a search for records responsive to the request was being

conducted.

6.    There are two interrelated systems – collectively termed the White House Access

Control System – for controlling and monitoring access to the White House Complex:  the

Worker and Visitor Entrance System ("WAVES") and the Access Control Records System

("ACR").

7.    ACR records consist of records generated when a pass holder, worker, or visitor

swipes his or her permanent or temporary pass over one of the electronic pass readers located at

entrances to and exits from the White House Complex. ACR records include information such

as the pass holder's name and badge number, the time and date of the swipe, and the post at

which the swipe was recorded.

8.    WAVES records consist of records generated when information is submitted to

2

the Secret Service about workers and visitors whose business requires their presence at the White House Complex. WAVES records include information additional to that in the ACR records.

9.  In response to plaintiff's request, the FOI/PA Office conducted a search for responsive information. This search was conducted under the direction of the Secret Service's Presidential Protective Division by personnel who conduct FOIA searches as part of their regular responsibilities. The Secret Service searched both the ACR records and the WAVES records for any and all records responsive to plaintiff's FOIA request.

10.  It has been the longstanding practice of the Secret Service to transfer WAVES records on CD-ROM to the White House every 30 to 60 days. Except as noted in paragraph 11 below, once the Secret Service transferred the WAVES records, the Secret Service ensured that those records were erased from its computer system.

11.  In October 2004, at the request of the National Archives and Records Administration, the Secret Service began temporarily retaining its own copy of the WAVES records that it transferred to the White House. As such, the Secret Service has in its possession WAVES records dating back only to October 2004.

12.  ACR records are stored in a searchable database. Records are searchable by visitor name. In this case, the Secret Service searched the ACR database by searching for records generated from January 1, 2001 to the date of the search that had the name "Jack Abramoff" in the visitor field. The Secret Service does not keep ACR records anywhere other than in this searchable database.

13.  WAVES records are stored in a searchable form on CD-ROMs. Records are

3

searchable by visitor name. In this case, the Secret Service explored the WAVES CD-ROMs by searching for records generated from October 2004 to the date of the search that had the name "Abramoff" in the visitor field. As noted in paragraph 11, the Secret Service only has in its possession WAVES records dating from October 2004.

14.     The Secret Service's search of the ACR records produced two pages of records responsive to plaintiff's FOIA request. These records show that Mr. Abramoff visited the White House Complex on March 6, 2001 and January 20, 2004. The two pages of ACR records responsive to plaintiff's FOIA request have slightly different formats because the ACR system changed somewhat between 2001 and 2004.

15.     The Secret Service's search of the WAVES records maintained by the Secret Service produced no WAVES records responsive to plaintiff's FOIA request.

16.     There are a variety of reasons why ACR records are not comprehensive as to entries and exits. For example, guests who visit the complex in a prearranged group for an official function or reception may not appear on the ACR records. In some of those instances visitors are granted entry without going through the turnstiles.

17.     No other documents responsive to plaintiff's FOIA request were found in the search.

18.     No document located in response to plaintiff's request has been withheld in part or in whole.

19.     Pursuant to the terms of a joint stipulation and agreed order, on May 10, 2006, defendant produced, without redactions or claims of exemptions, all documents located in response to plaintiff's January 20, 2006 FOIA request.

4

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing

statements are true and correct to the best of my knowledge and belief.

___5/16/06___
Date

*Kathy J. Lyerly*
Kathy J. Lyerly
Special Agent in Charge, Liaison Division and
Freedom of Information and Privacy Acts Officer
United States Secret Service

5