## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,  )<br>)<br>Defendant.  ) | Civil Action No. 06-883 (JGP) |
| DEMOCRATIC NATIONAL COMMITTEE  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>UNITED STATES SECRET SERVICE,  )<br>)<br>Defendant.  ) | Civil Action No. 06-842 (JGP) |

**MOTION TO DISMISS CLAIM FOUR OF
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States Department of Homeland Security respectfully moves the Court to dismiss, for lack of subject matter jurisdiction, Claim Four of plaintiff Citizens for Responsibility and Ethics in Washington's ("CREW's") second amended complaint. The accompanying memorandum sets forth the grounds for this motion.

Dated: August 30, 2006                           Respectfully submitted,


                                                 PETER D. KEISLER
                                                 Assistant Attorney General

                                                 KENNETH L. WAINSTEIN
                                                 United States Attorney

                                                 CARL J. NICHOLS
                                                 Deputy Assistant Attorney General

                                                 JOSEPH H. HUNT
OF COUNSEL:                                      Branch Director

MOLLY WEBER                                      s/ Justin M. Sandberg
United States Secret Service                     ELIZABETH J. SHAPIRO
                                                 (D.C. Bar No. 418925)
                                                 Assistant Branch Director
                                                 SARA CLASH-DREXLER
                                                 (Pa. Bar No. 86517)
                                                 Trial Attorney
                                                 JUSTIN M. SANDBERG
                                                 (Ill. Bar. No. 6278377)
                                                 Trial Attorney
                                                 United States Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 20 Massachusetts Avenue, N.W. #7224
                                                 P.O. Box 883 Ben Franklin Station
                                                 Washington, D.C. 20044
                                                 Telephone:  (202) 514-3489
                                                 Facsimile:  (202) 616-8202
                                                 E-mail:  justin.sandberg@usdoj.gov

                                                 Attorneys for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, )<br><br>Defendant. ) | Civil Action No. 06-883 (Penn) |
| DEMOCRATIC NATIONAL COMMITTEE, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES SECRET SERVICE, )<br><br>Defendant. ) | Civil Action No. 06-842 (Penn) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLAIM FOUR OF PLAINTIFF'S SECOND AMENDED COMPLAINT

### STATEMENT

The Court should dismiss Claim Four of Citizens for Responsibility and Ethics in Washington's ("CREW's") Second Amended Complaint ("2d Am. Compl.") because this Court lacks jurisdiction to decide that claim. CREW contends that the Department of Homeland Security ("DHS") violated the Federal Records Act ("FRA") by transferring Worker and Visitor Entrance System ("WAVES") records to the White House before removing them from DHS's computer system, and that this alleged violation can be redressed through an Administrative Procedure Act

("APA") claim. To remedy the alleged violation of the FRA, CREW seeks a declaration that DHS's policy is *ultra vires* and an order that would require DHS to stop erasing and transferring WAVES records and would require DHS to retrieve certain WAVES records already transferred to the White House.

The Court lacks subject matter jurisdiction over all aspects of this claim. First, the D.C. Circuit has held that the FRA precludes judicial review of APA claims seeking the kind of injunctive relief sought by CREW because to allow such claims would upset the FRA's carefully structured administrative enforcement scheme. Armstrong v. Bush, 924 F.2d 282, 294 (D.C. Cir. 1991). Because the FRA's preclusion of this kind of APA claim renders the APA's waiver of sovereign immunity inapplicable, and because the FRA does not itself contain a waiver of sovereign immunity, the Court lacks jurisdiction to hear this claim.

Second, CREW lacks standing to pursue its APA claim to the extent it seeks either an injunction against the continued transfer and removal of WAVES records or a declaratory judgment invalidating DHS's policy for handling WAVES records. CREW lacks standing to pursue this injunctive relief because DHS's policy has not caused CREW's alleged on-going injury and, in addition, an injunction by the court will not remedy its alleged injury. Also, CREW has not pleaded, and cannot demonstrate, a certain and imminent threat of future injury that will suffice to give it standing. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-03, 109 (1983). Finally, CREW lacks standing to pursue declaratory relief. For these reasons, set forth in more detail below, the Court should dismiss Claim Four of CREW's Complaint.

**I. Statutory Framework**

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies."[1] Public Citizen v. Carlin, 184 F.3d 900, 902 (D.C. Cir. 1999). See 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. It "authorizes the head of each Federal agency to establish a records management program and to define the extent to which documents are appropriate for preservation as agency records." Kissinger v. Reporters Committee For Freedom of the Press, 445 U.S. 136, 147 (1980). Additionally, it "provides the exclusive means for record disposal."[2] Id.; see 44 U.S.C. § 3303a.

The FRA also establishes an administrative enforcement scheme to prevent the improper removal or destruction of records. Armstrong v. Bush, 924 F.2d 282, 294 (D.C. Cir. 1991). This enforcement regime comprises two complementary mechanisms for protecting records. Under 44 U.S.C. § 2905, if the Archivist learns that documents are being mishandled in certain material ways, then he or she is obliged to notify the agency head, assist the head of the agency in initiating an action through the Attorney General (or initiate the action himself or herself if the agency head refuses), and (in certain situations) notify Congress:

> "[The Archivist] shall notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to his attention, and assist the head of the agency in

---

[1] By addressing CREW's FRA-related APA claim, DHS does not concede, for purposes other than this motion, that the records at issue here – WAVES records for the White House Complex – are in fact federal records.

[2] To be more specific, the Records Disposal Act (RDA), 44 U.S.C. § 3101, et seq., controls the disposition of records, but as the D.C. Circuit has treated the RDA as a portion of the FRA, Public Citizen v. Carlin, 184 F.3d 900, 902 (D.C. Cir. 1999) (referring to "the RDA portion of the FRA"), DHS does so as well.

> initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law. In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made."

44 U.S.C. § 2905(a). And pursuant to 44 U.S.C. § 3106, each agency head is obligated to alert the Archivist of the material mishandling of documents and to initiate an action through the Attorney General to put a stop to the improper practice(s): "The [agency head] shall notify the Archivist of any actual, impending, or threatened unlawful removal . . . or destruction of records in the custody of the agency. . . [and] shall initiate action through the Attorney General for the recovery of records he knows or has reason to believe have been unlawfully removed from his agency. . . ."

The APA, of course, provides a cause of action in certain circumstances to persons who challenge final agency action, and it waives the United States' sovereign immunity with respect to suits for non-monetary relief against agencies and their employees acting in their official capacities. 5 U.S.C. § 702. But none of the APA's provisions – including the APA's waiver of sovereign immunity – applies if a "statut[e] preclude[s] judicial review." Id. at § 701(a)(1).

**II. Procedural Background**

Plaintiff CREW filed its original complaint in this case on May 10, 2006, pursuant to the Freedom of Information Act ("FOIA"), seeking documents from the United States Secret Service, a component of DHS, relating to any visits that certain specified individuals made to the White House or the residence of the Vice President between January 1, 2001, and the present. See Complaint for Declaratory Judgment and Injunctive Relief at ¶ 18. On May 23, 2006, CREW filed an amended complaint adding a claim under the FRA. This claim challenged the Secret Service's

4

practice of transferring WAVES records to the White House and subsequently removing copies of those records from DHS's system. See Amended Complaint for Declaratory and Injunctive Relief at ¶¶ 2, 44-47.  On June 12, DHS moved to consolidate this case with Civil Action No. 06-842, brought by the Democratic National Committee against the Secret Service, which also sought many of the same records.  See docket entry no. 6 in Civil Action No. 06-842.  The Court granted DHS's motion and consolidated these two cases on July 18, 2006.  See Memorandum Order, dated July 18, 2006 (docket entry no. 12 in Civil Action No. 06-842).  On July 11, DHS moved to dismiss CREW's FRA claim (Claim Four) for failure to state a claim, because it is well-settled that the FRA does not provide a private right of action.  See Motion to Dismiss Claim Four of Plaintiff's Amended Complaint (docket entry no. 16 in Civil Action No. 06-883).  CREW did not oppose that motion.

On July 27, CREW filed an unopposed motion for leave to file a second amended complaint. That complaint replaces CREW's FRA claim with an FRA-related APA claim (i.e., the claim that DHS's actions violated the APA because they violate the FRA).  See Second Amended Complaint for Declaratory and Injunctive Relief ("2d Am. Compl.") at ¶¶ 2, 44-47.  The Court granted CREW's motion to file that complaint on August 8, and on August 9, the Court denied, as moot, DHS's motion to dismiss the FRA claim.  See Order dated August 9, 2006 (docket entry no. 28).  As noted above, CREW's APA claim alleges that DHS violated the APA through the Secret Service's policy and practice of transferring WAVES records, which CREW alleges are federal records, to the White House and subsequently removing them from its systems.  2d Am. Compl. at ¶¶ 2, 45, 46.  CREW seeks a declaratory judgment that this alleged policy is "arbitrary, capricious, and contrary to law," and therefore violates the APA.  2d Am. Compl. at ¶ 46, p. 13  ("Prayer for Relief").  CREW also seeks an order enjoining DHS from destroying any WAVES records and requiring that DHS "take

5

all necessary steps to retrieve from the White House copies of all WAVES records that it forwarded to the White House but failed to maintain within the Secret Service." Id. at p. 13 ("Prayer for Relief").

## ARGUMENT

**I.   The Court Lacks Jurisdiction to Consider CREW's Request For an Injunction Regarding the Treatment of WAVES Records.**

The Court should dismiss CREW's APA claim for lack of subject matter jurisdiction to the extent that it seeks an order that either requires the DHS to retain WAVES records or requires DHS to retrieve records from the White House.[3] Controlling precedent establishes that the FRA precludes APA claims seeking this sort of injunctive relief because, under the FRA, such relief can be sought only by the government through the FRA's detailed and exclusive administrative enforcement system. Armstrong v. Bush, 924 F.2d 282, 294 (D.C. Cir. 1991); see also 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24.

Armstrong requires dismissal of CREW's APA claim. The plaintiffs in Armstrong sued the President, the Archivist, and the National Security Council to prohibit them from erasing certain materials stored on the Council's computer system. 924 F.2d at 284. Plaintiffs alleged, among other things, that some Council officials and staff members were destroying federal records in violation of the Council's regulations governing the treatment of federal records, which were promulgated pursuant to the FRA. Id. at 291, 294. To remedy this alleged violation of the FRA, plaintiffs brought a claim under the APA seeking an injunction against the destruction of such records. Id.

---

[3] It is well established that "the plaintiff has the burden of establishing the Court's jurisdiction." Halcomb v. Office of the Senate Sergeant at Arms of the United States Senate, 209 F. Supp. 2d 175, 176 (D.D.C. 2002) (citing Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).

The Armstrong court dismissed plaintiffs' APA claim, holding that it was precluded by the FRA. 924 F.2d at 294. Under the FRA, the court held, an order enjoining the destruction or removal (or relatedly, requiring the retrieval) of records could be sought only by the government through the FRA's carefully crafted system of administrative enforcement: "Because it would clearly contravene [the] system of administrative enforcement to authorize private litigants to prevent an agency official from improperly destroying or removing records, we hold that the FRA precludes judicial review of such actions."[4] Id. In reaching this result, the court relied heavily on the Supreme Court's decision in Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 148-149 (1980). In Kissinger, the Court concluded that the only remedy for the improper removal of records from an agency was an action brought by the Attorney General at the request of the head of the agency – what the Court referred to as part of the "system of administrative standards and enforcement." Id. Under Armstrong, then, CREW's APA claim – to the extent that it seeks an order that requires DHS not to remove WAVES records from its system or to retrieve certain WAVES records – is precluded by the FRA.[5]

---

[4] There is no relevant difference under Armstrong between a request for an order enjoining removal and a request for an order requiring retrieval because an action for retrieval upsets the system of administrative enforcement, Kissinger, 445 U.S. at 148-150, just as an action for an injunction preventing removal does, Armstrong, 924 F.2d at 294. Armstrong acknowledges this fact by relying on Kissinger, 445 U.S. at 148, which involved a request for an order of retrieval. Armstrong, 924 F.2d at 294.

[5] There are two ways in which the APA claim in Armstrong is distinct from CREW's, but each is a distinction without a difference. First, the APA claim in Armstrong challenged the agency's compliance with regulations promulgated pursuant to the FRA, id., while CREW's claim challenges DHS's compliance with the FRA itself, 2d Am. Compl. at ¶¶ 2, 47. This difference, however, is irrelevant because allowing private litigants to bring actions to prevent the destruction of records or secure their retrieval would upset the system of administrative enforcement regardless of whether the actions were brought under the FRA or related regulations, and the point of preclusion is to protect this administrative enforcement system. See Armstrong, 924 F.2d 294. Second, the

This Court must dismiss CREW's APA claim under Federal Rule of Civil Procedure 12(b)(1) because the lack of an applicable waiver of sovereign immunity is a jurisdictional defect. See, e.g., Council on American Islamic Relations v. Ballenger, 444 F.3d 659, 661 (D.C. Cir. 2006). Where, as here, a statute precludes review under the APA, the APA does not waive the United States' sovereign immunity. See 5 U.S.C. § 701(a)(1) (explaining that the APA applies except to the extent that "statutes preclude judicial review"); Heckler v. Chaney, 470 U.S. 821, 828 (1985) (noting that APA review is inappropriate unless a plaintiff "clear[s] the hurdle of § 701(a)"); High Country Citizens Alliance v. Clarke, 2006 WL 2037154, at *2 (10th Cir. July 21, 2006) ("In other words, before the waiver of sovereign immunity under § 702 applies, 'a party must first clear the hurdle of § 701(a).' "); Tozzi v. EPA, 148 F. Supp. 2d 35, 43 (D.D.C. 2001) ("The APA's sovereign immunity waiver does not apply where a statute has explicitly precluded judicial review."). And the FRA itself does not waive the United States' sovereign immunity. See 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. Without a waiver of sovereign immunity, the Court lacks subject matter jurisdiction.

## II.   CREW Lacks Standing to Pursue Prospective Relief.

The Court should also dismiss CREW's APA claim for lack of standing to the extent that it seeks prospective relief. CREW seeks two kinds of prospective relief: (i) an injunction barring DHS

---

APA claim in Armstrong aimed only to prevent the destruction of documents; it did not seek the retrieval of records as well, as CREW's claim does. See id.; 2d Am. Compl. ("Prayer for Relief"). But this difference too is irrelevant, because Armstong itself noted that the FRA precludes APA claims seeking both kinds of relief. 924 F.2d 294 (concluding that FRA precludes suits seeking injunctions preventing the removal of records); see supra n.4 (explaining that actions for removal and retrieval are to be treated the same way under Armstrong).

from removing WAVES records from DHS's files and transferring them to the White House,[6] and (ii) an order declaring that "DHS's policy of destroying WAVES records is arbitrary, capricious, and contrary to law," 2d Am. Compl. at p. 13 ("Prayer for Relief," no. 5). CREW lacks standing to pursue such an injunction because DHS's policy of transferring records to the White House and removing them for its system has not caused CREW's alleged on-going injury, and in addition, an injunction by the court will not remedy this alleged injury. Also, CREW has not pleaded, and cannot demonstrate, a certain and imminent threat of future injury that will suffice to give it standing to pursue injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-03, 109 (1983). Finally, CREW lacks standing to pursue declaratory relief because, among other reasons, the requested declaration will not redress its alleged injury.

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). This is a "bedrock requirement." Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). As the Supreme Court noted in Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26 (1976), "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Id. at 37; see also Federal Express Corp. v. Airline Pilots Ass'n, 67 F.3d 961, 963 (D.C. Cir. 1995) ("The federal courts are powerless to decide any matter unless it involves a case or controversy.").

---

[6] CREW's request for an injunction, as explained above, is precluded by the D.C. Circuit's decision in Armstrong. That CREW lacks standing to pursue such an injunction is an additional reason to dismiss CREW's APA claim for lack of subject matter jurisdiction.

"In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,'" among which is the doctrine of standing. See National Treasury Employees Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must show (1) that he has suffered an "injury in fact"; (2) that there is a causal connection between the injury complained of and the challenged action of the defendant, such that the injury is fairly traceable to the challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id. at 560-61. These requirements must be met with respect to each aspect of relief sought by a plaintiff. See Friends of the Earth, Inc. v. Laidlaw, 528 U.S. 167, 185 (2000) (noting that "a plaintiff must demonstrate standing separately for each form of relief sought").

It is well established that, to have standing, a plaintiff seeking prospective relief must show more than a past injury – he must demonstrate that he is "realistically threatened by a repetition" of the alleged violation. See City of Los Angeles v. Lyons, 461 U.S. 95, 102, 109 (1983). In these circumstances, an allegation of past injury or "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." See id. See also Golden v. Zwickler, 394 U.S. 103, 108 (1969) (cited in Lyons, 461 U.S. at 104) (dismissing declaratory judgment action because there was no case or controversy of "sufficient immediacy and reality"); Haase v. Sessions, 835 F.2d 902, 911 (D.C. Cir. 1987) (noting that the rule articulated in Lyons applies to claims for declaratory relief)

CREW alleges two injuries linked to the FRA-related APA claim. First, CREW asserts that it has been "harmed by DHS's failure to comply with the FRA because that failure has denied CREW access to WAVES records that are a critical part of the evidentiary record concerning the activities of convicted felon Jack Abramoff, information that is 'in the public interest.' " See 2d Am. Compl. at ¶ 7; see also id. at ¶ 47 ("As a result of Defendant's unlawful policy in violation of the FRA, Plaintiff was denied a right of access to information in the public interest."). Second, CREW contends that it was "denied its right to notice and the opportunity to comment on the proposed destruction of agency records." Id. at ¶ 48; see 44 U.S.C. § 3303a(a) (explaining that the Archivist can, after allowing for notice and comment, authorize an agency to dispose of documents).

Neither alleged injury suffices to establish standing to pursue an injunction against the future transfer of WAVES records or the removal of such records from DHS's system. With respect to CREW's alleged harm in being denied access to WAVES records, there are three possible categories of responsive documents relevant to assessing CREW's standing: (1) WAVES records that were created and transferred to the White House prior to CREW's FOIA request; (2) WAVES records that were created prior to CREW's FOIA request, but which may have been or will be transferred to the White House after CREW's FOIA request; and (3) WAVES records created and transferred after CREW's FOIA request.[7] Since an injunction against the future transfer or removal of WAVES

---

[7] There is no hard-and-fast rule about whether an agency must search for agency records available on the date of the request or whether it must search through agency records available on the date of the request along with records that came into its possession and control after the date of the request but prior to the date of the search. Public Citizen v. Dep't of State, 276 F.3d 634, 644 (D.C. Cir. 2002). DHS uses the date of the request as the "cut off date" throughout the discussion of standing. See id. at 638 (using the term "cut-off date"). But the standing analysis is the same regardless of which cut-off date is used because any relevant records would be available to CREW if it were to prevail on its FOIA claim.

11

records can have no effect on records that have already been transferred, i.e., the first category, CREW lacks standing to seek such an injunction with respect to that category of documents. (That is, any injury allegedly suffered by CREW with respect to those documents could not be redressed by the prospective injunction CREW seeks.)

CREW similarly lacks standing with respect to the second category of documents. CREW's alleged injury stems from its claimed inability to receive documents to which it is entitled. But any such injury is not caused by DHS's policy of removing from its system and transferring to the White House documents that DHS possessed at the time of CREW's request, because these records would still be available to CREW were it to prevail on its FOIA request.[8] CREW therefore lacks standing because its claimed injury has not been caused by DHS's policy. For the same reason, if CREW were to prevail and secure its requested injunction, it would be no more likely to receive the documents than it already is, and thus its injury cannot be redressed by the relief it seeks – and CREW lacks standing for this additional reason.

CREW also lacks standing to pursue a prospective injunction with respect to the third category of records. Because the records in this category were created after the cut-off date, i.e., the date of the request, CREW does not have an interest in them under FOIA (because agencies could not bear the burden of FOIA requests that never closed), cf. Edmonds Institute v. United States Department of Interior, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) (explaining the unreasonable

---

[8] *If* the WAVES records possessed by DHS at the time of CREW's request are agency records responsive to CREW's FOIA request – a point that DHS does not concede for purposes other than this motion – then those records would be available to CREW under FOIA, whether they are currently being stored at DHS or the White House. See Judicial Watch, Inc. v. Dep't of Energy, 412 F.3d 125, 132-133 (D.C. Cir. 2005) (determining that records stored outside of an agency are not necessarily outside of the agency's control).

administrative burden of a rolling cut-off date). Therefore, DHS's policy cannot cause CREW any injury, and the injunction could not redress that injury.

In short, CREW does not have an on-going injury that provides it with standing to pursue an injunction against the continued removal and transfer of records.[9]

CREW's second alleged injury – its alleged missed opportunity to comment on DHS's record disposal policy – is an injury stemming from a claimed procedural right and also fails to provide CREW with standing to pursue an injunction against the transfer and removal of WAVES records. See Lujan, 504 U.S. at 572. To have standing based on the deprivation of a procedural right, a plaintiff must allege both that it has been deprived of a procedural right and that such deprivation endangers a concrete interest that the procedural right was designed to protect. See id. at 572 n. 7, 573 n. 8; Bensman v. U.S. Forest Serv., 408 F.3d 945, 952 (7th Cir. 2005); Fund Democracy, LLC v. SEC, 278 F.3d 21, 27 (D.C. Cir. 2002). CREW has not alleged that the supposed deprivation of its procedural right (i.e., the right to comment) has endangered a concrete interest.

---

[9] CREW cites to American Friends Svc. Comm. v. Webster, 720 F.2d 29 (D.C. Cir. 1983) in its complaint. In American Friends, the plaintiffs sued the Federal Bureau of Investigation and officials of the National Archives and Records Service (presently named the National Archives and Records Administration ["NARA"]) seeking to enjoin the destruction of FBI records. The plaintiffs included: (1) historians, journalists, teachers, film writers and attorneys, with pending FOIA requests for the documents at issue; (2) individuals who, as subjects of FBI investigations or alleged victims of FBI activities, claimed to have suffered legal wrongs; and (3) organizations whose missions allegedly required access to FBI records for the purpose of disseminating information for organizational, educational and political purposes. While the D.C. Circuit held that the plaintiffs in that case satisfied the "zone of interests" requirement for standing under the APA, the Court did not address Article III standing, which is essential and in addition to the "zone of interests" requirement. The district court noted that the standing of the group of plaintiffs most similarly situated to CREW here – the organizations that seek to disseminate information to the public for organizational, educational, or political purposes – was questionable. 485 F.Supp. 222, 227 (D.D.C. 1980). It is also worth noting that the district court opinion preceded the Supreme Court's opinion in City of Los Angeles v. Lyons.

If CREW were to properly plead a procedural injury, it might allege that if it had been given the opportunity to comment on DHS's record disposal policy, it would have convinced DHS to retain copies of records transferred to the White House, thus making them available for its FOIA request. Such a contention, however, would not suffice to establish standing to seek prospective relief because, as explained above, under FOIA, WAVES records that were in DHS's possession and control at the time of CREW's FOIA request (if any) would be available to CREW, and CREW has no on-going interest in WAVES records created after the date of its request. See supra pp. 12-13.

CREW cannot cure its failure to allege a cognizable on-going harm by arguing that it is a repeat FOIA requester and that it has a future interest in obtaining WAVES records that will be harmed by the continued implementation of DHS's alleged policy for handling WAVES records. Such an assertion would amount to nothing more than pure conjecture, which does not suffice to establish standing under Article III. See Lyons, 461 U.S. at 102, 109 (holding that, to have standing, a plaintiff seeking prospective relief based on the allegation of a future injury must demonstrate that he is "realistically threatened by a repetition" of the alleged violation); Haase, 835 F.2d at 911 (noting that the rule articulated in Lyons applies to claims for declaratory relief).

In American Historical Assoc. v. NARA, 310 F.Supp.2d 216, 226 (D.D.C. 2004), Judge Kollar-Kotelly rejected almost this exact argument. In that case, research organizations, individual researchers, and public interest organizations filed suit against the NARA and the Archivist seeking access to presidential records of former President Ronald Reagan. Id. at 218. They challenged the legality of an Executive Order that established timetables and procedures for incumbent and former presidents to claim constitutional privileges with respect to presidential records otherwise subject to release under the Presidential Records Act. See id. at 218-224. The plaintiffs claimed that

defendants were improperly withholding and/or delaying the release of presidential records pursuant to the Executive Order. See id. at 218. They sought a declaratory judgment that the Executive Order was invalid and an injunction proscribing its implementation. Id. at 224 n.5

By the time the Court had the opportunity to consider the plaintiffs' claim, however, most of the records plaintiffs sought had already been released, there was no dispute over records withheld pursuant to an assertion of privilege, and the plaintiffs had no outstanding requests for presidential records.[10] Id. at 223-24, 228. Judge Kollar-Kotelly held that plaintiffs lacked standing to seek a declaratory judgment invalidating the challenged Executive Order, because they could demonstrate only a past harm. Id. The Court accepted the plaintiffs' argument that they had suffered a past harm in the form of delay in the release of the records, but rejected the contention that they were likely to suffer the same harm in the future. Id. at 227-28. The Court concluded that even the "significant likelihood that [p]laintiffs will again seek access to presidential records, and face indeterminate delays in accessing them," does not establish the requisite future injury that is "sufficiently imminent, and not conjectural and hypothetical." Id. Because plaintiffs could not demonstrate the requisite future injury, the Court dismissed, for lack of standing under Article III, plaintiffs' claims for prospective declaratory and injunctive relief. See id.

CREW does not have standing, based on any potential future injuries, to pursue an injunction against DHS's transfer and removal of WAVES records. That CREW alleges that it "uses government records made available to it under the FOIA," 2d Am. Compl. at ¶ 4, does not suffice to establish the kind of future harm that satisfies Article III because such an allegation does not relate

---

[10] That the instant case differs from American Historical Association with regard to the existence of an outstanding FOIA request is unimportant because DHS relies on American Historical Association for its discussion of the requirements for establishing a future injury.

to the kind of records at issue in this case. In other words, CREW has not alleged that it plans to file a FOIA request for WAVES records. Such an allegation would be pure speculation, in any case, and so would fall far short of the requisite "real and immediate" threat of harm required by Article III. Haase, 835 F.2d at 911 (quoting Golden, 394 U.S. at 109); American Historical Assoc., 310 F.Supp 2d. at 227-28.

Finally, CREW lacks standing to seek a declaratory judgment regarding the legality of the transfer and removal policy because, with respect to the first category of documents, such a judgment will not give CREW access to any records and therefore will not redress CREW's harm, and with respect to the second and third categories of documents, CREW cannot satisfy the causation and redressability elements of the standing inquiry (as discussed in detail above, pp. 12-13).

## CONCLUSION

For the above stated reasons, the Court should dismiss Claim Four of plaintiff's complaint.

Dated: August 30, 2006                                        Respectfully submitted,

                                                              PETER D. KEISLER
                                                              Assistant Attorney General

                                                              KENNETH L. WAINSTEIN
                                                              United States Attorney

                                                              CARL J. NICHOLS
                                                              Deputy Assistant Attorney General

                                                              JOSEPH H. HUNT
OF COUNSEL:                                                   Branch Director

MOLLY WEBER                                                   s/ Justin M. Sandberg

16

United States Secret Service

ELIZABETH J. SHAPIRO
(D.C. Bar No. 418925)
Assistant Branch Director
SARA CLASH-DREXLER
(Pa. Bar No. 86517)
Trial Attorney
JUSTIN M. SANDBERG
(Ill. Bar. No. 6278377)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7224
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 514-3489
Facsimile:  (202) 616-8202
E-mail:  justin.sandberg@usdoj.gov

<u>Attorneys for Defendant</u>