**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,    ) | |
| Plaintiff,    ) | |
| v.    ) | Civil Action No. 06-883 (JGP) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY,    ) | |
| Defendant.    ) | |
| DEMOCRATIC NATIONAL COMMITTEE,    ) | |
| Plaintiff,    ) | |
| v.    ) | Civil Action No. 06-842 (JGP) |
| UNITED STATES SECRET SERVICE,    ) | |
| Defendant.    ) | |

## MOTION TO DISMISS PLAINTIFF'S FOIA CLAIMS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States Department of Homeland Security respectfully moves the Court to dismiss, for lack of subject matter jurisdiction, plaintiff Citizens for Responsibility and Ethics in Washington's ("CREW's") Freedom of Information Act claims set forth in the second amended complaint (Claims One, Two, and Three). The accompanying memorandum sets forth the grounds for this motion.

Dated: September 21, 2006                    Respectfully submitted,


                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             KENNETH L. WAINSTEIN
                                             United States Attorney

                                             CARL J. NICHOLS
                                             Deputy Assistant Attorney General

                                             JOSEPH H. HUNT
OF COUNSEL:                                  Branch Director

MOLLY WEBER                                  s/ Justin M. Sandberg
United States Secret Service                 ELIZABETH J. SHAPIRO
                                             (D.C. Bar No. 418925)
                                             Assistant Branch Director
                                             SARA CLASH-DREXLER
                                             (Pa. Bar No. 86517)
                                             Trial Attorney
                                             JUSTIN M. SANDBERG
                                             (Ill. Bar No. 6278377)
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Avenue, N.W. #7224
                                             P.O. Box 883 Ben Franklin Station
                                             Washington, D.C. 20044
                                             Telephone:  (202) 514-3489
                                             Facsimile:  (202) 616-8202
                                             E-mail:  justin.sandberg@usdoj.gov

                                             Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | |
| ) | Civil Action No. 06-883 (JGP) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ) ) ) | |
| Defendant. ) ) | |
| DEMOCRATIC NATIONAL COMMITTEE, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | |
| ) | Civil Action No. 06-842  (JGP) |
| UNITED STATES SECRET SERVICE, ) ) | |
| Defendant. ) ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S FOIA CLAIMS

### INTRODUCTION

Plaintiff filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents relating to any visits that specified individuals made to the White House, offices of the Executive Office of the President ("EOP"), or the residence of the Vice President between January 1, 2001, and the present.  Because defendant has now released all responsive

records (with the exemptions noted below), plaintiff's FOIA claims are moot, the Court lacks

subject matter jurisdiction over them, and these claims should, accordingly, be dismissed.[1]

For the Court to retain jurisdiction over plaintiff's FOIA claims, plaintiff must

demonstrate that defendant has improperly withheld agency records.  Plaintiff cannot make this

showing.  Following a reasonable search, defendant released to plaintiff the requested records on

September 20, 2006.  Plaintiff is entitled to nothing more under FOIA.  Thus, as plaintiff already

has obtained all that it could receive from a judgment of the Court, namely, the release of the

documents sought by its FOIA request, plaintiff's FOIA claims are moot and the Court lacks

jurisdiction.

## BACKGROUND

By letter dated February 2, 2006 and received by the Secret Service on February 16, 2006,

plaintiff submitted a FOIA request seeking "records, regardless of format and including

electronic records and information, relating to any visit that any of the following individual made

to the White House or the residence of the Vice President from January 1, 2001 to the present:

Jack Abramoff, Michael Scanlon, Neil Volz, Tony Rudy, Shawn Vassell, Kevin Ring, Edwin

Buckham, [and] Patrick Pizzella."  Second Amended Complaint For Declaratory and Injunctive

Relief, ¶ 24.  The Secret Service acknowledged receipt of CREW's request on March 1, 2006,

---

[1] The Secret Service does not concede, through its use of the word "responsive" or otherwise, that the records it has produced or searched are in fact "agency" records, as that term is used in the FOIA. Nevertheless, the Secret Service is not withholding any records on this basis.

2

and plaintiff filed suit on May 10, 2006.  Complaint for Declaratory Judgment and Injunctive

Relief.[2]

To locate records responsive to plaintiff's request, the Secret Service queried the relevant

records systems.  No responsive records were identified with respect to the Vice President's

residence.  Declaration of Kathy J. Lyerly, Special Agent in Charge, Liaison Division, and

Freedom of Information and Privacy Acts Officer, United States Secret Service ("Lyerly

Declaration"), September 21, 2006, at ¶ 28.   With respect to the White House and the EOP

(collectively, "the White House Complex")[3], the relevant records systems contain: (1) Access

Control Records System ("ACR") records, and (2) Worker and Visitor Entrance System

("WAVES") records.  Id. at ¶ 6.  ACR records are generated when a permanent White House

pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the

electronic pass readers located at entrances to and exits from the White House Complex.  Id. at ¶

7.  ACR records contain information such as the pass holder's name and badge number, the time

and date of the swipe, and the post at which the swipe was recorded.  Id. WAVES records consist

---

[2]Plaintiff has since filed two amended complaints.  The first amended complaint added a claim under the Federal Records Act (Claim Four), challenging the Secret Service's alleged practice of transferring WAVES records to the White House and subsequently removing copies of those records from its system.  See Amended Complaint for Declaratory and Injunctive Relief at ¶¶ 2, 44-47.  After defendant filed a motion to dismiss Claim Four of the amended complaint, which plaintiff did not oppose, plaintiff sought and was granted leave to file a second amended complaint restating its Federal Records Act claim pursuant to the Administrative Procedure Act.  See Second Amended Complaint for Declaratory and Injunctive Relief ("2d Am. Compl.") at ¶¶ 2, 44-47.  Defendant has separately moved to dismiss Claim Four of plaintiff's second amended complaint.  See docket entry no. 34 (filed on August 30, 2006).  The instant motion pertains only to plaintiff's first three claims, which arise under FOIA.

[3]There are some EOP offices located outside of the White House Complex, but defendant does not maintain or operate access systems at these sites.  Lyerly Declaration at ¶ 24.

of records generated when information is submitted by a White House pass holder to the Secret

Service about workers and visitors who need access to the White House complex to conduct

business or attend social events.  Id. at ¶ 8.  A WAVES record includes the following information

submitted by a pass holder:  the visitor's name, date of birth, and Social Security number; the

time and location of the planned visit; the name of the pass holder submitting the request; and the

date of the request.  Id.  It also may include limited information from background checks

performed by the Secret Service and coded instructions to Secret Service officers.  Id.  Once a

visit takes place, WAVES records are typically updated electronically with information showing

the actual time and place of the visitor's entry into and exit from the White House Complex.  Id.

Through document releases on May 10 and July 7, defendant provided plaintiff with all

documents responsive to its request insofar as the request pertains to Jack Abramoff.  Lyerly

Declaration at ¶ 23.  On September 20, 2006, defendant released all remaining responsive

documents to plaintiff.  Id. at ¶ 32.[4]  (Defendant has settled the FOIA claim raised by the other

---

[4]As explained in Special Agent Lyerly's declaration, defendant made only minor redactions
to these records prior to production.  Pursuant to FOIA Exemption 6 and 7(c), the Social Security
numbers and dates of birth of named individuals were redacted to protect those individuals from
unwarranted invasions of their privacy.  Lyerly Declaration at ¶ 29.  Exemption 6 protects those
matters "the disclosure of which would constitute a clearly unwarranted invasion of personal
privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(c) protects law enforcement information that, if
disclosed, could reasonably be expected to constitute an unwarranted invasion of personal privacy.
Id. at § 552(b)(7)(c).  Pursuant to FOIA Exemptions 2(high), 6, 7(c), and 7(e), defendant also
redacted limited information from background checks performed by the Secret Service and coded
information containing instructions to officers of the Secret Service.  Lyerly Declaration at ¶ 29.
Exemption 2(high) protects information that, if disclosed, would increase the risk that the law would
be circumvented.  Id. at § 552(b)(2).  Exemption 7(e) affords protection to all law enforcement
information that "would disclose techniques and procedures for law enforcement investigations or
prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such
disclosure could reasonably be expected to risk circumvention of the law."  Id. at § 552(b)(7)(e).
Entries for Michael Scanlon were also redacted when information in the documents demonstrated
that the entries did not refer to the Michael Scanlon referred to in plaintiff's request.  Lyerly

4

plaintiff, the Democratic National Committee, by doing what it has done with respect to CREW, namely, release all responsive documents, with the exemptions noted in this brief and the accompanying declaration, that were in the Secret Service's possession at the time of the search.) A reasonable search uncovered no responsive documents for Edwin Buckham or Shawn Vassell, but responsive documents relating to Shawn Vasell were found and released, even though plaintiff did not ask for documents for Shawn Vasell with that spelling. See id. at ¶¶ 23, 32.

## ARGUMENT

**I.    PLAINTIFF'S FOIA CLAIMS ARE MOOT AND SHOULD BE DISMISSED BECAUSE DEFENDANT, FOLLOWING A REASONABLE SEARCH, HAS RELEASED DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUEST**

The mootness doctrine requires federal courts to decide only "actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). Even if an action poses an actual case or controversy when filed, the mootness doctrine requires courts to dismiss it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir.1990). When an action becomes moot, federal subject matter jurisdiction disappears, see Arizonans for Official English v. Arizona, 520 U.S. 43, 66-67 (1997), and dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate, see Kirkham v. Société Air France, 429 F.3d 288, 291 (D.C. Cir. 2005). Pursuant to Rule 12(b)(1), a court may consider matters outside the pleadings to determine whether it has jurisdiction. Venetian Casino Resort, L.L.C. v. EEOC, 409 F.3d 359, 365 (D.C. Cir. 2005).

---

Declaration at ¶ 30. The single visit to the White House by Michael Scanlon reflected in the documents released to plaintiff may not relate to the Michael Scanlon referred to in plaintiff's request; that possibility simply could not be excluded.

"Under 5 U.S.C. § 552(a)(4)(B) [i.e., FOIA], a federal court is authorized only to 'enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" Perry v. Block, 684 F.2d 121, 125 (D.C. Cir.1982) (quoting 5 U.S.C. § 552(a)(4)(B)). Therefore, if an agency releases in full all records responsive to a request, "the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made." Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980). See also Drake v. FAA, 291 F.3d 59, 67 (D.C. Cir. 2002) (holding that FAA's release of all documents responsive to plaintiff's FOIA request mooted plaintiff's FOIA claim); Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987) (concluding that the case was moot because the agency had released all non-exempt material to plaintiff); Perry, 684 F.2d at125 (explaining that if the government has "released all nonexempt material, we have no further judicial function to perform under the FOIA"). In other words, a FOIA case becomes moot once an agency releases all responsive documents because, at that point, the plaintiff has "obtained everything that [it] could recover . . . by a judgment of th[e] court in [its] favor." Hall v. CIA, 437 F.3d 94, 99 (D.C. Cir. 2006) (internal quotations omitted).

The Court lacks jurisdiction over plaintiff's FOIA claims in this action. Special Agent Lyerly's declaration establishes that defendant, following a reasonable search, has turned over all of the documents responsive to plaintiff's FOIA request. Lyerly Decl. at ¶ 32. To establish the sufficiency of its search, the agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents," Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984), which means "a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested."

6

Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that an agency is not

required to search every record system).  An agency, to establish the adequacy of its search, need

only describe the "scope and method of the search" in "reasonable detail," Perry, 684 F.2d at

127, in non-conclusory declarations submitted in good faith, see Steinberg, 23 F.3d at 551.  Such

declarations "need not be precise," but must show that a good faith effort was made "to conduct a

search for the requested records," Schrecker, 217 F. Supp. 2d at 33, 34, and "aver[] that all files

likely to contain responsive materials . . . were searched[.]"  Wilbur, 273 F. Supp. 2d at 124.

"Agency [declarations] are accorded a presumption of good faith, which cannot be rebutted by

'purely speculative claims about the existence and discoverability of other documents.'"

Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1202 (D.C. Cir. 1991) (quoting Ground Saucer

Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir.1981)).

　　　　There is no question that defendant's search for documents responsive to CREW's

request was more than reasonable.  As explained in Special Agent Lyerly's declaration,

defendant conducted multiple searches for responsive records using qualified personnel and

appropriate search terms to search all databases and all other established data storage locations

that it believed might include responsive records.  See Lyerly Declaration at ¶¶ 10-14, 16-21, 27-

28.  With respect to records pertaining to visits to the White House Complex, agency personnel

that conduct FOIA searches as part of their regular responsibilities searched all established

storage places for responsive WAVES and ACR records.  Id. at ¶¶ 11-14.  In addition, a special

Inspection Team conducted a separate search of two computers after defendant learned that the

computers potentially contained additional responsive documents.  Id. at ¶¶ 16-21.  Secret

Service officers assigned to the Vice President's residence completed a comparably thorough

7

search of all established storage locations for data pertaining to visits to the residence.  Id. at ¶¶ 27-28.

In sum, the declaration of Special Agent Lyerly amply satisfies defendant's obligation to establish the adequacy of its search by "demonstrat[ing] that it has conducted a search reasonably calculated to uncover all relevant documents."  Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); see also Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that an agency is not required to search every record system, but must simply show "that it made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested").  Because defendant has produced all responsive documents, plaintiff's FOIA claims are moot, and dismissal pursuant to Rule 12(b)(1) is warranted.[5]  See Drake, 291 F.3d at 67; Tijerina, 821 F.2d at 799; Perry, 684 F.2d at 125; Crooker, 628 F.2d at 10.

## II.    DEFENDANT HAS NO OBLIGATION TO RETRIEVE RECORDS FROM THE WHITE HOUSE

Plaintiff will likely contend that its claims are not moot because WAVES records maintained by the White House, which were transferred before plaintiff submitted its request, are responsive agency records that defendant must retrieve.  This argument is without merit, for two reasons.  First, defendant did not control or possess these WAVES records at the time of plaintiff's FOIA request, see Lyerly Declaration at ¶¶ 13, 25-26, and it is well-established that defendant need not retrieve them to respond to plaintiff's request. Kissinger v. Reporters

---

[5]  As noted in Tijerina, 821 F.2d at 799, and Perry, 684 F.2d at125, exempt material need not be released to render a case moot.  At any event, plaintiff has previously indicated that it does not object to defendant's redactions of information out of privacy and law enforcement concerns.

Committee for Freedom of the Press, 445 U.S. 136, 150-151 (1980).  Second, and relatedly, the

WAVES records are not agency records subject to FOIA because defendant did not control them

at the time of the request.  See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 145 (1989);

Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 515 (D.C. Cir. 1996).  Therefore,

the Court has no power to grant relief under the FOIA.  Kissinger, 445 U.S. at 150.

Pursuant to a mutual understanding that WAVES records are and would remain under the

control of the White House, it has been the longstanding practice of the Secret Service to transfer

WAVES records on CD-ROM to the White House Office of Records Management every thirty to

sixty days.  See Lyerly Declaration at ¶ 13, 25-26.  The intent of the Secret Service was to ensure

that, once transferred, the records were erased from its computer system.  Id. at ¶ 13.  Starting in

October 2004, the Secret Service began temporarily retaining a copy of each CD-ROM sent to

the White House.  Id. at ¶ 13.  Also, the Secret Service possessed on the dates of the searches

some pre-October 2004 WAVES data that were left on the hard drives of two of its computers.

Id. at ¶¶ 14-17.  The Secret Service has already released documents found on the CD-ROMs and

the hard drives, i.e., the documents that it possessed at the time it received plaintiff's FOIA

request.  Id. at ¶ 15, 22, 32. The Secret Service does not have a comprehensive set of pre-October

2004 WAVES records, nor did it at the time it received plaintiff's request.  See id. at ¶ 17.  That

certain records were transferred to the White House many months, or even years, prior to

plaintiff's request does not entitle plaintiff to those records.

The Supreme Court held in Kissinger that a defendant need not retrieve documents that it

did not possess or control at the time of the FOIA request.  445 U.S. 150-151.  A court can order

relief in a FOIA case only if an agency has (1) "improperly"; (2) "withheld"; (3) "agency

records." 5 U.S.C. § 552 (a)(4)(B); <u>Kissinger</u>, 445 U.S. at 150.  (Jurisdiction is lacking unless the agency has contravened all three elements of the statute.  <u>Kissinger</u>, 445 U.S. at 150.)  The <u>Kissinger</u> Court concluded that a defendant has not withheld a document under FOIA unless it had possession or control of the document *at the time of the FOIA request*:  "[T]he [agency] cannot be said to have had possession or control of the documents at the time the requests were received.  It did not, therefore, withhold any agency records, an indispensable prerequisite to liability in a suit under FOIA."  <u>Id.</u> at 155.  And the Court added, if the agency did not withhold a document, then FOIA does not allow a court to order the agency to retrieve it.  <u>See id.</u> at 152 ("If the agency is not required to create or retain records under FOIA, it is somewhat difficult to determine why the agency is nevertheless required to retrieve documents that have escaped its possession, but which it has not endeavored to recover.")

Control is not only an important part of the  "withholding" component of FOIA's jurisdictional provision, but it is also a constituent element of the "agency records" component.  <u>Tax Analysts</u>, 492 U.S. at 145 (explaining that an agency must control a document at the time of the FOIA request for the document to be an agency record).  The test for control with respect to both elements is the same when, as here, the agency did not possess the records at the time of the request.  <u>See Tax Analysts</u>, 492 U.S. at 148 n.9 (noting that the control inquiry with respect to withholding "replicates" the control inquiry for agency records); <u>United We Stand v. IRS</u>, 359 F.3d 595, 602 (D.C. Cir. 2004) (limiting, to different circumstances than those present here, a modification of the control test for determining whether documents are agency records).  To determine whether an agency had control over the records at the time of the request in this circumstance, a court looks to:

10

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the records as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and, (4) the degree to which the document was integrated into the agency's record systems or files.

Burka, 87 F.3d at 515.

Defendant need not retrieve any WAVES records held by the White House at the time of plaintiff's FOIA request because defendant lacked possession and control over the records and so, pursuant to Kissinger, did not withhold them.[6]  445 U.S. at 155.  Defendant obviously did not possess, at the time of plaintiff's FOIA request, the WAVES documents that were transferred to the White House, as they had already been sent there.[7]   See Lyerly Declaration at ¶ 13.  Nor did defendant have control of the WAVES records that had been transferred to the White House: pursuant to a mutual understanding between the White House and the Secret Service, the WAVES records are under the control of the White House; the Secret Service does not direct the use or disposition of the WAVES records possessed by the White House; the Secret Service did not rely on these documents to fulfill its protective mission, but for a brief period prior to and during any visits listed in the WAVES records; and the records were not well-integrated into the Secret Service's files, but were erased after being held only long enough to facilitate an orderly

---

[6] Though the Secret Service possesses some documents containing pre-October 2004 WAVES data, they are irrelevant to this argument because they have been released to plaintiff. Lyerly Declaration at ¶¶ 22, 32.

[7] Defendant transferred these records to the White House, well before plaintiff's request, see Lyerly Declaration at ¶ 13, because the White House is the party with a continuing interest in these documents, see id. at ¶ 26..

11

transfer to the White House.  See Lyerly Declaration at ¶¶ 25-26; Burka, 87 F.3d at 515.
Pursuant to Kissinger, then, defendant did not withhold any WAVES records.  445 U.S. at 155.

The same "control" analysis demonstrates that records turned over to the White House are not Secret Service "agency records."  Tax Analysts, 492 U.S. at 145 (holding that a document is not an agency record unless it was controlled by the agency at the time of the FOIA request).  The test for control with respect to establishing which records are "agency records" is the same when, as here, the agency did not possess the records at the time of the request.  See supra pp. 10-11. As established in the preceding paragraph, defendant did not possess or control the records at the time of the request.  Thus, the WAVES records are not agency records, Tax Analysts, 492 U.S. at 145, and the Court lacks the power to order relief, including retrieval (because all three elements of the FOIA statute have not been transgressed), Kissinger, 445 U.S. at 150.

## CONCLUSION

For the reasons discussed above, the Court should grant defendant's motion and dismiss plaintiff's FOIA claims as moot.

Dated: September 21, 2006                    Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             KENNETH L. WAINSTEIN
                                             United States Attorney

                                             CARL J. NICHOLS
                                             Deputy Assistant Attorney General

                                             JOSEPH H. HUNT
OF COUNSEL:                                  Branch Director

MOLLY WEBER
United States Secret Service

s/ Justin M. Sandberg
ELIZABETH J. SHAPIRO
(D.C. Bar No. 418925)
Assistant Branch Director
SARA CLASH-DREXLER
(Pa. Bar No. 86517)
Trial Attorney
JUSTIN M. SANDBERG
(Ill. Bar. No. 6278377)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7224
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 514-3489
Facsimile:  (202) 616-8202
E-mail:  justin.sandberg@usdoj.gov

Attorneys for Defendant