## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, )<br><br>Defendant. ) | Civil Action No. 06-883 (JGP) |
| DEMOCRATIC NATIONAL COMMITTEE, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES SECRET SERVICE, )<br><br>Defendant. ) | Civil Action No. 06-842  (JGP) |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLAIM FOUR OF PLAINTIFF'S SECOND AMENDED COMPLAINT

### STATEMENT

In its opening brief, the Department of Homeland Security ("DHS") demonstrated that the

Court lacks jurisdiction over Citizens for Responsibility and Ethics in Washington's ("CREW's")

Claim Four because (i) the Federal Records Act ("FRA"), as interpreted in <u>Armstrong v. Bush</u>, 924

F.2d 282, 294 (D.C. Cir. 1991), precludes Administrative Procedure Act ("APA") suits for injunctive

relief regarding the treatment of records, and thereby disables the APA's waiver of sovereign immunity, and (ii) CREW cannot satisfy the prerequisites of Article III standing with regard to its requests for prospective declaratory and injunctive relief.[1]

Nothing in CREW's response to DHS's motion undermines these arguments. With respect to the first argument, CREW asserts that <u>Armstrong</u> permits the kind of claims that it has brought and that the FRA provides the necessary waiver of sovereign immunity. These arguments are wrong. <u>Armstrong</u> explicitly holds that the FRA *precludes* suits which seek an injunction requiring an agency to stop transferring documents or to retrieve transferred documents, because such suits undermine the administrative enforcement scheme contained in the FRA. 924 F.2d at 294. And the FRA does not provide a waiver of sovereign immunity. <u>see</u> 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24.

With regard to Article III, CREW contends that it has standing both because it is suffering an ongoing injury and because it faces the prospects of an imminent future injury. Neither contention is correct. DHS has released all documents responsive to CREW's request (with limited redactions made pursuant to FOIA exemptions). Thus, plaintiff has no present or ongoing injury. CREW's alleged future injuries do not support Article III standing because they are entirely speculative. For the above stated reasons, which are elaborated more fully below, and for the reasons provided in DHS's opening memorandum, the Court should dismiss Claim Four.

---

[1] DHS assumes that the documents at issue are records under the Federal Records Act and subject to FOIA solely for the purposes of this motion.

I.    **The Court Lacks Jurisdiction to Consider CREW's Request For an Injunction Regarding the Treatment of WAVES Records.**

CREW's APA claim (Claim Four) should be dismissed for lack of subject matter jurisdiction, to the extent that the claim seeks an order that either prohibits DHS from removing records from its system or requires DHS to retrieve records from the White House, because there is no applicable waiver of sovereign immunity. In its response, CREW argues that Armstrong v. Bush, 924 F.2d 282, 294 (D.C. Cir. 1991), explicitly authorizes the claim that DHS's first argument seeks to dismiss, and that the Federal Records Act ("FRA") waives the government's sovereign immunity against it. CREW's arguments fail: Armstrong holds that APA claims seeking the kind of injunctive relief that CREW seeks are precluded by the FRA, and the FRA does not waive the government's sovereign immunity.

DHS's argument for dismissal in its opening brief depends on Armstrong and § 701 of the APA. Armstrong holds that the FRA precludes certain kinds of claims, including APA claims, like the one in this case, for injunctions against the improper removal of documents or for retrieval of the same: "Congress [ ] decided to rely on administrative enforcement, rather than judicial review at the behest of private litigants, to prevent the destruction or removal of records." Armstrong, 924 F.2d at 294; Memorandum in Support of Motion to Dismiss Claim Four of Plaintiff's Second Amended Complaint ("Memorandum"), August 30, 2006, at 6-7; see Second Amended Complaint for Declaratory Judgment and Injunctive Relief ("2d Am. Compl.") at p. 13 ("Prayer for Relief). The FRA precludes these kinds of actions because they upset the carefully crafted administrative enforcement scheme enshrined in the FRA, by which an agency head or the Archivist is to enlist the Attorney General to bring an action to help stop the improper removal of federal records or seek their

retrieval.  <u>Armstrong</u>, 924 F.2d at 294; Memorandum at 6.  This preclusion renders the APA's

waiver of sovereign immunity inapplicable, and because the FRA does not waive the government's

sovereign immunity, there is no applicable waiver of sovereign immunity.  Memorandum at 7; 5

U.S.C. § 701(a)(1) (explaining that the APA applies except to the extent that "statutes preclude

judicial review").  Thus, the Court lacks jurisdiction over CREW's claim to the extent described in

the opening of this section.  Memorandum at 7.

CREW contends that DHS's opening brief misinterprets <u>Armstrong</u> and that the FRA

provides the necessary waiver of sovereign immunity.  CREW argues that <u>Armstrong</u> explicitly

provides that a plaintiff may challenge the legality of an agency's record-keeping policy (through an

APA claim), and that is all that it seeks to do here.  Plaintiff's Opposition to Defendant's Motion to

Dismiss Claim Four of Plaintiff's Second Amended Complaint ("Response"), September 13, 2006,

at 9.  What is more, CREW contends that DHS's arguments to the contrary "conflate the invocation

of jurisdiction with the nature of the relief sought." Response at 9-10.  Finally, CREW maintains that

the FRA provides the waiver of sovereign immunity necessary to permit the court to entertain its

claim.  Response at 9-10.

CREW misreads Armstrong and is wrong that the FRA waives sovereign immunity.  While

<u>Armstrong</u> concludes that *certain kinds* of challenges to record keeping policies are not precluded

by the FRA, including claims seeking declaratory relief, it emphatically *rejects* the contention that

APA actions seeking injunctions against the improper removal of records or for their retrieval are

among this lot.[2]  <u>Armstrong</u>, 924 F.2d at 291, 294.  The FRA precludes judicial review of such

---

[2] In this case, however, CREW cannot seek a declaratory judgment on the legality of DHS's alleged record-keeping policy because, as explained in Part II of this memorandum, it lacks constitutional standing to pursue such relief.

actions, "[b]ecause it would clearly contravene th[e] system of administrative enforcement to authorize private litigants to invoke federal courts to prevent an agency official from improperly destroying or removing records." Id. at 294; cf. Block v. Community Nutrition Institute, 467 U.S. 340, 349 (1984) ("When a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.").

CREW unsuccessfully attempts to sidestep Armstrong's injunctive-relief holding by claiming that it is merely challenging the propriety of DHS's policy, which Armstrong allows, and that the nature of the policy (i.e., that it is allegedly one of document destruction) is irrelevant to the preclusion inquiry. Response at 9. This argument fails because it ignores CREW's requests for injunctive relief. CREW's complaint does not merely seek a declaratory judgment on the propriety of the policy; it also seeks injunctive relief in the form of court orders barring DHS from continuing to remove records from its system and requiring DHS to retrieve records that have already been transferred. 2d Am. Compl. at p. 13 ("Prayer for Relief). As discussed in the previous paragraph and in DHS's opening brief, Memorandum at 6-7, the FRA precludes such claims for injunctive relief. Contrary to CREW's assertion, DHS's arguments have not improperly conflated jurisdictional and remedial inquiries, Response at 9, but rather have recognized that under Armstrong the nature of the claim matters to the preclusion inquiry.[3] See Armstrong, 924 F.2d at 294.

---

[3] That CREW contends that the Secret Service's actions violate the FRA itself, Response at 9 (arguing that the agency "policy at issue is one of document destruction"), rather than agency guidelines promulgated pursuant to it (as in Armstrong), is unimportant because allowing private litigants to bring actions to prevent the destruction of records or secure their retrieval would upset the system of administrative enforcement regardless of whether the actions were brought directly under the FRA or related regulations, and the point of preclusion is to protect this administrative enforcement system. See Armstrong, 924 F.2d at 294. Armstrong, which framed the issue to be

By precluding CREW's APA action, the FRA renders the APA's waiver of sovereign immunity inapplicable. <u>See</u> 5 U.S.C. § 701(a)(1) (explaining that the APA applies except to the extent that "statutes preclude judicial review"); <u>Heckler v. Chaney</u>, 470 U.S. 821, 828 (1985) (noting that APA review is inappropriate unless a plaintiff "clear[s] the hurdle of § 701(a)"); <u>High Country Citizens Alliance v. Clarke</u>, 2006 WL 2037154, at *2 (10th Cir. July 21, 2006) ("In other words, before the waiver of sovereign immunity under § 702 applies, 'a party must first clear the hurdle of § 701(a).' "); <u>Tozzi v. EPA</u>, 148 F. Supp. 2d 35, 43 (D.D.C. 2001) ("The APA's sovereign immunity waiver does not apply where a statute has explicitly precluded judicial review."). CREW contends that the FRA itself waives the government's sovereign immunity. [4] But the FRA does not waive the government's sovereign immunity, <u>see</u> 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24, and that explains why CREW never cites to the statutory provision supposedly containing such a waiver, which, under basic sovereign immunity principles, must be explicit, <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text."). Indeed, it would be odd for the FRA to waive the government's

---

resolved with respect to preclusion as one of an agency's compliance with its own regulations, 924 F.2d at 294, supports this point by relying on <u>Kissinger v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 147-48 (1980), a challenge to agency compliance with the FRA itself.

[4] Whether the FRA contains a waiver of sovereign immunity is largely beside the point because the FRA would still preclude CREW's action even if it waived sovereign immunity (nothing about the existence of a waiver of sovereign immunity would undermine <u>Armstrong</u>'s preclusion holding); preclusion would simply result from the absence of an applicable jurisdictional statute. <u>See</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977) (general federal question jurisdiction under 28 U.S.C. § 1331 is not available when judicial review is precluded by statute).

sovereign immunity for suits by private individuals given that the FRA does not contain a private

right of action.  See Kissinger, 445 U.S. at 148-49.[5]

## II.    CREW Lacks Standing to Pursue its Claims for Declaratory and Injunctive Relief.

The Court should also dismiss CREW's APA claim for lack of standing because CREW's

opposition makes clear that it cannot demonstrate the requisite future or ongoing injury required by

Article III of the Constitution.  In its opposition brief, CREW alleges injury tied to its FOIA request

at issue in this lawsuit, framed in several ways.  CREW alleges that: "but-for DHS's unlawful

document destruction policy, CREW would have access to all of the records it is seeking," Response

at 10 (emphasis in original); its injury is "an inability to obtain through the FOIA information

necessary to accomplish CREW's mission," id.; and "CREW has been frustrated in achieving its

mission when it sought and was denied the information requested," id. at 11.  CREW also alleges

that, "for any future request, CREW is at the complete mercy of the Secret Service's document

transfer and destruction policy." Id. at 10.  None of these alleged injuries, however, suffices to

establish standing under Article III to obtain the relief CREW seeks – i.e., a judgment invalidating

---

[5] CREW cites American Friends Svc. Comm. v. Webster, 720 F.2d 29 (D.C. Cir. 1983), as support for the proposition that the Court has jurisdiction to hear its claim.  In fact, American Friends does not support CREW's position, because, as explained in Armstrong, 924 F.2d at 295 n.9, the court in American Friends decided only that plaintiffs could challenge an agency's record-keeping policy under the APA, and not that a private litigant could seek injunctions against the improper removal of records or for the retrieval of removed records.  CREW cannot seek a declaratory judgment on the legality of DHS's alleged record-keeping policy, however, because, as discussed in Part II of this memorandum, it lacks constitutional standing to pursue such relief.

defendant's alleged policy for handling WAVES records and an injunction precluding its implementation in the future.[6]

It is well established that, to have standing, a plaintiff seeking prospective relief must show more than a past injury – he must demonstrate that he is "realistically threatened by a repetition" of the alleged violation.  See City of Los Angeles v. Lyons, 461 U.S. 95, 102, 109 (1983).  In these circumstances, an allegation of past injury or "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects."  See id.  See also Golden v. Zwickler,  394 U.S. 103, 108 (1969) (cited in Lyons, 461 U.S. at 104) (dismissing declaratory judgment action because there was no case or controversy of "sufficient immediacy and reality"); Haas v. Sessions, 835 F.2d 902, 911 (D.C. Cir. 1987) (noting that the rule articulated in Lyons applies to claims for declaratory relief).  CREW has not satisfied this requirement in the complaint and further demonstrates in its opposition brief that it cannot.

CREW's lack of standing as articulated by defendant in its opening brief is now made even more stark by the fact that defendant has since produced to CREW all records responsive to its FOIA request (with limited redactions made pursuant to FOIA exemptions), including WAVES records that were in defendant's possession at the time CREW submitted its request.  Although CREW will likely argue that it is entitled under FOIA to WAVES records that defendant transferred to the White House before CREW submitted its request, that argument is plainly incorrect.  FOIA does not require an agency to produce documents that were not in its possession or control at the time of the request. See Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's FOIA Claim, September

---

[6] With respect to CREW's request for injunctive relief, the constitutional standing argument provides another reason, in addition to the preclusion argument laid out in Part I of this memorandum, to dismiss CREW's claim.

21, 2006, at 8-12 (discussing defendant's lack of possession and control over these documents);

Kissinger v. Reporters Committee For Freedom of the Press, 445 U.S. 136, 150-51 (1980).

CREW's asserted injuries tied to its FOIA request (e.g., "but-for DHS's unlawful document destruction policy, CREW would have access to all of the records it is seeking," Response at 10 (emphasis in original)), presumably refer to records that were transferred before the time of its request and which are thus unavailable under FOIA.  An injunction against the future transfer and removal of WAVES records, however, can have no effect on records that have already been transferred.  These asserted injuries do not give CREW standing to seek prospective relief, because the requested relief cannot redress the alleged harm.[7]  CREW must be able to demonstrate  present ongoing or future likelihood of injury as a result of defendant's alleged policy for handling WAVES records.

Because defendant has responded to plaintiff's FOIA request encompassing WAVES records, CREW has no pending requests that potentially encompass WAVES records and, thus, no present or ongoing interest in WAVES records that conceivably could be harmed by future implementation of defendant's alleged policy for handling WAVES records.  As defendant anticipated in its opening brief, CREW attempts to cure its failure to allege ongoing or future harm in the complaint by arguing that, because of its organizational mission, CREW is a frequent "FOIA use[r]," that "CREW has used and will continue to use the FOIA to gain access to agency records

_____

[7] CREW argues that defendant's "arguments regarding standing conflate jurisdictional requirements with what remedies it believes the Court may adopt." Response at 13.  That the injury alleged will be "redressed" by the relief plaintiff seeks, however, is a constituent part of standing under Article III.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The requirements of standing must be met with respect to each aspect of relief sought by a plaintiff.  See Friends of the Earth, Inc. v. Laidlaw, 528 U.S. 167, 185 (2000) (noting that "a plaintiff must demonstrate standing separately for each form of relief sought").

that relate to the propriety of government activity," and that "for any future request, CREW is at the complete mercy of [defendant's] document transfer and destruction policy." Response at 10-11. These allegations do not, however, establish a present or ongoing interest in WAVES records or the requisite likelihood of future injury as a result of defendant's future handling of WAVES records.

CREW's asserted mission – "to inform and educate the public" regarding "unethical and illegal conduct by those involved in government," Response at 11 – and its frequent use of FOIA in furtherance of its mission does not establish an ongoing interest in WAVES records. WAVES records have no direct relationship to its mission, and, consequently, CREW does not even attempt to argue that it intends to submit future FOIA requests for WAVES records. Instead, the import of CREW's argument is that, because it is a frequent FOIA user, it could be harmed by and, thus, should have standing to challenge any policy of any agency regarding the transfer or destruction of any and all government records – an argument that essentially guts the "injury-in-fact" requirement of Article III. Defendant does not contest that "CREW is within the zone of interests of the FRA disposal provisions," Response at 11, but Article III of the Constitution requires that plaintiff also be able to demonstrate "injury-in-fact" that is "concrete" or specific, as well as "actual or imminent." Lujan, 504 U.S. at 560.

As discussed in defendant's opening brief, even if plaintiff were to assert that it is likely to seek WAVES records under FOIA again in the future, that assertion would not suffice to demonstrate a threat of future injury that is "real and immediate," as opposed to "merely conjectural or hypothetical," as is required under Article III. City of Lyons, 461 U.S. at 102; Memorandum at 14-15 (discussing Judge Kollar-Kotelly's similar holding in American Historical Assoc. v. National Archives and Records Administration, 310 F.Supp.2d 216 (D.D.C. 2004)). In American Historical

10

Assoc, plaintiffs similarly argued that they had standing to challenge the legality of an Executive Order affecting procedures for incumbent and former presidents to claim constitutional privileges with respect to presidential records otherwise subject to release under the Presidential Records Act based on their general professional or organizational interest in presidential records and the internal workings of the government.  See 310 F.Supp.2d at 228.  Specifically, the plaintiff organizations argued that they were likely to be harmed by future implementation of the Order because they "regularly request and make use of presidential and vice presidential records" in furtherance of their organizational missions.  Id.  Judge Kollar-Kotelly disagreed, holding that plaintiffs' professional interest or organizational missions alone did not suffice to demonstrate standing under Article III.  In the absence of a specific pending request for presidential records, the Court ruled that plaintiffs could not demonstrate a likelihood of future injury that was "sufficiently imminent, and not conjectural and hypothetical." Id.  Likewise, here, because plaintiff has no pending FOIA requests for WAVES records and no other basis to claim an ongoing or future interest in WAVES records, it lacks standing under Article III to challenge defendant's alleged policy for handling WAVES records going forward.

The cases CREW cites regarding organizational standing are off the mark.  See Response at 11-12.  The issue presented in those cases was whether the plaintiff organizations could demonstrate injury to their organizational mission or daily operations, as opposed to injury to purely ideological interests, which the Supreme Court has held does not suffice under Article III.  See, e.g., Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler, 789 F.2d 931, 937-38 (D.C. Cir. 1986) (discussing organizational standing as articulated by the Supreme Court in Sierra Club v. Morton, 405 U.S. 727 (1972)).  That issue is not presented here.  Moreover, the challenged conduct

11

in each of the cases CREW cites, unlike here, had a direct and immediate impact on the mission of the plaintiff organization.  In <u>Action Alliance</u>, for example, the plaintiffs – "four organizations that endeavor, through informational counseling, referral, and other services, to improve the lives of elderly citizens," 789 F.2d at 935 – challenged the United States Department of Health and Human Services' Age Discrimination Act regulations affecting requirements for recipient programs. Plaintiffs alleged that they were injured because the challenged regulations eliminated certain informational requirements that, in turn, denied plaintiffs access to information directly tied to their missions to inform and educate the elderly.  <u>See</u> <u>id.</u> at 935, 937-38.  Here, in contrast, defendant's alleged policy for handling WAVES records has no such direct link to or impact on CREW's mission.  CREW has not even attempted to articulate a link between WAVES records and its organizational goals.  CREW's asserted mission to expose and inform the public of government corruption does not establish such a link.

In sum, defendant has produced to CREW, with limited redactions made pursuant to FOIA exemptions, all documents in its possession responsive to CREW's FOIA request, including WAVES records.  CREW has no pending requests for WAVES records and no other basis to claim a present or ongoing interest in WAVES records.  That CREW may have been harmed by defendant's alleged policy for handling WAVES records in the past does not give it standing to seek prospective relief.  CREW has failed to demonstrate any ongoing injury or likelihood of future harm sufficient to establish standing to challenge defendant's alleged policy going forward.  Accordingly, the Court should dismiss Claim Four for lack of standing under Article III to the extent that it seeks prospective relief – i.e., a declaratory judgment invalidating defendant's alleged policy for handling WAVES records and an injunction precluding its future implementation.

## CONCLUSION

For the above stated reasons, and those provided in Defendant's opening memorandum, the Court should dismiss Claim Four of plaintiff's complaint.

Dated: September 25, 2006                    Respectfully submitted,


                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             KENNETH L. WAINSTEIN
                                             United States Attorney

                                             CARL J. NICHOLS
                                             Deputy Assistant Attorney General

                                             JOSEPH H. HUNT
OF COUNSEL:                                  Branch Director

MOLLY WEBER                                  s/ Justin M. Sandberg
United States Secret Service                 ELIZABETH J. SHAPIRO
                                             (D.C. Bar No. 418925)
                                             Assistant Branch Director
                                             SARA CLASH-DREXLER
                                             (Pa. Bar No. 86517)
                                             Trial Attorney
                                             JUSTIN M. SANDBERG
                                             (Ill. Bar. No. 6278377)
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Avenue, N.W. #7224
                                             P.O. Box 883 Ben Franklin Station
                                             Washington, D.C. 20044
                                             Telephone:  (202) 514-3489
                                             Facsimile:  (202) 616-8202
                                             E-mail:  justin.sandberg@usdoj.gov

                                             Attorneys for Defendant