**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 06-0842 (JGP) |
| UNITED STATES SECRET SERVICE, | : | |
| Defendant. | : | |
| | | |
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 06-0883 (JGP) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | : | |
| Defendant. | : | |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S MOTION**
**TO DISMISS PLAINTIFF'S FOIA CLAIMS**

To address arguments raised and certain positions taken by defendant, Department of Homeland Security ("DHS"), in its most recent brief and at the status conference on October 5, 2006, Citizens for Responsibility and Ethics in Washington ("CREW") respectfully submits this surreply[1] to defendant's reply in support of its motion to dismiss plaintiff's FOIA claims. In particular, CREW addresses the lack of good faith demonstrated by the government in its

---

[1] The Court allowed plaintiff to file this surreply upon granting an oral motion at the status conference on October 5, 2006. Transcript at 39.

1

actions, the failure of the government to demonstrate the adequacy of the search it conducted for records subject to the Freedom of Information Act ("FOIA"), and the need for a completely developed record through limited and targeted discovery.

> I. The Record Raises A Significant Question As To The Agency's Good Faith.

The presumption of good faith afforded government officials is a rebuttable one. Here, the government's behavior directly implicates its duty of good faith, because it has acted recklessly, dishonestly, and irresponsibly. The evidence of bad faith is both clear and convincing, and begins with the declarations submitted by Special Agent Kathy J. Lyerly, under penalty of perjury, and advanced zealously by her counsel in this litigation.

It is well-settled that declarations submitted in a FOIA case must be relatively detailed, non-conclusory, and made in good faith. Judicial Watch, Inc. v. Export-Import Bank, 108 F.Supp.2d 19, 26 (D.D.C. 2000). The government has offered three declarations from a single agency official attesting to the adequacy of the search performed by the Secret Service here as well as other significant material factual matters including the agency's record keeping practices.[2] The first declaration submitted by Ms. Lyerly in the Judicial Watch case and relied upon here, as well, stated that there were no responsive WAVES records. That initial declaration states in paragraph 15: "The Secret Service's search of the WAVES records maintained by the

---

[2] Ms. Lyerly appears to lack the basis for her rather extensive observations in her declarations. For example, all three of Ms. Lyerly's declarations attest to the "longstanding practice" of the Secret Service to transfer WAVES records on CD-ROM to the White House, although she has only served as Secret Service FOIA/PA officer since December 28, 2003, according to her declarations. See, e.g., Exhibit 4, Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's FOIA Claims and Request for Discovery. This statement notwithstanding, she offers no basis by which to assess her knowledge, which is important here given her brief tenure in her current position as Secret Service FOIA/PA officer.

Secret Service produced no WAVES records responsive to plaintiffs FOIA request."[3] Yet, in her second declaration, Ms Lyerly makes the contradictory statement that the agency has additional responsive documents that reside on at least two computer hard drives. Exhibit 3, Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's FOIA Claim and Request for Discovery ("Plaintiff's Response"). The conflict between the two declarations brings into question all the statements made by Ms. Lyerly and placed before this Court including her statements regarding the adequacy of the agency's search. On this basis alone there is a significant and non-frivolous question as to the veracity of any statements made in any of the Lyerly declarations. Although the presumption of good faith operates in the government's favor, the statements made – particularly when made under penalty of perjury – require reliability. The credibility of this declarant's testimony, which is the sole support offered for all of the factual positions taken by the agency, and in particular, the adequacy of the search performed, is in serious question. Further factual exploration, is needed to resolve this issue.

      Equally in question are statements made in the third Lyerly declaration, filed with defendant's motion to dismiss CREW's FOIA claim. In that declaration, Ms. Lyerly states – apparently without any attempt to ascertain the truth of the matter – that CREW has been provided all of the documents that are responsive to its request. Her statement is not qualified in any manner or preceded by limiting words or phrases such as "my counsel informs me;" nor has she has attempted to correct her declaration with a fourth submission. Specifically, Ms. Lyerly states in paragraph 32 of her third declaration signed under penalty of perjury on September 21,

---

[3]This declaration was initially filed in the <u>Judicial Watch</u> case. Judicial Watch sought under the FOIA records relating to Mr. Abramoff's White House visits – also included in CREW's request.

2006: "On September 20, 2006, all documents responsive to CREW's February 2, 2006 FOIA request with the redactions noted were produced to CREW." Obviously, she was unencumbered with the facts when offering this statement.

As was discussed in some detail at the status conference on October 5, 2006, on the date that the declaration was filed with the Court, the agency actually had not produced the referenced documents to CREW. In fact, delivery of the documents was not even attempted by hand until September 22, 2006, and even then, the address used on the hand delivery envelope was incorrect, indicating a location at DuPont Circle. Exhibit 1, Plaintiff's Surreply.

Moreover, the documents that have been produced belatedly by defendant, do not include all records within the legal custody and control of the agency. Notably, all of Ms. Lyerly's declarations are scant on any details of the handling of the documents that the Secret Service purportedly transfers to "the White House Office of Records Management every 30 to 60 days," except to say that it was the intent of the Secret Service to destroy its copies of the records once they were transferred. But Ms. Lyerly does not explain what this transfer actually means or whether and how the physical location of the documents and the Secret Service's ability to access the documents are changed, if at all, by this "transfer." In none of the statements in the three declarations the agency submitted does the declarant contend that those documents are not accessible to the Secret Service following transfer, which goes to the heart of the question of whether the requested documents are agency records. This point is addressed in greater detail below.

Ms. Lyerly's false statements were compounded by the arguments advanced by the government in its brief filed on September 21, 2006, that the case was moot because all

responsive records had been produced, and the actions of its counsel. Even if government counsel had properly addressed the envelope within which the documents purportedly were mailed (which he did not), it was not reasonable for the government to anticipate next-day delivery when forwarding documents to its mailroom for mailing by regular United States mail.[3]

Indeed, government counsel has yet to submit reliable evidence explaining what was done and why, and counsel continue to justify its actions as fully consistent with its obligations under the Federal Rule of Civil Procedure – even in the fact of knowledge that it sent the documents to the wrong address. CREW, by contrast, when making its statements regarding the non-receipt of the documents at issues, supplied a reliable declaration of counsel.  There is nothing in this record to rebut those statements in CREW's declaration, the Court having only the inconsistent and questionable actions and statements of government counsel,  which were not offered in the form of declarations or sworn affidavits, and should therefore carry little, if any weight. CREW's claims challenging the good faith of the government in its actions in this case are not speculative and invite further inquiry.

> II. Discovery Is Necessary To Develop the Factual Record Regarding
> the Government's Good Faith and the Issues Surrounding the
> <u>Custody, Maintenance, and Control of Agency Records Under the FOIA.</u>

Under these circumstances, including demonstrated bad faith and instances where the agency's position is an ever-changing and moving target, further factual inquiry is warranted and necessary.  <u>See, e.g.,</u> <u>Judicial Watch v. U.S. Department of Commerce</u>, 34 F.Supp.2d 28. 33 (D.D.C. 1998) (the Court ordered discovery on the issue of the adequacy of the agency's search

---

[3]The Federal Rules of Civil Procedure recognize that U.S. Mail delivery does not occur overnight.  Rule 6(e) allows three additional days to accomplish any act when service is made by U.S. Mail.

for documents and permitted further discovery when evidence was uncovered that the government illegally destroyed and removed from its custody responsive documents in an attempt to circumvent FOIA disclosure requirements).  There is a valid question of whether the records at issue are "agency records," within the meaning of FOIA, the disclosure of which is statutorily mandated.  While the agency disputes this claim, they have done so with conclusory statements, advancing no specific or objective evidence in support of its assertion.

The government steadfastly maintains that the records that have been transferred by the Secret Service to the White House Office of Records Management are not agency records for purposes of FOIA.[4]  It is that assertion, that fails to address any of the legal factors determinative of what constitutes an agency record, and that requires further factual exploration.

As noted by the Supreme Court, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'" United States Department of Justice v. Tax Analysts, 492 U.S. 136, 142n.3 (1989)(citations omitted).  Furthermore, in Bureau of National Affairs, Inc. v. U.S. Department of Justice, 742 F.2d 1484 (D.C. Cir. 1984), the D.C. Circuit addressed the question of what constituted agency records within the meaning of FOIA.  Noting that the FOIA statute itself does not provide a definition for "agency records," the court rejected the agency's invitation to hold that the treatment of documents for disposal and retention purposes determined their status under FOIA.  Id. at 1493.

---

[4]The records finally produced by the agency do not contain copies of records that the Secret Service "transferred" to the White House Office of Records Management between the date of CREW's FOIA request and October 2004, when the National Archives and Records Administration apparently intervened, requiring a change in the alleged "longstanding policy."  The agency maintains that because those records are not agency records, Secret Service need not produce them.  See Defendant's Motion to Dismiss FOIA Claims and Defendant's Reply in Support of Defendant's Motion to Dismiss Plaintiff's FOIA Claims.

Yet it is precisely this – Secret Service's decision to transfer records that Ms. Lyerly says are no longer needed by the agency that protects our President – that the agency relies upon to advance its position that the records that it has transferred to the White House are not agency records.[5]   S

The Court could find, based on the case law and the record as it stands, that the records requested by CREW are agency records because the agency has not met its burden and demonstrated otherwise.  In Washington Post v. U.S. Department of State, 632 F.Supp. 607 (D.D.C. 1986), the Court set forth a straightforward four-factor test, following the D.C. Circuit's decision in Bureau of National Affairs, to determine whether materials are agency records under FOIA: (1) The document was generated within the agency seeking to avoid disclosure; (2) the document has been placed into agency files; (3) the document is within the agency's control; and (4) the document has been used by the agency for an agency purpose. Id. At 612-13.

It is obvious that the first factor is met here – it is undisputed that the documents at issue originally were generated by the Secret Service and that the Secret Service seeks to avoid disclosure.  Likewise, the second factor, that the documents at issue have been placed into the agency files,  is clear based on the Secret Service's own description of its record-keeping practices.  The Secret Service downloaded the records in question and subsequently deleted them from the Secret Service's system.  As such, they most certainly are a part of the Secret Service's files.  Even the agency's effort and attempts to destroy the documents was not fully successful, leaving records on the hard drives of two computers at the agency.

---

[5] Ms. Lyerly's September 21, 2006 declaration states: "Once a visitor's visit to the White House Complex is complete, WAVES and ACR records have no continuing usefulness to the Secret Service, the Secret Service has no continuing interest in preserving or retaining them . . . and the Secret Service does not control or direct the ultimate disposition or use of the records." Declaration at ¶26.

The third factor as set forth in the Washington Post case, that the documents are within the agency's control, is contested by the agency; however, the agency offers no proof to meet its burden of proving lack of control. What is known, however, is that the Secret Service had sufficient control to destroy certain of the requested documents, and it had sufficient control to offer up so-called White House documents to settle this litigation.[6] These indicia of control refute the agency's claims to the contrary.[7]

The fourth and final factor, that the documents have been used by the agency for agency purposes, is not subject to reasonable debate. The documents at issue, the WAVES and ACR records of certain visitors to the White House, are clearly used by the Secret Service when authorizing entry and exit from the premises.

### III. The Discovery that CREW Seeks Is Limited and Precise.

These fundamental questions cannot be answered on the current record, and accordingly, discovery is needed to assist in the development of all relevant facts. Mindful that discovery typically is sparingly granted in FOIA actions, the discovery that CREW seeks here is both limited and precise. It is targeted to obtain only the relevant information that the agency has fought to keep out of the record – information that is critical and necessary to supply to the Court for purposes of deciding the issues presented. CREW seeks the following discovery:

---

[6]Despite the statements in defendant's brief suggesting to the contrary, the settlement discussions in this case did not occur under any confidentiality agreement, and none was requested by the government at the time. Moreover, the offers addressed here and in other briefing by the parties were not made before the magistrate or before a court-ordered mediator, and Local Rule 84.9(a) is inapplicable.

[7]The Secret Service may have custody, as well. The record is not fully developed on this point, although as noted above, these "White House documents" were offered by the government in settlement.

**1. CREW seeks to depose Ms. Lyerly.**  Through the deposition of Ms. Lyerly, CREW expects to obtain unfiltered direct answers addressing the details of the policies, procedures, and methods which were raised in her declarations.  CREW seeks to cross-examine Ms. Lyerly based on certain broad and thus far unsupported statements that she has made in her declarations; we are entitled to discover the basis for these statements if any of her declarations are to be considered by the Court.  Further, we seek to address in detail the issues of bad faith, and we need to explore, in deposition, the process of the preparation of her declarations in order to accomplish this.  In particular, it is important to explore the nature of the preparation of her declarations, what her role in the preparation was, and what work or examination she herself performed before executing these statements for submission to the Court.

**2. CREW seeks to depose, pursuant to Rule 30(b)(6), a knowledgeable person regarding the work of the Inspection Team, and a person knowledgeable regarding the document search performed by the Presidential Protective Division of the Secret Service; we note that Ms. Lyerly is not such a person and should not be designated for either of these depositions.**  CREW seeks two witness with direct personal knowledge regarding the search performed and the efforts undertaken by the "inspection team" and the Presidential Protective Division referred to in Ms. Lyerly's declarations.

**3. The third-party discovery sought by CREW is essential to resolve facts brought forward by defendant, and the Court posses the power to order this discovery under Rule 45.**  CREW does not seek random discovery of the White House at large; rather, we seek a deposition of a person with personal knowledge – again under Rule 30(b(6) – from the White House Office of Records Management.  This deposition is necessary to discover how the

9

transfer, handling, and maintenance of the records at issue has been and is conducted. Additionally under Rule 45, CREW seeks to depose the as yet unnamed person at the National Archives and Records Administration who is referred to in paragraph 2 of the second Lyerly declaration. This is the person who, according to defendant, made the request to the Secret Service that it retain its own copies of WAVES records. We seek direct examination to explore these hearsay statements.

With respect to the limited and targeted discovery sought by CREW, it is important to note that the defendant has involved the actions and statements of these non-party witnesses and defendant has called into question their activities. Particularly in light of the questionable motives and the non-frivolous allegations of bad faith, this discovery is warranted. Jurisdictionally, under Rule 45, the Court has the power to order the examination of these government officials to resolve the issues, and we ask the Court to do so expeditiously.

Even if the Court should find, based upon the record as it stands, that the CD Roms transferred to the White House constitute agency records under FOIA, discovery remains necessary to explore the government's bad faith in apparently transferring records from the agency that created them in order to make them unreachable under FOIA. The motivation of the government is critical to an understanding of its asserted policy and practices here. More to the point, the facts surrounding the actions of the government are material to the resolution of the case because should the Court find bad faith, through its inherent power, the Court may impose certain remedies.

This is not a situation where CREW is "fishing" for information that may impugn the declarations submitted by the government. Indeed, it already has made the case that the

declarations are deficient and lack honesty, and there still remain unanswered questions regarding the government's position that what occurred here is in any way ordinary and permissible. In this case, the motive matters, as to why the defendant transferred its records to an office in the White House that is not reachable by FOIA.[8]

                    Respectfully submitted,

                    _____
                    Anne L. Weismann
                    (D.C. Bar No. 298190
                    Sharon Y. Eubanks
                    (D.C. Bar No. 420147
                    Citizens for Responsibility and Ethics
                      In Washington
                    1400 Eye Street, N.W., Suite 450
                    Washington, D.C. 20005
                    Phone: (202) 408-5565
                    Attorneys for Plaintiff

Dated: October 12, 2006

---

[8] On October 10, 2006, the Washington Post filed a complaint against the same defendant for injunctive and declaratory relief regarding similar records requested under FOIA and challenging the agency's present view that the agency's records are governed by the Presidential Records Act, 44 U.S.C. §2201 et seq. For the convenience of the Court, a copy of these recently filed papers in Washington Post v. Department of Homeland Security are attached as Exhibit 2.. While defendant is not now pressing that defense here, it has made factual assertions through the declarations of Ms. Lyerly that are flatly inconsistent with its assertions in the recently filed Washington Post case that it lacks custody and control over all requested WAVES and ACR records. This is yet another action by the government that calls into question its obligation of good faith. Truth is not a malleable and expedient concept to be altered to suit the whim of the agency.