**EXHIBIT 2**

**1:06-cv-01737-RMU** WASHINGTON POST v. DEPARTMENT OF HOMELAND SECURITY
Ricardo M. Urbina, presiding
**Date filed:** 10/10/2006 **Date of last filing:** 10/10/2006

# History

| Doc. No. | Dates | Description |
|---|---|---|
| -- | *Filed:* 10/10/2006 *Entered:* 10/11/2006 | ❂ Summons Issued as to AUSA |
| 1 | *Filed:* 10/10/2006 *Entered:* 10/11/2006 | ❂ Complaint |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/11/2006 14:46:58 | | | |
| **PACER Login:** | cr1639 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:06-cv-01737-RMU |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE WASHINGTON POST** ) | |
| 1150 15th Street, N.W. ) | |
| Washington, DC 20071, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action |
| ) | |
| **DEPARTMENT OF HOMELAND** ) | |
| **SECURITY**, ) | |
| Washington, DC 20528, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552; and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.   Plaintiff

seeks injunctive and declaratory relief 1) to invalidate a determination by defendant

Department of Homeland Security that records sought by plaintiff are not subject to

disclosure under the FOIA; 2) to preserve the records sought by plaintiff pending the

resolution of this lawsuit; and 3) to compel the expedited disclosure of the requested

records.

### Jurisdiction and Venue

2. This court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This court also has

jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201(a) &

2202.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## The Parties

3. Plaintiff WP Company LLC d/b/a The Washington Post (the "Post") publishes a newspaper with a daily average paid circulation of approximately 724,240 and a Sunday average paid circulation of approximately 960,680. The Post's principal place of business is in the District of Columbia.

4. Defendant Department of Homeland Security ("DHS") is a department of the Executive Branch of the government of the United States. DHS is an "agency" within the meaning of 5 U.S.C. § 552(f). The United States Secret Service is a component of defendant DHS.

## The Post's FOIA Request, Request for Expedited Processing, and Correspondence with the Secret Service

5. By letter to the Secret Service dated June 12, 2006, the Post requested under the FOIA copies of agency records. Specifically, the Post requested:

a) All records and visitor logs, including WAVES and/or ACR records, from October 2004 to present, reflecting or concerning the entries and/or exits of any persons who sought or were scheduled to visit the following people in the Office of the Vice President: Vice President Cheney; David Addington, I. Lewis "Scooter" Libby, C. Dean McGrath, Steven Schmidt, John Hannah, Eric Edelman, Ron Christie, Victoria Nuland, Aaron Friedberg, Stephen Yates Samantha Ravich, and David Wurmser. Pertaining to the WAVES records, this request includes, but is not limited to, the portion of the WAVES records that lists the name of the person who is visiting, the room number visited, and the name of the person who arranged the visit with the Secret Service; [and]

b) All records and visitor logs, including WAVES and/or ACR records, from October 2004 to present, reflecting or concerning the entries and/or exits of any persons, other than the members of the Cheney family, visiting the vice-president's residence. Pertaining to the WAVES records, this request includes, but is not limited to, the portion of the WAVES records that lists the name of the person who is visiting, where the person went and the name of the person who arranged the visit with the Secret Service.

6. In its letter to the Secret Service dated June 12, 2006, the Post requested

"expedited processing" of its FOIA request, noting that there is "an urgency to inform the

public" about the activities reflected in the requested records for two distinct reasons.

First, the Post asserted that the requested records "will help the public understand the

degree to which lobbyists and special interest representatives may have influenced policy

decisions of the Bush administration and in particular the positions taken by the Office of

the Vice President."  The Post noted that "[t]he relationship between administration

officials and lobbyists has emerged as a significant issue in the wake of the ongoing

scandals involving lobbyists Jack Abramoff as well as various members of Congress, and

of course in the controversy over Vice President Cheney's role in setting federal energy

policy."  Second, the Post asserted that "[t]he vice-president's office – and the contacts it

had – is under scrutiny in the CIA-leak case currently under investigation by special

prosecutor Patrick Fitzgerald."  The Post noted that "[t]he public interest in the CIA leak

case will only intensify as Scooter Libby's criminal trial approaches."

7. With respect to the specific need for an expedited response to its FOIA request,

the Post stated in its letter of June 12, 2006, to the Secret Service that "the consequences

of delaying a response would compromise a significant public interest.  With the midterm

elections looming, any delay in processing this request would deprive the public of its

ability to make its views known in a timely fashion either at the polls, by lobbyist or

through other contacts with public officials."

8. By letter to the Post dated June 16, 2006, the Secret Service issued its initial

determination to deny the Post's request for expedited processing of its FOIA request.

The Secret Service stated that "[i]f you disagree with our determination, you have the

right of administrative appeal within 35 days …." The agency further stated: "Please be advised we are processing your request. Your continued patience is appreciated."

9. By letter to the Secret Service dated July 12, 2006, the Post appealed the agency's initial determination to deny its request for expedited processing. In its appeal letter, the Post reiterated that the "urgency [for expedited disclosure] stems from both the pendency of the mid-term elections and the commencement of Mr. Libby's criminal trial early next year," and noted that "[g]iven that the election will occur first (in early November), our right to expedited process of [our] FOIA request will effectively be lost if the requested material is not processed and released prior to the election."

10. By letter to the Post dated August 31, 2006, the Secret Service issued its decision on the Post's appeal and stated that "it is the determination of the Secret Service that your appeal is granted and that expedited treatment is appropriate in this matter." The agency further stated that "the Secret Service's Freedom of Information and Privacy Acts Office has initiated a search for records."

11. By letter to the Secret Service dated September 5, 2006, counsel for the Post inquired about the status of the Post's FOIA request. Counsel noted that the "request was received by the Secret Service on June 12, and has now been pending without response for approximately 60 working days," and stated that "[i]n light of the fact that the agency now agrees that the request is legally entitled to expedited processing, such a delay is unacceptable." Counsel requested from the agency "either your assurance that processing will be completed immediately or 'credible evidence' that such action is 'truly not practicable.'"

12. On September 6, 2006, Letita Huff of the Secret Service called counsel for the

Post in response to counsel's inquiry concerning the status of the Post's FOIA request.

Ms. Huff  stated that the agency was "continuing" to work on the request, and that given

the "scale" of the request, it would take the agency some time to complete its processing.

Ms. Huff refused to provide counsel for the Post even an estimated completion date.

13.  By letter to the Post dated September 20, 2006 (but not received by the Post

until October 2), the Secret Service asserted as follows:

> The records you seek are not agency records subject to the FOIA.  These
> records are governed by the Presidential Records Act, 44 U.S.C. § 2201 et
> seq., and remain under the exclusive legal custody and control of the
> White House and the Office of the Vice President.  Accordingly, the
> United States Secret Service lacks the authority to provide such records in
> response to your request.

The Secret Service did not inform the Post of any right of administrative appeal with

respect to its determination.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for
### Wrongful Withholding of Agency Records

14.  Plaintiff repeats and realleges paragraphs 1-13.

15.  The Post has exhausted the applicable and available administrative remedies

with respect to the Secret Service's determination of its FOIA request.

16.  Defendant DHS and its component, the Secret Service, have wrongfully

withheld the requested records from the Post.

17.  The Post is entitled to injunctive and declaratory relief with respect to the

release and disclosure of the requested documents.

**Requested Relief**

WHEREFORE, plaintiff prays that this Court:

A. issue a declaration that the records sought by the Post in this action

constitute "agency records" subject to the Freedom of Information Act;

B. order defendant DHS and its component, the Secret Service, to preserve

the records sought by the Post in this action pending final disposition of

this litigation;

C. order defendant DHS and its component, the Secret Service, to process

immediately the requested records in their entirety;

D. order defendant DHS and its component, the Secret Service, upon

completion of such expedited processing, to disclose the requested records

in their entirety and make copies available to plaintiff;

E. provide for expeditious proceedings in this action;

F. award plaintiff its costs and reasonable attorneys fees incurred in this

action; and

G. grant such other relief as the Court may deem just and proper.


Respectfully submitted,


___/s/_____
DAVID L. SOBEL
D.C. Bar No. 360418

1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009
(202) 246-6180
sobel@att.net

ERIC N. LIEBERMAN
D.C. Bar No. 436331

The Washington Post
1150 15th Street, N.W.
Washington, DC 20071
(202) 334-6017

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE WASHINGTON POST,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | |
| **DEPARTMENT OF HOMELAND** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**</u>

Pursuant to Fed. R. Civ. P. 65, plaintiff The Washington Post respectfully moves for entry of a preliminary injunction to enjoin defendant Department of Homeland Security's unlawful attempts to impede plaintiff's efforts to obtain agency records concerning individuals who visited, or sought to visit, Vice President Cheney and his senior staff.  Plaintiff seeks an order requiring defendant and its component, the United States Secret Service, 1) to preserve the requested records pending resolution of this litigation; and 2) to immediately process plaintiff's Freedom of Information Act request and disclose the requested records within 10 days of the court's order.

The grounds for this motion are set forth in the accompanying memorandum of points and authorities.  Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this application for a preliminary injunction at the Court's earliest convenience.

Respectfully submitted,


___/s/_____
DAVID L. SOBEL
D.C. Bar No. 360418

1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009
(202) 246-6180
sobel@att.net


ERIC N. LIEBERMAN
D.C. Bar No. 436331

The Washington Post
1150 15th Street, N.W.
Washington, DC 20071
(202) 334-6017

Counsel for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE WASHINGTON POST,       )
                                   )
              Plaintiff,      )
                                   )
           v.             )      Civil Action
                                   )
DEPARTMENT OF HOMELAND      )
  SECURITY,                 )
                                   )
             Defendant.     )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR A PRELIMINARY INJUNCTION

Plaintiff The Washington Post ("the Post") respectfully submits this memorandum of points and authorities in support of its motion for a preliminary injunction.

## Preliminary Statement

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of agency records concerning individuals who visited, or sought to visit, Vice President Cheney and his senior staff. Defendant Department of Homeland Security ("DHS") and its component, the United States Secret Service, have acknowledged that the requested information fits squarely within the narrow category for which Congress has mandated expedited processing and, on August 31, 2006, purported to grant the Post's request for such expeditious treatment. Nonetheless, in clear violation of the FOIA, the Secret Service has refused to process the Post's request, asserting a position that is contrary to explicit statutory language, relevant

caselaw and the agency's own recent actions.

As we demonstrate below, defendant's refusal to process the Post's request clearly violates the law. Because time is at the essence of the Post's rights and the agency's obligations, and because the information at issue concerns a matter of substantial and uncontested public interest, the Post seeks the Court's expedited consideration of this matter and entry of an order compelling the Secret Service to immediately process the Post's request and disclose the requested records within 10 days.

**Statement of Facts**

**A. The Post's FOIA Request and Request for Expedited Processing**

By letter to the Secret Service dated June 12, 2006, the Post requested under the FOIA copies of certain records created and used by the agency for controlling and monitoring access to the White House complex and the Vice President's Residence, including those contained in two particular systems – the Worker and Visitor Entrance System ("WAVES") and the Access Control Records System ("ACR"). Specifically, the Post requested:

> a) All records and visitor logs, including WAVES and/or ACR records, from October 2004 to present, reflecting or concerning the entries and/or exits of any persons who sought or were scheduled to visit the following people in the Office of the Vice President: Vice President Cheney; David Addington, I. Lewis "Scooter" Libby, C. Dean McGrath, Steven Schmidt, John Hannah, Eric Edelman, Ron Christie, Victoria Nuland, Aaron Friedberg, Stephen Yates Samantha Ravich, and David Wurmser. Pertaining to the WAVES records, this request includes, but is not limited to, the portion of the WAVES records that lists the name of the person who is visiting, the room number visited, and the name of the person who arranged the visit with the Secret Service; [and]
>
> b) All records and visitor logs, including WAVES and/or ACR records, from October 2004 to present, reflecting or concerning the entries and/or exits of any persons, other than the members of the Cheney family, visiting the vice-president's residence. Pertaining to the WAVES records, this request includes, but is not limited to, the portion of the WAVES records that lists the name of the person who is visiting, where the person

2

went and the name of the person who arranged the visit with the Secret
Service.

Letter from the Post to Latita M. Huff, Disclosure Office, United States Secret Service,

June 12, 2006 (attached hereto as Exhibit 1).

In its letter, the Post requested "expedited processing" of its FOIA request,

asserting that the request met the statutory standard for expedition because there is "an

urgency to inform the public" about the activities reflected in the requested records. *Id.*;

*see* 5 U.S.C. § 552(a)(6)(E)(v)(II). The Post noted that the standard was satisfied for two

distinct reasons. First, the Post asserted that the requested records "will help the public

understand the degree to which lobbyists and special interest representatives may have

influenced policy decisions of the Bush administration and in particular the positions

taken by the Office of the Vice President." The Post noted that "[t]he relationship

between administration officials and lobbyists has emerged as a significant issue in the

wake of the ongoing scandals involving lobbyists Jack Abramoff as well as various

members of Congress, and of course in the controversy over Vice President Cheney's

role in setting federal energy policy." Second, the Post asserted that "[t]he vice-

president's office – and the contacts it had – is under scrutiny in the CIA-leak case

currently under investigation by special prosecutor Patrick Fitzgerald." The Post noted

that "[t]he public interest in the CIA leak case will only intensify as Scooter Libby's

criminal trial approaches." Exhibit 1.

With respect to the specific need for an expedited response to its FOIA request,

the Post stated that "the consequences of delaying a response would compromise a

significant public interest. With the midterm elections looming, any delay in processing

this request would deprive the public of its ability to make its views known in a timely

3

fashion either at the polls, by lobbyist or through other contacts with public officials." *Id.*

**B.  The Agency's Initial Denial of the Post's Request for Expedited Processing, The Post's Appeal and the Agency's Final Determination**

By letter to the Post dated June 16, 2006, the Secret Service issued its initial determination to deny the Post's request for expedited processing of its FOIA request. The Secret Service stated that "[y]ou have not demonstrated that there is . . . a particular urgency to inform the public about an actual or alleged federal government activity. Therefore, . . . your request for expedited processing should be denied." Letter from the Secret Service to the Post, June 16, 2006 (attached hereto as Exhibit 2).   The agency advised the Post of its right of administrative appeal to challenge the denial of expedited processing, and stated, "Please be advised we are processing your request.  Your continued patience is appreciated." *Id.*

The Post appealed the agency's initial determination to deny its request for expedited processing by letter dated July 12, 2006.  Letter from the Post to the Deputy Director, United States Secret Service, July 12, 2006 (attached hereto as Exhibit 3).  In support of its appeal, the Post placed in the administrative record evidence concerning both the substantial public interest in the requested records and the time-sensitivity of the information.

With respect to the public interest in disclosure of the requested visitor logs, the Post stated, *inter alia,*

> Lest there be any doubt as to the accuracy of [the Post's] assertion that there is substantial public interest in the relationships between lobbyists and administration officials, we attach hereto search results from Google News indicating that there have been at least 122 published articles in the last several days concerning former lobbyist Jack Abramoff's visits to the White House [attached to the appeal letter as Exhibit 3].  Significantly, this news coverage was prompted by the Secret Service's disclosure of

White House visitor logs – precisely the sort of information that is at issue here.

*Id.*

Concerning the "urgency to inform the public" about the requested information, the Post stated in its appeal letter, *inter alia*,

> [We] specifically cited the impending November mid-term elections as a basis for expedited processing of [our] request. It is beyond dispute that ethics – primarily the question of lobbyist influence in the White House and Congress – has emerged as a significant campaign issue. As USA Today recently reported, "For the past year, Democrats have been jockeying for the high ground on congressional ethics, hoping a largely Republican lobbying scandal would help propel them into the majority come November's elections." *See* USA Today article [attached to the appeal letter as Exhibit 4]. "Rep. Rahm Emanuel of Illinois, chairman of the House Democratic campaign committee, said Republicans have 'a governing philosophy' to cozy up to lobbyists that has led them to favor industries such as oil and pharmaceuticals, producing higher prices for gasoline and prescriptions." *Id.* There can be no doubt that the relationship between industry lobbyists and high-ranking Republican officials will be a significant issue of debate in the November elections.
> . . .
>
> Although the Vice President is not a candidate in the upcoming mid-term elections, there is no question that his activities – and the public perception of those activities – will impact his party's prospects. As a Copley News Service report noted earlier this year, some Republican strategists "fear that Cheney has become more of a liability to Republicans running in close congressional races this year." [attached to the appeal letter as Exhibit 7]. The National Review reported that "the talk of Washington has been about" whether the Vice President "should be sacked to help turn around the national GOP's fortunes." [attached to the appeal letter as Exhibit 6]. A recent edition of CBS News' "Face the Nation" program featured a discussion of "Has Vice President Cheney become a political liability for the Republicans?" [attached to the appeal letter as Exhibit 8]. There is thus a clear nexus between the activities of the Vice President and his staff – particularly as they relate to lobbying and ethics issues – and the issues that voters will be considering when they go to the polls in November.

*Id.* The Post concluded its administrative appeal by stressing that the demonstrated need

for expedition would only be satisfied if the requested records were disclosed prior to the

November elections:

> For the foregoing reasons, we believe there is clearly an "urgency to
> inform the public" about the individuals who have visited the Vice
> President and his key staff members at the White House complex. As
> noted, that urgency stems from both the pendency of the mid-term
> elections and the commencement of Mr. Libby's criminal trial early next
> year. Given that the election will occur first (in early November), our
> right to expedited process of Ms. Becker's FOIA request will effectively
> be lost if the requested material is not processed and released prior to the
> election.

*Id.*

The agency ultimately changed course; by letter to the Post dated August 31,

2006, Brian K. Nagel, Deputy Director of the Secret Service, stated that "it is the

determination of the Secret Service that your appeal is granted and that expedited

treatment is appropriate in this matter." Mr. Nagel further stated that "[as the Post has

been previously advised,] the Secret Service's Freedom of Information and Privacy Acts

Office has initiated a search for records." Letter from Brian K. Nagel, Deputy Director,

United States Secret Service, to the Post, August 31, 2006 (attached hereto as Exhibit 4).[1]

### C. <u>The Agency's Refusal to Process the Post's FOIA Request<br>and Disclosure of White House Visitor Records to Other Parties</u>

Notwithstanding the assurances it had provided over the course of almost three

---

[1] Mr. Nagel's assertion that a search for responsive records had been previously initiated
was one of several assurances the agency provided to the Post that its FOIA request was
being processed. As noted, *supra*, the agency's letter of June 16, 2006, concluded with
this assurance: "Please be advised we are processing your request. Your continued
patience is appreciated." Exhibit 2. Following the agency's purported decision to
expedite the FOIA request, counsel for the Post wrote to inquire about its status, noting
that the "request was received by the Secret Service on June 12, and has now been
pending without response for approximately 60 working days," and stating that "[i]n light
of the fact that the agency now agrees that the request is legally entitled to expedited
processing, such a delay is unacceptable." Letter from Eric N. Lieberman, Deputy
Counsel to the Post, to Kathy J. Lyerly, Special Agent in Charge, United States Secret
Service, September 5, 2006 (attached hereto as Exhibit 5).

months, and several weeks after acknowledging that the FOIA's expedition standard had

been met, the agency abruptly informed the Post that the records it had requested were

not going to be processed after all.  By letter dated September 20, 2006,[2] the Secret

Service asserted as follows:

> The records you seek are not agency records subject to the FOIA.  These
> records are governed by the Presidential Records Act, 44 U.S.C. § 2201 *et
> seq.*, and remain under the exclusive legal custody and control of the
> White House and the Office of the Vice President.  Accordingly, the
> United States Secret Service lacks the authority to provide such records in
> response to your request.

Letter from Kathy J. Lyerly, Special Agent in Charge, United States Secret Service, to the

Post, September 20, 2006 (attached hereto as Exhibit 6).[3]

Remarkably, on the same day that it was asserting to the Post that it "lack[ed] the

authority" to release the requested records, the Secret Service was completing the process

of disclosing virtually identical records to another party.  On February 2, 2006, Citizens

for Responsibility and Ethics in Washington ("CREW") submitted a FOIA request to the

Secret Service for "all records relating to any visit that any and all of [a list of named

individuals] made to the White House . . . or the residence of the Vice President from

January 1, 2001 to the present."  Declaration of Kathy J. Lyerly, dated September 21,

2006 (filed in *CREW v. Department of Homeland Security*, Civ. No. 06-883 (D.D.C.))

("Lyerly CREW Decl.") (attached hereto as Exhibit 7), ¶ 4.  According to the Secret

Service, "[o]n September 20, 2006 [the date on which the agency refused to process the

---

[2]  The letter from the Secret Service was not received by the Post until October 2.

[3]  The Secret Service did not inform the Post of any right of administrative appeal with
respect to its determination that the requested records are not subject to FOIA.

Post's request], all documents responsive to CREW's February 2, 2006 FOIA request

with [certain] redactions . . . were produced to CREW." *Id.*, ¶ 32. Indeed, this was not

the first time that the Secret Service disclosed, pursuant to FOIA requests, precisely the

type of information at issue here. "[T]he Secret Service released to CREW, on May 10,

2006 and July 7, 2006, its WAVES and ACR data/records concerning Jack Abramoff."

*Id.*, ¶ 23. Similarly, on May 10, 2006, the agency released to Judicial Watch "without

redactions or claims of exemptions, all documents located in response to [the

organization's] January 20, 2006 FOIA request," which sought disclosure of records

"concerning, relating to, or reflecting . . . (a)ll White House visitor logs from January 1,

2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the

White House." Declaration of Kathy J. Lyerly, dated May 16, 2006 (filed in *Judicial*

*Watch v. United States Secret Service*, Civ. No. 06-310 (D.D.C.)) ("Lyerly Judicial

Watch Decl.") (attached hereto as Exhibit 8), ¶¶ 4, 19.

## ARGUMENT

The issue raised in this motion is simple and straightforward. After repeatedly

assuring the Post that its FOIA request was being processed, and after grudgingly

acknowledging that the request satisfied the FOIA's standard for expedited treatment, the

Secret Service belatedly asserted that the requested records are not subject to FOIA. As

we explain below, that assertion is untenable and contravenes clear statutory language

and controlling caselaw. The invalidity of the agency's position is demonstrated by the

fact that the Secret Service complied with another party's FOIA request for White House

visitor logs and related records *on the same day* that the agency represented to the Post

that such records "are not agency records subject to the FOIA" and that it "lack[ed] the

authority" to release them.  The agency's refusal to process the Post's request constitutes

a continuing impediment to the Post's (and the public's) ability to learn about the

individuals who have visited the Vice President and his key staff members, and whose

visits are controlled and monitored by the Secret Service.  The agency's action is clearly

unlawful and should be enjoined.

## I.  The Court has Jurisdiction to Grant the Requested Relief

The Court's jurisdiction to consider this matter and grant appropriate relief is

clear.  The FOIA provides, in pertinent part:

> On complaint, the district court of the United States . . . in the District of
> Columbia, has jurisdiction to enjoin the agency from withholding agency
> records and to order the production of any agency records improperly
> withheld from the complainant.  In such a case the court shall determine
> the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).  While exhaustion of administrative remedies, through the filing

of an administrative appeal, is generally required before a court can review an agency's

determination to withhold requested records, this Court has recognized an exception that

is applicable here:

> The FOIA specifically provides that the agency "shall immediately notify
> the person making such request of [its] determination, and the reasons
> therefor, and the right of such person to appeal to the head of the agency
> any adverse determination." 5 U.S.C. § 552(a)(6)(A).  *Courts have treated
> an agency's failure to notify a requestor of his right to appeal a FOIA
> denial as constructive exhaustion of the requestor's administrative
> remedies.  See, e.g., Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985)
> (finding that a "failure to inform an individual of the right to appeal
> constitutes a failure to reach a determination within the statutory time
> limitations . . . [and thus a] plaintiff[is] deemed to have exhausted [his]
> administrative remedies . . .").

*Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 328 (D.D.C. 2002) (emphasis

added).

In its letter to the Post dated September 20, 2006, in which the Secret Service asserted that the requested records "are not agency records subject to the FOIA," the agency did not inform the Post of any right to appeal that determination.  Exhibit 6.   The Post's claim is thus ripe for adjudication, as all applicable administrative remedies have been exhausted.

## II.  The Post is Entitled to Entry of a Preliminary Injunction

In considering the Post's request for the entry of a preliminary injunction compelling defendant DHS and the Secret Service to process the Post's FOIA request and disclose responsive records, the court must assess four factors — 1) likelihood of success on the merits; 2) irreparable injury to the plaintiff; 3) burden on others' interests; and 4) the public interest.  *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also Bancoult v. McNamara*, 227 F. Supp. 2d 144, 150 (D.D.C. 2002). Consideration of these factors in this case firmly establishes the Post's entitlement to injunctive relief.[4]

## A.  The Post is Likely to Prevail on the Merits

Given the clarity of the Post's statutory entitlement to the expeditious processing of its FOIA request, the Post's likelihood of prevailing on the merits is extremely high. In assessing plaintiff's likelihood of success, the Court must consider the merits of one discrete issue: whether the requested records constitute "agency records" under the FOIA. As we demonstrate, unequivocal statutory language, controlling precedent and the

---

[4]  This Court recently recognized that "[o]n numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions."  *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (citations omitted).

agency's own conduct all require the Court to reject the Secret Service's belated assertion that the visitor logs sought by the Post are not "agency records."

As the Supreme Court has held, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'" *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (citations omitted). The D.C. Circuit recently reiterated that an agency must "sustain[] its burden of demonstrating that the documents requested are not 'agency records.'" *Consumer Federation of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006), quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994) (internal quotation marks and additional citations omitted). In most cases in which the "agency records" issue arises, the agency asserts that the requested material is a "personal" record of an agency employee or official, *see, e.g., Consumer Federation* (officials' appointment calendars), or that the material was created by a non-agency third-party and subsequently acquired by the agency, *see, e.g., Tax Analysts* (court decisions). Here, in contrast, the Secret Service asserts that records it created and possesses are not "agency records," but are instead "governed by the Presidential Records Act, 44 U.S.C. § 2201 *et seq.*, and remain under the exclusive legal custody and control of the White House and the Office of the Vice President." Exhibit 6. As we show, the agency cannot sustain its burden.

As an initial matter, it is important to note that the D.C. Circuit has expressly rejected the suggestion that a document's purported status under the Presidential Records Act is dispositive of its status as an "agency record" under FOIA.

> [W]e reject the government's invitation to hold that the treatment of documents for disposal and retention purposes under the various federal records management statutes determines their status under FOIA. Those statutes prescribe how federal agencies are to create, dispose of, and

11

> otherwise manage documents and other material. [citing, *inter alia, Presidential Records Act*]. However tempting such a "bright line" test may be, it cannot be used as the divining rod for the meaning of "agency records" under FOIA.

*Bureau of Nat'l Affairs v. United States Dep't of Justice*, 742 F.2d 1484, 1493 (D.C. Cir. 1984) (citations omitted).

While the Court need not determine whether the Secret Service records at issue here could somehow be characterized as "presidential" records, such an inquiry would, in any event, quickly dispose of the agency's novel assertion. The Presidential Records Act provides, in pertinent part, that

> The term "Presidential records" means documentary materials, or any reasonably segregable portion thereof, created or received by the President, his immediate staff, or *a unit or individual of the Executive Office of the President whose function is to advise and assist the President*, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President. Such term—

> (A) includes any documentary materials relating to the political activities of the President or members of his staff, but only if such activities relate to or have a direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President; but

> (B) *does not include* any documentary materials that are . . . *official records of an agency* (as defined in [the FOIA, 5 U.S.C. § 552(f)]) . . .

44 U.S.C. § 2202(2) (emphasis added); *see also Armstrong v. Executive Office of the President*, 90 F.3d 553, 556 (D.C. Cir. 1996). The Secret Service is a component of defendant DHS, and is *not* "a unit . . . of the Executive Office of the President whose function is to advise and assist the President." In addition, as we set forth fully below, the requested records are "official records of an agency" (the Secret Service) and are thus expressly excluded from coverage under the Presidential Records Act.

12

1. __The Secret Service's Visitor Logs Meet the__
   __"Create" and "Control" Test for "Agency Records"__

In *Tax Analysts*, the Supreme Court held that to qualify as an "agency record" subject to FOIA, "the agency must 'either create or obtain' the requested materials," and "the agency must be in control of [them] at the time the FOIA request is made." 492 U.S. at 144 (quoting *Forsham v. Harris*, 445 U.S. 169, 182 (1980)).  Application of that standard here easily demonstrates that the requested visitor logs are "agency records" of the Secret Service.

a. __The Secret Service Created the Requested Records__

According to the sworn testimony of the Special Agent in Charge of the Liaison Division and the Freedom of Information and Privacy Acts Officer for the United States Secret Service, the visitor logs at issue in this case clearly are created by the agency:

> There are two interrelated systems – collectively termed the White House Access Control System – for controlling and monitoring access to the White House complex: the Worker and Visitor Enstrance System ("WAVES") and the Access Control Records System ("ACR").  The Vice President's residence is not a part of the White House Complex, and the Secret Service does not use WAVES or ACR at that site.

> ACR records consist of records generated when a pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the electronic pass readers located at entrances to and exits from the White House Complex.  . . .

> WAVES records consist of records generated when information is submitted by a White House pass holder to the Secret Service about workers and visitors who need access to the White House complex to conduct business or attend social events.  . . .  They may include limited information from background checks performed by the Secret Service and coded instructions to Secret Service officers.  . . .

> The Secret Service controls and monitors access to the Vice President's residence through the use of two access lists – a daily access list for individuals with appointments or work orders, and a permanent

access list for those individuals who regularly access the facility. . . . The
Secret Service conducts background checks on individuals for whom there
has been a request for admission, and if there is no information of
protective interest, the Secret Service places the name on a daily access
list.  A permanent access list is also maintained listing those individuals
who regularly access the facility.  All individuals are logged in by the
Uniformed Division [of the Secret Service] officer working at the gate
where the individual arrives.

Lyerly CREW Decl. (attached hereto as Exhibit 7), ¶¶ 6-9.

It is thus clear that the requested records are "generated when information is
submitted . . . to the Secret Service," and include "information from background checks
performed by the Secret Service and coded instructions to Secret Service officers," names
"the Secret Service places" on access lists, and names that "are logged in by" Secret
Service officers.  There can be no dispute that the visitor logs are "created" by the Secret
Service and that the first prong of the *Tax Analysts* test is satisfied here.

### b.  The Secret Service Controls the Requested Records

It is also beyond dispute that the logs meet the second prong of the test – that "the
agency must be in control of [the records] at the time the FOIA request is made."
Notwithstanding the Secret Service's assertion that it "lacks the authority" to provide
visitor logs to the Post, as we have shown, the agency has disclosed such logs to at least
two other parties on several occasions – most recently on the very day that it refused to
comply with the Post's request.  Regardless of whether the agency may have belatedly
(and conveniently) determined that it somehow lacks the ability to disclose White House
visitor logs, there is no question that it was "in control" of the material "at the time the

14

FOIA request [was] made" on June 12, 2006.[5]

The requested visitor logs are clearly "agency records" subject to FOIA, and the

Post is entitled to the immediate processing and release of the requested records.

**B.  The Post Will Suffer Irreparable Injury in the
     Absence of the Requested Injunctive Relief**

Unless the agency's unlawful failure to expeditiously comply with the Post's

FOIA request is immediately enjoined, the Post will suffer irreparable harm.[6]  The very

nature of the right that plaintiff seeks to vindicate in this action — expedited processing

— depends upon timeliness.  The courts have recognized that the requisite injury is

present, and preliminary injunctive relief is appropriate, in cases where "time is of the

essence."  *See, e.g.*, *United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988);

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).  Under the

statutory scheme Congress established in the FOIA, it is clear that "time is of the

essence" here and that any further delay in the processing of plaintiff's request will cause

_____

[5]  The Secret Service provided logs to CREW and Judicial Watch, in response to FOIA requests, on May 10, July 7, and September 20, 2006.  Lyerly CREW Decl.; Lyerly Judicial Watch Decl.

[6] Given the strength of the Post's position on the merits, even "a relatively slight showing of irreparable injury" is adequate to justify the issuance of a preliminary injunction.  As the D.C. Circuit has held:

> The test is a flexible one.  "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."  We have often recognized that injunctive relief may be justified, for example, "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."

*CSX Transportation, Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005), quoting *CityFed Financial Corp*, 58 F.3d at 747.  Nonetheless, the Post's showing of harm here is substantial.

irreparable injury. Unless the Secret Service is ordered to process the Post's request immediately, the Post's undisputed right to expedition under the FOIA will be irretrievably lost.

      In addition to the loss of its clearly established statutory right, any further delay in the processing of the Post's FOIA request will irreparably harm its ability, and that of the public, to obtain in a timely fashion information relevant to the upcoming mid-term Congressional election. Indeed, in support of its administrative appeal on the issue of expedited processing, which the agency ultimately conceded was "appropriate in this matter," Exhibit 4, the Post stressed that its "right to expedited process of [our] FOIA request will effectively be lost if the requested material is not processed and released prior to the election," Exhibit 3. The public oversight mechanism provided by the FOIA is central to open and democratic debate on critical policy issues such as those raised in next month's election. As the Supreme Court has observed, the Act is "a means for citizens to know 'what the Government is up to.' This phrase should not be dismissed as a convenient formalism. *It defines a structural necessity in a real democracy*." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-172 (2004) (emphasis added; citation omitted).

      It is clear that the information the Post seeks, if it is to contribute to the public debate, must be disclosed expeditiously. There is, as the Secret Service was constrained to acknowledge, "an urgency to inform the public about" the requested information. Because time is of the essence in this matter, the Post will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant effective relief," and before "all opportunity to grant the requested relief [is] foreclosed*." Local Lodge No. 1266, Int'l*

16

*Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th

Cir. 1981). As this Court recently noted,

> [t]he 1996 amendments to FOIA creating the statutory right to
> expedition in certain cases "underlined Congress' recognition of the value
> in hastening release of certain information." As [plaintiff] correctly notes,
> "the loss of that 'value' constitutes a cognizable harm." As time is
> necessarily of the essence in cases like this, such harm will likely be
> irreparable.

*Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006) (citations

omitted) (granting preliminary injunction).[7]

### C. Injunctive Relief Will Not Burden Others' Interests

Defendant DHS and the Secret Service cannot be said to be "burdened" by a

requirement that they comply with the law. The immediate relief the Post seeks will

require nothing more of the government than what the law already mandates — the

expedited processing of the Post's FOIA request. Nor will the requested relief burden the

interests of other parties who have submitted FOIA requests to the Secret Service in any

manner beyond that foreseen by Congress. In providing for expedited processing of

qualifying requests, Congress intended that such requests would take precedence over

those that do not qualify for such treatment. Fulfillment of the legislative intent cannot

be characterized as a burden on any party's interests.

---

[7] This Court has likewise recognized that delay in the processing of FOIA requests "may
well result in disclosing the relevant documents after the need for them in the formulation
of national . . . policy has been overtaken by events." *Natural Resources Defense
Council v. Department of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) (granting motion
for release of documents).

### D. **The Public Interest Favors the Requested Relief**

The final criterion for the issuance of a preliminary injunction is clearly satisfied in this case.  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."  *Jacksonville Port Authority v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977).  Likewise, it is axiomatic that an "agency is required to follow its own regulations."  *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).  Such adherence is all that the Post seeks here.  The public interest will also be served by the expedited release of the requested records, which will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties."  *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).  As this Court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities.  *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999).  The public interest favors the issuance of an order directing defendant DHS and the Secret Service to immediately process and release the requested information.

### III.  **The Court Should Order the Agency to Preserve the Requested Records and to Process the Post's FOIA Request Immediately**

In light of the agency's assertion that the requested records are not subject to the FOIA's disclosure requirements, the agency apparently does not concede its obligation to maintain the material pending resolution of the Post's request.  As such, in aid of its jurisdiction, and to prevent irreparable harm to the Post and the general public, the Court should immediately order the agency to preserve the requested material.  The Court has previously recognized that, in circumstances similar to those present here, it has

"jurisdiction to issue a Temporary Restraining Order [requiring preservation] where the parties dispute the adequacy of the government's record keeping procedure and disagree whether records are covered by the [Presidential Records Act]." *Armstrong v. Bush*, 807 F. Supp. 816, 823 (D.D.C. 1992); *see also American Friends Service Committee v. Webster*, 485 F. Supp. 222 (D.D.C. 1980). An exercise of that jurisdiction is clearly appropriate here.

Beyond the protective preservation of the disputed material, the appropriate form of further relief to which the Post is entitled is clear. The applicable DHS regulations dictate the manner in which FOIA requests requiring expedition must be processed. The regulations provide that DHS components "ordinarily shall respond to requests according to their order of receipt," 6 C.F.R. § 5.5(a), but that requests "will be taken out of order and given expedited treatment whenever it is determined that they [meet the criteria for expedited processing]." *Id.* § 5.5(d)(1). "If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable." *Id.* § 5.5(d)(4).

Application of those requirements here should not be unduly burdensome nor result in further delay. The Secret Service carries a relatively small FOIA caseload, and handles very few (if any) requests that require expedited processing. The most recently published DHS statistics on FOIA processing (for fiscal year 2005) show that the Secret Service processed 701 FOIA requests in the fiscal year, and that *none* of them qualified for expedited treatment. U.S. Department of Homeland Security, 2005 Annual Freedom of Information Act Report to the Attorney General of the United States, October 1, 2004 – September 30, 2005, p. 20 (*available at* http://www.dhs.gov/interweb/assetlibrary/

19

privacy_rpt_foia_2005.pdf).[8]  As such, the agency clearly possesses the needed resources to immediately process the Post's request.

Recognizing the substantial public interest in the records at issue here, and in light of the fact that the Secret Service received the Post's FOIA request almost four months ago, the Court should direct the agency to immediately process the Post's request, and produce all non-exempt, responsive records within 10 days of the issuance of the order the Post seeks.[9]

## CONCLUSION

For the foregoing reasons, the Post's motion for a preliminary injunction should be granted.  The Post asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion at the Court's earliest convenience.

Respectfully submitted,

___/s/_____
DAVID L. SOBEL
D.C. Bar No. 360418

1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009
(202) 246-6180
sobel@att.net

---

[8]  By way of comparison, other DHS components handle a much larger volume of requests.  Customs and Border Protection, for instance, processed 7,878 requests, and the U.S. Coast Guard processed 6,654 requests.  *Id.*

[9]  Judicial resolution of the Post's request for preliminary relief will not resolve all issues raised in the complaint.  Once FOIA processing is completed, the Court would retain jurisdiction to review the completeness and propriety of the agency's substantive determination of the Post's FOIA request.  *See Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605 (D.C. Cir. 1976).

ERIC N. LIEBERMAN
D.C. Bar No. 436331

The Washington Post
1150 15th Street, N.W.
Washington, DC 20071
(202) 334-6017

Counsel for Plaintiff