ATTACHMENT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE WASHINGTON POST     :
    :
          Plaintiff,     :     Civil Action No.:    06-1737 (RMU)
    :
          v.     :     Document No.:    3
    :
DEPARTMENT OF HOMELAND,     :
SECURITY     :
    :
          Defendant.     :

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## I.  INTRODUCTION

The plaintiff, The Washington Post (the "Post"), seeks records concerning individuals who visited Vice President Richard Cheney and his senior staff at both the White House Complex and the Vice President's residence from the United States Secret Service ("Secret Service"), a division of the United States Department of Homeland Security ("DHS"). The plaintiff claims that it is entitled to this information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et. seq.*, and that under FOIA, the Secret Service must process and fulfill the plaintiff's record request on an expedited schedule. This case is before the court on the plaintiff's motion for a preliminary injunction. Specifically, the Post asks the court to order the Secret Service to immediately process the Post's request and produce all responsive records which are not exempt from disclosure within 10 days of the court's order. Because the records sought are agency records, because the plaintiff will be irreparably harmed without expedited processing of its FOIA request, and because it is in the public, the court grants the plaintiff's motion for a preliminary injunction.

## II.    BACKGROUND

On June 12, 2006, Post staff writer Jo Becker, by letter, requested certain records under

FOIA from the Secret Service.  Pl.'s Mot. for a Prelim. Inj. ("Pl.'s Mot."), Ex. 1.  Specifically,

the journalist sought records from October 2004 to the present regarding visitor logs of physical

access to the White House Complex ("WHC") and the Vice President's residence ("VPR"),

"reflecting or concerning the entries and/or exits of any persons who sought or were scheduled to

visit the following people in the Office of the Vice President: Vice President Cheney; David

Addington, I. Lewis 'Scooter' Libby, C. Dean McGrath, Steven Schmidt, John Hannah, Eric

Edelman, Ron Christie, Victoria Nuland, Aaron Friedberg, Stephen Yates, Samantha Ravich, and

David Wurmser." *Id.*

With regard to the WHC, the plaintiff's request sought records maintained on two access

monitoring systems – the Worker and Visitor Entrance System ("WAVES") and the Access

Control Records System ("ACR").[1]  *Id.*  WAVES consists of records generated when

"information is submitted by an authorized White House pass holder to the Secret Service about

workers and visitors who need access to the White House" for various purposes.  Def.'s Opp'n,

Ex. B ("Morrisey Decl.") ¶7.  ACR contains "records generated when a pass holder, worker, or

visitor, swipes his or her pass over one of the electronic pass readers located at entrances to and

exists from the White House Complex."  *Id.* ¶ 6.

---

[1]    Regarding solely the WAVES system, Becker sought the portions of any records which
"list[] the name of the person who is visiting, where the person went and the name of the
person who arranged the visit with the Secret Service."  Pl.'s Mot. at 2-3 & Ex. 1.

2

With regard to the VPR, Becker sought records "reflecting or concerning the entries and/or exits of any persons, other than the members of the Cheney family, visiting the vice-president's residence." Pl.'s Mot., Ex.1. This request is similarly limited to records from October 2004 to the present. *Id.*

Becker requested that the Secret Service expedite its processing of the plaintiff's FOIA request pursuant to a provision of that statute requiring expedited processing in instances presenting a "compelling need" for the information. *Id.* (relying on the language from 5 U.S.C. § 552 (a)(6)(E)(II)). That statutory provision mandates expedited processing if, as relevant here, the request is made "by a person primarily engaged in disseminating information," and has an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Becker asserted that his request satisfied the statutory requirement for mandatory expedited processing for four reasons: (1) "as a journalist, I am primarily engaged in disseminating information to the public;" (2) "the subject matter of the request concerns actual operations of the federal government, namely [] meetings of the Vice President and his senior aides on official business;" (3) "there is an urgency to inform the public about these governmental activities" because the information will assist the public in "the degree to which lobbyists and special interest representatives may have influenced policy decisions of the Bush administration" and the ongoing CIA-leak case investigation; and (4) "[w]ith the midterm elections looming, any delay in processing this request would deprive the public of its ability to make its views known in a timely fashion[.]" Pl.'s Mot., Ex.1.

On June 16, 2006, the Secret Service denied Becker's request for expedited processing, stating that Becker had not demonstrated a "particular urgency to inform the public about an

actual or alleged federal government activity." Pl.'s Mot., Ex. 2. After the Post appealed this

decision, *id.*, Ex. 3, the Deputy Director of the Secret Service, on August 31, 2006, found that

"expedited treatment is appropriate in this matter," and reversed the Secret Service's prior

decision, *id.*, Ex. 4. After the Deputy Director's decision, however, on September 20, 2006, the

Freedom of Information and Privacy Acts Officer for the Department of Homeland Security

notified Becker that the records sought are not agency records under FOIA and are governed by

the Presidential Records Act, 44 U.S.C. § 2201, *et seq. Id.*, Ex. 6. This official explained that

because the records "remain under the exclusive legal custody and control of the White House

and the Office of the Vice President . . . the [Secret Service] lacks the authority" to provide the

requested records.

    The plaintiff subsequently commenced this action on October 10, 2006, seeking

injunctive relief. *See generally*, Pl.'s Mot. Because the plaintiff alleges a violation of a statutory

right to expedited processing of a FOIA request, the court ordered expedited briefing. Minute

Order (Oct. 12, 2005). Now fully briefed, the court turns to the pending motion.


### III.    ANALYSIS

#### A.    The Preliminary Injunction Standard is Appropriate In This Case

    Before assessing the plaintiff's claims, the court must address the defendant's argument

that expedited judicial review of the plaintiff's claims is inappropriate because the plaintiff seeks

all of the relief it would be entitled to if it prevailed on the merits.[2] Def.'s Opp'n at 8. To the

---

[2]    The court is unclear as to how this argument benefits the defendant because the legal
burden placed on the plaintiff is greater at the preliminary injunction stage.

defendant, the plaintiff seeks "immediate disclosure of non-exempt documents." *Id.*

For two reasons, the defendant's claims are unwarranted. First, the plaintiff does not now seek court ordered disclosure, but rather, it seeks court ordered expedited processing of its FOIA request. Pl.'s Reply at 2-3.

Second, in numerous cases in this federal district, courts have considered motions for preliminary injunctions in FOIA cases on an expedited bases. *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38 (D.D.C. 2006) (denying injunctive relief after considering a FOIA request under the preliminary injunction four-prong test); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) (granting a preliminary injunction and ordering expedited processing and disclosure of documents concerning the Bush Administration's policy of conducting surveillance of domestic communications); *Al-Fayed v. CIA*, 2000 WL 34342564, at *6 (D.D.C. Sept. 20, 2000) (denying a FOIA request after considering the plaintiff's claims under the preliminary injunction's four-pronged test), *aff'd* 254 F.3d 300 (D.C. Cir. 2001); *Aguilera v. FBI*, 941 F. Supp. 144, 152-53 (D.D.C. 1996) (granting a preliminary injunction and mandating expedited release of documents). In each of these cases, the plaintiffs sought expedited review of their FOIA request pursuant to 5 U.S.C. § 552 (a)(6)(E). And in each case, the district court rendered its decision prior to the incident upon which the plaintiffs' assertions of expedited need were based.

The court agrees with these decisions. In each case, and true here, the plaintiff asserts statutory entitlement to expedited review of the FOIA request, based on the statutory predicate that the plaintiff has a "compelling need" for the information. 5 U.S.C. § 552 (a)(6)(E). To afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff

would not receive expedited agency review of its FOIA request.  *See Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 35.

The court recognizes the urgency presented by the current case.  With regard to typical, non-"compelling need" FOIA requests, "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [these] abuses." *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1998).   This statement resounds with greater force in this case because the plaintiff claims statutory entitlement to expedited treatment.  And it seems the exceptional case where a plaintiff can litigate his case via an ordinary time-table for federal litigation and, if victorious, still attain "expedited review" of his FOIA request.[3]

Indeed, the statutory provision which grants the district court jurisdiction over FOIA cases provides that they "take precedence on the docket over all other causes and shall be assigned for hearing and trial at the earliest practicable date and expedited in every way."  5 U.S.C. § 552 (a)(3); *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 13 (1974) (recognizing that Section 552 "provides that the FOIA suit generally is to take precedence on the court's docket and is to be expedited on the calendar").

Here, the plaintiff claims statutory entitlement to expedited agency review of its FOIA request.  Pl.'s Mot. at 2; 5 U.S.C. § 552 (a)(6)(E)(v) (mandating expedited processing when there

---

[3]    In *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005), the court considered a FOIA request for documents (and expedited processing under 5 U.S.C. § 552) via a motion for summary judgment.  Though the court in that case did not consider whether injunctive was appropriate, the timing in that case allowed the district court to rule on a motion for summary judgment prior to the expiration of special provisions of the Voting Rights Act in 2007 – the root of the plaintiff's claim of urgency. *Id.* at 260.

exists an "urgency to inform the public"). The court considers expedited review of the plaintiff's

claims patently appropriate in providing the plaintiff meaningful judicial review of its claims.

The judicial review provision under FOIA states that "[o]n complaint, the district court . .

. has jurisdiction to enjoin the agency . . . In such a case the court shall determine the matter *de*

*novo*." 5 U.S.C. § 552(a)(4)(B). The court will consider the matter *de novo*, and will assess the

arguments raised by the parties in support of their respective positions.

### B.    The Court Grants the Plaintiff's Motion for a Preliminary Injunction

#### 1.    Legal Standard for a Preliminary Injunction

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer
> irreparable injury if the injunction is not granted, (3) that an injunction would not
> substantially injure other interested parties, and (4) that the public interest would be
> furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin.*

*Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty*

*Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000). It is particularly

important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf.*

*Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial

indication" of likely success on the merits, "there would be no justification for the court's

intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n*

*v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation

omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a

lesser showing on one factor by making a very strong showing on another factor.  *CSX Transp.,*

*Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747).  "An

injunction may be justified, for example, where there is a particularly strong likelihood of success

on the merits even if there is a relatively slight showing of irreparable injury."  *CityFed Fin.*

*Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury.  A

movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction.

*CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted).  Indeed, if a party makes no showing of

irreparable injury, the court may deny the motion for injunctive relief without considering the

other factors.  *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should

grant such relief sparingly.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  As the Supreme

Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion."  *Id.* (citation omitted).  Therefore, although the trial court has the

discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly.  In

addition, any injunction that the court issues must be carefully circumscribed and tailored to

remedy the harm shown.  *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C.

Cir. 1990) (citation omitted).

### 2.    The Plaintiff Demonstrates a Substantial Likelihood of Success on the Merits

Success on the merits of the plaintiff's request does not necessarily mean that it will receive any documents. Rather, the plaintiff seeks merely that the defendant "immediately process plaintiff's [FOIA] request and disclose the requested records within 10 days of the court's order." Pl.'s Mot. at 1. As the plaintiff correctly notes, if the court orders the Secret Service to process the request, "the propriety of any exemption claims will remain to be litigated." Pl.'s Reply at 2. The only issue for the court, therefore, is whether the plaintiff is entitled to full FOIA processing of its records request.[4] According to the defendant, the plaintiff is not entitled to FOIA processing because it believes that the records sought are, categorically, not agency records subject to FOIA. Def.'s Opp'n at 15.

### A.    WAVES and ACR Records Are Agency Records

The plaintiff seeks processing of its request for WAVES records, Pl.'s Mot. at 2, based on its belief that these records are agency records under FOIA, *id.*, at 10. "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency

---

[4]    According to the defendant, the Secret Service previously determined that the plaintiff's request was entitled to expedited processing. Def.'s Opp'n at 12. On August 31, 2006, the Deputy Director sent a letter to the plaintiff explaining that "it is the determination of the Secret Service that . . . expedited treatment is appropriate in this matter." Pl.'s Mot. Ex. 4. Within 20 days of its determination to expedite the plaintiff's request, the defendant had completed its review, and issued a letter to the plaintiff indicating its conclusion that the records sought "are not agency records subject to the FOIA." Def.'s Opp'n, Ex. C ("Lyles Aff.") ¶ 5. Thus, although the defendant has afforded the plaintiff's FOIA request some expedited review, the defendant's interstitial determination that the records sought were not agency records halted that process before its completion. *See* Pl.'s Mot., Ex. 6.

records.'" *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). Although FOIA does not itself

define "agency records," the Supreme Court has indicated that "agency records" are (1) either

created or obtained by an agency, and (2) under agency control. *Id.*, 492 U.S. at 144-145.

### i.    The Records Are "Created or Obtained by the Agency"

The defendant argues that the WAVES records – those concerning visitor entrances to the

WHC – are not created or obtained by the Secret Service. Def.'s Opp'n at 16 n.6. The defendant

argues that the Office of the Vice President "spurs the generation of the WAVES records by

requesting that the proposed visitor be admitted to the [White House Compex], and it provides

the information that serves as the core of these records," including "the visitor's name, date of

birth, and Social Security number; the time and location of the planned visit; the name of the pass

holder submitting the request; and, the date of the request." *Id.* (citing the Morrissey Decl. at ¶

7). In other words, the WAVES records are generated through actions taken by the Office of the

Vice President.

The court is unconvinced by the defendant's argument. Taking the defendant's assertions

on this point to be true, the records, at a minimum, are "obtained" by the Secret Service in the

performance of official duties. In noting that "[t]he legislative history of the FOIA abounds with

references to records acquired by an agency, the Supreme Court instructed that records obtained

by an agency for FOIA purposes include "studies, trade journal reports, and other materials

produced outside the agencies both by private and governmental organizations." *Tax Analysts*,

492 U.S. at 144.

The defendant's word choices encourages a potential ambiguity as to the actual creator of the records. Here, the defendant's statement, that the Office of the Vice President "spurs the generation of the WAVES record," conceals the record's creator. The WAVES records are "generated when information is submitted . . . to the Secret Service." Morrissey Decl. ¶ 7. Moreover, the Secret Service's typical practice is to "transfer newly-generated WAVES records . . . to the White House Office of Records Management." *Id.* ¶ 8.

Likely, the "newly-generated" records were, in fact, created by the Secret Service. At a bare minimum, they were "obtained by the agency" shortly after their creation by a third entity unidentified by the defendant. And probably, the defendant's argument rests on the defendant's confusion between the agency that created a record with the source of the information contained in that record; here the Office of the Vice President provides the information. Def.'s Opp'n at 16 n. 6.

Because the defendant bears the burden of demonstrating that the records are not "agency records" *Tax Analysts*, 492 U.S. at 142 n.3, however, the court resolves the ambiguity created by the defendant's language in the plaintiff's favor, *Fed. Labor Relations Auth. v. Dep't of Veterans Affairs*, 958 F.2d 503, 508 (2d Cir. 1992) (ruling that fidelity to "FOIA's broad disclosure plan . . . focused on openness, not secrecy" requires that "doubts [be] resolved in favor of disclosure"). Thus, the defendant has not met its burden on demonstrating that the WAVES records are not "agency records." *Tax Analysts*, 492 U.S. at 142 n.3.

     **ii.    The WAVES Records Are "Under Agency Control"[5]**

Having concluded that the defendant created or obtained the records, the first prong in

*Tax Analyst*, the court must next consider the defendant's arguments that the records are not

"under agency control." *Id.*, 492 U.S. at 144-145.

The defendant argues (1) that the information sought is under the "legal control" of the

Office of the Vice President and (2) that the Office of the Vice President is not an agency subject

to FOIA. Def.'s Mot. at 14. Because the Office of the Vice President is not an "agency" under

FOIA, *Schwartz v. Dep't of Treasury*, 131 F. Supp. 2d 12, 147 (D.D.C. 2001), aff'd 2001 WL

674636 (D.C. Cir. May 10, 2001), and because the defendant concedes that the Secret Service is

an "agency" under FOIA, Def.'s Mot. at 15, the court must determine which executive branch

agency, the Secret Service or the Office of the Vice President, controls the records sought. In

other words, the records sought are "agency records" subject to disclosure under FOIA only if the

Secret Service "exercises sufficient control" over the documents. *United We Stand Am. v. IRS*,

359 F.3d 595, 599 (D.C. Cir. 2004).

---

[5]     The defendant seeks to avoid disclosure of the ACR records by arguing that they are not relevant to the plaintiff's request. Def.'s Opp'n at 17. The defendant arrives at this conclusion after noting that "ACR records do not reveal who was visited, and the identity of the visitee is the focal point of plaintiff's request." *Id.*, Ex. B ("Morrissey Decl.") ¶6. The defendant's argument is unconvincing, as it assumes that the only way to determine who was being visited is by the ACR record itself. But as the defendant has described the ACR system, records are generated when visitors swipe their pass over an electronic pass reader. Morrissey Decl. ¶ 6. The court presumes at this stage in the litigation that to obtain a visitor pass in the first place, an individual would have to identify the purpose of their visit, including those with whom they will be visiting. At a minimum, however, the defendant's conclusory argument as to why the ACR records are not responsive are insufficient in carrying its burden of exempting these records from its search. *Fed. Labor Relations Auth. v. Dep't of Veterans Affairs*, 958 F.2d 503, 508 (2d Cir. 1992).

The defendant argues that the WAVES records are not under the Secret Service's control. Def.'s Opp'n at 17. Specifically, the defendant claims that the WAVES records "are created subject to an understanding that they are under the OVP's control." *Id.* at 17.

To determine whether the documents sought are under agency control, the court must balance four factors under a totality of the circumstances test: (1) "the intent of the document's creator to retain or relinquish control over the records," (2) "the ability of the agency to use and dispose of the record as it sees fit," (3) "the extent to which agency personnel have read or relied upon the document," and (4) "the degree to which the document was integrated into the agency's record system or files." *United We Stand Am.*, 359 F.3d at 599; *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) (noting that the court's totality of the circumstances test seeks to vindicate Congress' purpose "to open agency action to the light of public scrutiny") (internal quotations omitted)).

As to the first factor, Paul Morrissey, the Deputy Director of the Secret Service, asserts that after the completion of a visitor's visit, "the Secret Service has no continuing interest sufficient to justify preservation or retention of WAVES records." Morrissey Decl. ¶ 10. Therefore, through its established practice, the Secret Service has a clear intent to relinquish control of the records is understood.

With regard to factor two, "the ability of the agency to use and dispose of the record as it sees fit," Morrissey indicates that information in the WAVES records are submitted to the Secret Service for two limited purposes: (1) "to allow the Secret Service to perform background

checks," and (2) "to allow the Secret Service to verify the visitor's admissibility at the time of the

visit." Morrissey Decl. ¶ 9. Butressing this assertion, affiant Claire O'Donnell, the Assistant to

the Vice President and his Deputy Chief of Staff, indicates that the Secret Service transfers

WAVES records to the White House Office of Records Management every 30 to 60 days. *Id.*,

Ex. A, ("O'Donnell Decl.") ¶ 12. From these assertions, the court is confident that "the ability of

the agency to use and dispose of the record as it sees fit" is quite limited. *United We Stand Am.*,

359 F.3d at 599

Concerning the third factor, "the extent to which agency personnel have read or relied

upon the document," the defendant stresses the Secret Service's limited use of the information.

Def.'s Opp'n at 18. As to this factor, the Secret Service's argument fails. While the defendant is

correct that the Secret Service's use of the WAVES records is limited, the defendant fails to

recognize that the very purpose of the WAVES records is limited. Morrissey Decl. ¶ 9. Indeed,

the inquiry as to the agency's use of a document is tethered to the purpose behind the records'

creation in the first instance. *Bureau of Nat'l Affairs*, 742 F.2d 1484, 1490 (D.C. Cir. 1984)

(recognizing that the critical factor in determining the extent of reliance upon the document turns

on "the purpose for which the document was created, the actual use of the document, and the

extent to which the creator of the document and other employees acting within the scope of their

employment relied upon the document to carry out the business of the agency").

Here, the WAVES records are generated solely for their use by the Secret Service in

protecting the WHC. Morrissey Decl. ¶¶ 5, 7. And the Secret Service utilizes the WAVES

14

records in security related to visitor access to the WHC.  *Id.*, ¶¶ 9, 10.  As such, the Secret

Service's use of the WAVES records encompasses the entire scope of their purpose.  *Bureau of*

*Nat'l Affairs*, 742 F.2d at 1490 (relying upon a "nexus between the agency's work and the

records" in determining that the agency relied on the document).  The third factor, therefore,

favors a determination that the records sought are under agency control.

  Finally, the court considers "the degree to which the document was integrated into the

agency's record system or files."  *United We Stand Am.*, 359 F.3d at 599.  The defendant argues

that because the WAVES records are transferred to the OVP for archival preservation shortly

after the visitor's visit concludes, the records are not integrated into the agency's record system.

O'Donnell Decl. ¶ 12.  O'Donnell's assertions convince the court that the WAVES records are

not integrated into the Secret Service's record system or files.

  In balancing these factors, the court turns to the D.C. Circuit's analysis in *Bureau of*

*National Affairs*.  In that case, the plaintiff sought daily agendas and desk appointment calendars.

*Bureau of Nat. Affairs*, 742 F.2d 1484.  The Circuit noted that both the daily agendas and desk

appointment calendars "were created by agency employees," were "located within (and in that

sense, were within the possession of) the Justice Department," and were not "placed into agency

files."  *Consumer Fed'n of Am.*, 455 F.3d at 288.  Moreover, "the Department required neither

their creation nor their retention."  *Id.*

  Despite these similarities in characteristics between the daily agendas and the desk

appointment calendars, the court concluded that only the daily agendas were agency records.  *Id.*

Accordingly, the court's decision turned on how the documents were "used within the agency."

*Bureau of Nat. Affairs*, 742 F.2d at 1495.  In 2006, the D.C. Circuit summarized this holding in

the following fashion:

> What ultimately distinguished the two types of documents was how they were 'used
> within the agency.  The purpose of the agendas was to . . . facilit[e] the day-to-day
> operations of the Antitrust Division.  Consonant with that function, the agendas were
> 'distributed to top staff within the Antitrust Division[.]'  This . . . rendered the daily
> agendas 'agency records.'
>
> In contrast to the agendas, the desk calendars 'were retained solely for the
> convenience of the individual official[ ]' in organizing his 'personal and business
> appointments.'  Accordingly, although [] top assistants 'occasionally had access to
> the calendars,' they 'were not distributed to other employees.'  This . . . rendered the
> desk calendars personal rather than 'agency records.'

*Consumer Fed. of Am.*, 455 F.3d at 288.

Comparing the records sought here with those sought in *Bureau of National Affairs*, the

court concludes the WAVES records are more akin to the daily agendas than the desk calendars.

Like the documents sought in that case, the WAVES records were created by agency officials,

were in the physical custody of Secret Service personnel during their use, and were not merged

with agency files.  *Bureau of Nat. Affairs*, 742 F.2d 1484.  And like the daily agendas, the

agency's use of the WAVES records serves an official function.  Morrissey Decl. ¶ 9.

To summarize, the court must weighs the four factors so as to comport with the Supreme

Court's definition of "agency control" identified in *Tax Analysts*: "[b]y control we mean that the

material have come into the agency's possession in the legitimate conduct of its official duties."

*Tax Analysts*, 492 U.S. at 145.  In so doing, and like the daily agendas in *Bureau of National*

*Affairs*, the court concludes that the records sought are agency records. Accordingly, the WAVES records are subject to FOIA processing.

**B.    Visitor Logs of the Vice President's Residence are Agency Records**

The plaintiff also seeks visitor logs to the Vice President's residence. Pl.'s Mot. at 2. The defendant argues that the records sought are not agency records. Def.'s Opp'n at 19-22. The defendant vehemently opposes the disclosure of any records pertaining to the VPR, claiming that such disclosure would compromise the Vice President's ability to discharge his official functions. *Id.* at 22. For this reason, the defendant urges the court to infuse considerations of constitutional avoidance into its analysis as to whether the records sought are agency records. *Id.* Accordingly, before directly confronting the defendant's argument that visitor records to the VPR are not agency records, the court must first consider the threshold argument that constitutional avoidance is appropriate in this instance.

**i.    Constitutional Avoidance is Improper**

The defendant asks the court to construe the FOIA statute in a manner which avoids serious constitutional problems. Def.'s Opp'n at 22. In support of this position, the defendant cites *Immigration and Naturalization Service v. Saint Cyr*, a case in which the Supreme Court indicated that "if an otherwise acceptable construction of a statute raises serious constitutional problems, and [] an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)). Presumably, the defendant is arguing that if the court were to interpret

FOIA to apply to records regarding the VPR, the Vice President's "freedom 'to seek confidential information from many sources, both inside the government and outside' will have been compromised." *Id.* (quoting *In Re Cheney*, 406 F.3d 723, 727 (D.C. Cir. 2005)).

Perhaps the defendant's concerns are valid. But even assuming they are, these concerns do not serve as a license for the court to transmute the meaning of an unambiguous statute. Indeed, the Supreme Court's charge in *St. Cyr* applies to instances in which a statutory provision is capable of alternative interpretations. 533 U.S. at 299. But here, the defendant has identified no ambiguity in the FOIA statute. Rather, in deference to the defendant's concerns, the court must strictly apply the FOIA statute. *In Re Cheney*, 406 F.3d at 728 (recognizing that "[i]n light of the severe separation-of-powers problems [in applying provisions of the Federal Advisory Committee Act, the court] must construe the statute strictly").

In FOIA cases particularly, "Congress understood that government could not function effectively if public access were granted indiscriminately." *Schell v. Dep't of Health & Human Servs.*, 843 F.2d 922, 937 (D.C. Cir. 1988). But rather than grant the court the authority to strike what it perceives as an appropriate balance between transparency and government's ability to function, "Congress sought a workable balance . . . by providing nine statutory exemptions from disclosure." *Id.* The defendant's concerns regarding the potential damage that disclosure would have on the Vice President's ability to discharge his official functions are appropriately addressed by this court if, and when, the defendant invokes a specific FOIA exception. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (recognizing that "Congress had the Government's

executive privilege specifically in mind in adopting Exemption 5," which protects from

document "disclosure [] which 'would be injurious to the consultative functions of

government'") (internal quotations omitted).

At this juncture, however, the plaintiff is not asking the court to mandate disclosure of the

records. Instead, it seeks only that the court direct the agency to fully process its FOIA request

and to do so in an expedited fashion. The defendant has neither demonstrated nor argued that

simply processing the plaintiff's FOIA request will do injury to the Vice President's abilities to

discharge the duties of his office. Accordingly, the court will proceed with a determination as to

whether the records in question are agency records, and it will analyze the defendant's arguments

concerning harm to the Vice President's function to a time after the agency conducts its review,

identifies responsive documents, asserts specific exemptions, and otherwise follows the ordinary

course in FOIA cases.

### ii.    Records of Visits to the VPR Are Agency Records

Without rehashing the law discussed in the court's analysis of WAVES records, the court

notes the similarities shared between the visitor records at the VPR and the WAVES and ACR

records. According to the defendant, "the Secret Service monitors and controls access to the

[VPR] though use of [] two lists: a daily roster for individuals with appointments or work orders,

and a permanent access list for those individuals who regularly come to the residence such as

OVP staff members, contractors, military personnel, and the Vice President's family members."

Def.'s Opp'n at 19 (citing Morrissey Decl. ¶ 11). Like the WAVES records, the Secret Service

maintains physical control over the lists for a short period of time, turning them over to the Vice

President's staff at the end of each month.  Morrissey Decl. ¶ 12; O'Donnell Decl. ¶ 14.  Also

similar to the WAVES records, it is the understanding of the Vice President's Office that these

lists are under the exclusive legal custody of the Office of the Vice President.  O'Donnell Decl.

¶¶ 12, 13 (noting that the understanding and practice for WAVES records "is similar with respect

to entry records for the Vice President's Residence").

     The only difference the court can find in the defendant's explanation of the lists generated

for entry to the VPR and the WAVES and ACR records, is that the visitor lists to the VPR are

"handwritten on an entry log by the officer working at the gate where the individual arrives."

Def.'s Opp'n at 19.  The defendant provides no legal justification for treating the handwritten

records differently than typed or computer generated, and the court can fathom none.

     The logs in question are created by the Secret Service and created solely and exclusively

for a particular purpose, albeit limited – to "provide[] protective services for and control[] access

to . . . the Vice President's Residence."  O'Donnell Decl. ¶ 9.  These records have "come into the

agency's possession in the legitimate conduct of its official duties."  *Tax Analysts*, 492 U.S. at

145.  Therefore, and for the reasons given regarding the WAVES records, the logs created by the

Secret Service pertaining to visitors of the VPR are created or controlled by the Secret Service

and are under the control of the Secret Service.  *Tax Analysts*, 492 U.S. at 144-145.  Accordingly,

they constitute agency records under FOIA.[6]  *Id.*

---

[6]    The defendant also argues that the court should rule that the logs pertaining to the VRP
are not agency records because they "capture details of the workings of the OVP and the

20

### 3.    The Plaintiff Demonstrates a Potential for Irreparable Injury

Turning to the irreparable injury component of the preliminary injunction analysis, the

plaintiff argues that the "very nature of the right that plaintiff seeks to vindicate in this action –

expedited processing – depends on timeliness." Pl.'s Mot. at 15.  The court agrees.

FOIA was created to foster public awareness, and failure to process FOIA requests in a

timely fashion is "tantamount to denial." H.R. Rep. No. 93-876, at 6 (1974); *Payne Enters.*, 837

F.2d at 494 (recognizing the diminutive value of untimely disclosure, stating that "stale

information is of little value").  Here, the plaintiff seeks expedited processing under 5 U.S.C. §

552(a)(6)(E)(v)(II), which provides for expedited processing in instances in which there exists an

"urgency to inform the public concerning actual or alleged Federal Government activity." 5

U.S.C. § 552(a)(6)(E)(v)(II).  And the defendant here has acknowledged that the plaintiff's

request meets the statutory requirement for expedited treatment.  Pl.'s Mot. Ex. 4.

But beyond this concession, when expedited treatment is statutorily proscribed, the

specter of information becoming stale and of little value, increases. *Elec. Privacy Info. Ctr.*, 416

---

details of the Vice President's private life; they do not illuminate the functioning of the
Secret Service." Def.'s Opp'n at 21.  The defendant continues that the plaintiff's request
threatens "the Vice President's (and his family's) right to personal privacy." *Id.* at 22.
The defendant's argument is unclear in that it fails to identify whether the defendant
decries disclosure, or FOIA processing, as infringing on the Vice President's right to
personal privacy.  In either event, the defendant's argument is unconvincing.  At this
juncture, the plaintiff is not asking the court to order disclosure, but simply to direct the
Secret Service to process the plaintiff's FOIA request.  Pl.'s Reply at 2.  FOIA takes
personal privacy into account in exempting materials that contain "personnel and
medical files and similar files the disclosure of which would constitute a clearly
unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  After processing the
plaintiff's FOIA request, if the defendant believes the statutory and decisional law
regarding Exemption 6 applies, it may, at that time, raise such a claim.

F. Supp. 2d at 41.  The reason the plaintiff gives for expedited processing in this matter is that the

information is of vital public interest for an upcoming congressional election.  Pl.'s Mot. at 3.

The plaintiff reasons that delay in the agency's processing of its FOIA request would "deprive

the public of its ability to make its views known in a timely fashion either at the polls, by

lobbyists or through other contacts with public officials."  *Id.* at 3-4.  Because the urgency with

which the plaintiff makes its FOIA request is predicated on a matter of current national debate,

due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA

request does not receive expedited treatment.  *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 41

(ruling that the plaintiff had demonstrated a risk of irreparable injury in a case seeking expedited

processing during a national debate about the government's wireless surveillance program);

*Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005)

(recognizing the urgency of the plaintiff's request given "the upcoming expiration of the special

provisions of the Voting Rights Act of 2007").  Without a preliminary injunction directing the

Secret Service to process the plaintiff's FOIA request in an expedited fashion, the plaintiff would

lose out on its statutory right to expedited processing and on the time-sensitive public interests

which underlay the request.

### 4.    A Preliminary Injunction Does Not Burden Other Parties

The defendant argues that granting the defendant's preliminary injunction would

"substantially injure another interested party, the Vice President, by infringing on his ability to perform his official functions, including his executive functions."[7] Def.'s Opp'n at 29. The defendant's concerns are born from its misunderstanding of the relief sought by the plaintiff. The plaintiff does not seek an order directing the Secret Service to disclose a single document, but asks solely that the court order the defendant to process the plaintiff's FOIA request. Pl.'s Mot. at 2. Perhaps the defendant can argue at a later stage in this litigation the harms that would befall the Vice President if the court were to order disclosure.[8] For the limited relief sought here, however, those arguments are premature.

### 5.    The Public Interest Favors Expedited Processing

---

[7]    The Secret Service also argues that the public's interest is harmed for the same reasons. Def.'s Opp'n at 29. For the reasons stated in the text accompanying this footnote, the defendant's argument in this regard may have validity, but it is premature.

[8]    The court anticipates that the defendant will claim FOIA exemptions. In this regard, the court reminds the defendant that FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

If the defendant is unable to segregate the information, but still claims an exemption based on the Vice President's privacy, the parties must brief the court on any issues regarding waiver of the exemption in light of the Secret Service's failure to maintain separate visitor logs for official business visits and personal visits. As the court presently understands this issue, the Vice President conducts official business in a residence owned by the public, and occupied by Richard Cheney, the person currently occupying the position of Vice President. In this instance, the defendant implies that the public's interest in open government yields to Richard Cheney's privacy interests. In any subsequent briefing as to the applicability of FOIA exemptions, the court directs the parties to include discussion of this argument, as well as consideration that the inverse may be true. *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487 (1994) (noting that in considering FOIA Exemption 6, "a court must balance the public interest in disclosure against the interest Congress intended the exemption to protect") (internal quotations omitted).

The Secret Service contends that the public would be harmed by expedited processing because a preliminary injunction would place this plaintiff's FOIA request ahead of the requests of others. *Id.* This argument is unconvincing. The government concedes that the plaintiff here has a statutory right to expedited processing. Pl.'s Mot., Ex. 4. If anything, the public's interest in this case is best assessed through the statutory provisions passed by the public's elected representatives. In that vein, pursuant to the statutory provision mandating expedited treatment, the public's interest in expedited processing of the plaintiff's request outweighs any general interest that it has in first-in-first-out processing of FOIA requests. *Jacksonville Port Auth. v. Adams.*, 556 F.2d 52, 59 (D.C. Cir. 1977) (recognizing "an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate").

## IV.    CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for a preliminary injunction. The court orders the defendant to complete the processing of the plaintiff's June 12, 2006 FOIA requests and produce or identify all responsive records within 10 days of the date of this opinion. The court further orders the defendant to provide to provide the plaintiff with a declaration and document index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), indicating the defendant's justification for withholding any documents or portions thereof responsive to the plaintiff's FOIA request within 10 days of this opinion. This memorandum opinion is issued this 19th day of October, 2006. An order consistent with this Memorandum

Opinion was previously issued on October 18, 2006.


RICARDO M. URBINA
United States District Judge

25