## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 06-883 (RCL) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ) ) ) | |
| Defendant. ) ) | |

## DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON CLAIMS I - III

Pursuant to Federal Rule of Civil Procedure 56, defendant hereby moves for summary judgment on Claims I through III of plaintiff's Second Amended Complaint. The basis for this motion is set forth in the attached memorandum.

Dated: December 11, 2007                    Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

CARL J. NICHOLS
Deputy Assistant Attorney General

JOSEPH H. HUNT
Branch Director

ELIZABETH J. SHAPIRO

1

Assistant Branch Director

OF COUNSEL:

s/ Justin M. Sandberg

LIZA MURPHY                          JUSTIN M. SANDBERG
MOLLY WEBER                          (Ill. Bar. No. 6278377)
United States Secret Service         Trial Attorney
                                     United States Department of Justice
                                     Civil Division, Federal Programs Branch
                                     20 Massachusetts Avenue, N.W. #7224
                                     P.O. Box 883 Ben Franklin Station
                                     Washington, D.C. 20044
                                     Telephone:  (202) 514-3489
                                     Facsimile:  (202) 616-8202
                                     E-mail:  justin.sandberg@usdoj.gov

                                     Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 06-883 (RCL)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON CLAIMS I - III

### INTRODUCTION

The Court should enter summary judgment in favor of defendant on plaintiff's Freedom of Information Act ("FOIA") claims – claims one through three of plaintiff's complaint – because defendant has released all non-exempt, responsive records found in the course of a reasonable search.[1]

Following a reasonable search, defendant released to plaintiff all responsive records that it had found. Defendant then moved for dismissal on mootness grounds. Since defendant conducted its original search and released documents (and conducted the related follow-up search

---

[1] The Secret Service assumes that the records it has searched and produced are "agency" records, as that term is used in the FOIA, solely for the purposes of its motions to dismiss and its supplemental motion for summary judgment; it does not otherwise concede, through its use of the word "responsive" or otherwise, that the records it has searched or produced are agency records, as opposed to records governed by the Presidential Records Act, 44 U.S.C. § 2201 et seq. To that end, records have been released to plaintiff solely as a discretionary matter.

1

which it already has documented, see Declaration of Paul S. Morrissey, Dec. 12, 2006

["Morrissey Decl."] [attached to Notice of Filing, Dec. 12, 2006, Doc. No. 59]), it has identified

other categories of records as potentially responsive, including (i) certain "Large Event

Summaries"[2] and (ii) "Sensitive Security Records."[3] Accordingly, defendant has supplemented

its prior search with an additional search that included these categories. Two responsive Large

Event Summaries, both of which relate to "Shawn Vasell," were found by the White House

Office of Records Management ("WHORM"); setting aside Sensitive Security Records, no other

responsive records were located in the course of the additional search. Ulmer Decl. ¶¶ 5,13.

Defendant (through counsel) has released the Large Event Summaries to plaintiff with the filing

of this memorandum. See Large Event Summaries (attached as Exhibit 3). As for the Sensitive

Security Records, defendant can confirm only that it has retrieved one or more potentially

responsive records with respect to one or more of the individuals named in plaintiff's FOIA

request.[4] Ulmer Decl. ¶ 22. Defendant can furnish no further information with respect to these

records because doing so would reveal sensitive information about the methods used by the

Secret Service to carry out its protective function. Id. These records are exempt from disclosure

---

[2] Large Event Summaries are created using data from the Worker and Visitor Entrance System ("WAVES") and reflect the names and appointment times, among other things, of those individuals scheduled to visit the White House for events slated to involve 20 or more people. Second Declaration of Paul S. Morrissey, Dec. 11, 2007 ("Second Morrissey Decl."), ¶ 6 (attached as Exhibit 1).

[3] Sensitive Security Records relate to background investigation and security processes sometimes undertaken in connection with visits to the White House Complex. Second Morrissey Decl. ¶ 3; Declaration of Craig W. Ulmer, Dec. 11, 2007 ("Ulmer Decl."), ¶ 10 (attached as Exhibit 2).

[4] For simplicity's sake, Defendant will refer to the potentially responsive Sensitive Security Record(s) in the plural form.

pursuant to FOIA exemptions 2, 7(E), and 7(F) (5 U.S.C. §§ 552(b)(2), (b)(7)(E), and (b)(7)(F))

because they contain information that, if released, would impinge on defendant's ability to fulfill

its protective duties.[5]  Ulmer Decl. ¶¶ 20, 22, 24.

Defendant's motion to dismiss for want of jurisdiction (i.e., mootness) was sound:

Defendant conducted a reasonable search and produced all responsive records uncovered in the

course of that search.  And the subsequent identification of Sensitive Security Records and other

records does not undercut the soundness of defendant's motion to dismiss.  But that defendant

located potentially responsive Sensitive Security Records in the course of its search does suggest

that defendant chart a new procedural course, as withholdings traditionally are tested through

summary judgment motions, see Al Fayed v. CIA, 254 F.3d 300, 308 (D.C. Cir. 2001) (stating

that district courts normally decide the applicability of claimed exemptions through summary

judgment motions), such as the instant motion.  This motion is equally sound.  Defendant has

fully complied with the FOIA by conducting a reasonable search for responsive records, releasing

all non-exempt, responsive records obtained in the course of that search, and withholding those

records or portions of records that are exempt from disclosure.[6]

---

[5] It is not clear whether plaintiff will contest defendant's withholdings, as plaintiff did not challenge the invocation of exemptions with respect to Sensitive Security Records in another case involving these records – in that case the records were referred to as "Additional Security-Related Records." Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Homeland Security, 06-1912 (D.D.C.) (RCL), Plaintiff's Opposition to Defendants' Motion for Summary Judgment, July 11, 2007, Doc. No. 35, at 3 ("CREW has no interest in obtaining the security-related information that the Secret Service asserts is contained in the withheld documents."); see also Second Morrissey Decl. ¶ 3 n.1.

[6] In light of the release of the responsive Large Event Summaries and defendant's filing of the supplemental motion for summary judgment, the Court should deny as moot Plaintiff's Motion to Compel Supplemental Filing, Nov. 29, 2007, Doc. No. 71.

## BACKGROUND

By a letter dated February 2, 2006, plaintiff submitted a FOIA request seeking "all records relating to any visit" made by eight named individuals, including "Shawn Vassell," "to the White House or the residence of the Vice President from January 1, 2001, to the present." FOIA Request, Feb. 2, 2006, at 1 (attached as Exhibit A to Second Amended Complaint for Declaratory and Injunctive Relief, Aug. 9, 2006 ["Second Amend. Compl."], Doc. No. 30). Subsequently, plaintiff filed a complaint, and eventually, a second amended complaint, seeking these same records. Second Amend. Compl. ¶¶ 33-43. In September 2006, following a reasonable search, defendant released to plaintiff all known responsive records, which amounted to more than 350 pages.[7] See Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's FOIA Claims, Sept. 21, 2006 ("Memo."), at 1-2 (attached to Defendant's Motion to Dismiss Plaintiff's FOIA Claims, Sept. 21, 2006 ["Motion to Dismiss"], Doc. No. 45); Declaration of Kathy J. Lyerly, September 21, 2006 ("Lyerly Decl.") (attached to Memo.), ¶ 3. The records released comprised predominantly WAVES data/records and Access Control Records System ("ACR") data/records, which generally speaking record the dates and times of visits by individuals to the White House Complex (also "Complex"), and which were described in detail in the declaration of Kathy J. Lyerly. See Lyerly Decl. ¶¶ 6-8.

After defendant conducted its search and released records to plaintiff, it lodged a motion to dismiss plaintiff's FOIA claims for lack of jurisdiction. See Motion to Dismiss. In the

---

[7] In December 2006, defendant filed a declaration describing additional potentially relevant categories of records that it had not previously identified. Morrissey Decl. Though it was not clear whether the records in all of these categories were responsive, defendant searched them. See id. ¶ 4. One responsive record was located and released to plaintiff as a discretionary matter. Id.

4

memorandum filed in support of this motion, defendant demonstrated that plaintiff's FOIA

claims were moot because, as defendant had released all responsive, non-exempt records found

after a reasonable search, plaintiff had "obtained everything that [it] could recover . . . by a

judgment of th[e] court in [its] favor," Hall v. CIA, 437 F.3d 94, 99 (D.C. Cir. 2006) (internal

quotations omitted). See Memo. at 5-12.

In the course of reviewing potentially responsive records for a different FOIA case,

defendant identified as potentially responsive several categories of records that were not

discussed in previous filings in this case, including certain Large Event Summaries that were

transferred to the WHORM after plaintiff filed its FOIA request and Sensitive Security Records.

Second Morrissey Decl. ¶¶ 4-5, 7-8; Ulmer Decl. ¶¶ 5-7, 11. These records have been searched.

Second Morrissey Decl. ¶¶ 4-5, 7-8; Ulmer Decl. ¶¶ 5-7, 11. Two responsive Large Event

Summaries were located by the WHORM, Second Morrissey Decl. ¶ 7; Ulmer Decl. ¶¶ 7, 13,

and defendant located Sensitive Security Records relating to one or more of the individuals

named in plaintiff's FOIA request, Second Morrissey Decl. ¶ 4; Ulmer Decl. ¶¶ 6, 12. No other

responsive records were found. Second Morrisey Decl. ¶¶ 5, 8; Ulmer Decl. ¶ 5

Large Event Summaries are created using data from the WAVES and reflect the names

and appointment times of those individuals scheduled to visit the White House Complex for

events of 20 or more people. Second Morrissey Decl. ¶ 6. The WAVES Center, a component of

defendant, sometimes prints out these summaries. Id. Summaries printed by the WAVES Center

are transferred to the WHORM.[8] Id. With the consent, and at the direction, of the Office of the

---

[8]  Officers on posts, as well another operational section of defendant, print out these summaries; prior to early 2007, the other operational section retained the summaries for several months before discarding them, while the officers likely discarded the lists shortly after printing

President ("OP") and the Office of the Vice President ("OVP"), the WHORM searched for

potentially responsive Large Event Summaries and located two, each containing the name

"Shawn Vasell." Id. ¶ 7; Ulmer Decl. ¶¶ 7, 13.  These records were transferred to defendant for

processing under the FOIA (i.e., for an assessment of what, if any, exemptions should be

claimed.).  Second Morrissey Decl. ¶ 7; Ulmer Decl. ¶¶ 13.  With the consent of the OP,

defendant, through its counsel, has released to plaintiff with this filing, and with redactions, the

records relating to "Shawn Vasell."[9]    Ulmer Decl. ¶ 7.

Turning to Sensitive Security Records, these documents are highly sensitive records

relating to the background investigation and security process undertaken in connection with

certain visits to the White House Complex.  Second Morrissey Decl. ¶ 3; Ulmer Decl. ¶ 10.

These records are created in the course of conducting additional background checks and other

security-related activities regarding certain visitors, who are chosen based on certain details in

their backgrounds and/or the circumstances of their visits.  Second Morrissey Decl. ¶ 3; Ulmer

Decl. ¶ 10.  Included in these records are the names and other identifying information

concerning such visitors (including, in some cases, their birth dates and/or Social Security

numbers) and background information on them or information regarding their visits to the

_____

them.  Second Morrissey Decl. ¶ 6 n.3.

[9] The visits reflected in the Large Event Summaries are reflected in the WAVES and ACR
information that was released to defendant in September 2006, as can be seen, for example, on the
pages with the Bates stamp numbers 1383 and 1384 (attached as Exhibit 4).  Indeed, the Large Event
Summaries do not contain any materially different information than the WAVES/ACR information
that already has been released to plaintiff.  Thus, plaintiff has not been prejudiced by not receiving
the Large Event Summaries at an earlier date.

Complex, which may include criminal history and/or other security-related information.  Second

Morrissey Decl. ¶ 3.

## ARGUMENT

## THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

The Court should enter summary judgment in favor of defendant, as there is no material

question of fact regarding its compliance with FOIA:  Defendant has released all non-exempt

portions of responsive records found after a reasonable search, and the potentially responsive

Sensitive Security Records, as well as portions of the Large Event Summaries, are exempt from

disclosure. "To obtain summary judgment in a FOIA action, an agency must show, viewing the

facts in the light most favorable to the requester, that there is no genuine issue of material fact as

to the agency's compliance with FOIA." Smith v. Environmental and Natural Resources

Division, 2007 4127647, at * 1 (D.D.C. 2007) (citing Steinberg v. U.S. Dept. of Justice, 745 F.2d

1467, 1485 (D.C. Cir. 1994)).  To comply with the FOIA and, by extension, to be entitled to

summary judgement, the agency must demonstrate that it conducted a reasonable search.  See

Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  If the agency withholds any

documents, the Court may enter judgment when the agency's declarations establish "the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claims exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656

F.2d 724, 738 (D.C. Cir. 1981).

7

## I.     Defendant Conducted A Reasonable Search

Prior to filing its motion to dismiss, defendant conducted a reasonable search. Using qualified personnel and appropriate methods, defendant searched records relating to visits to the White House Complex and the Vice President's Residence then identified as responsive. See Lyerly Decl. Defendant has demonstrated the reasonableness of its initial search in prior filings, see, e.g., id., and it need not rehash that issue in full here.[10] The current revelation of the additional records does not undermine that showing, but underscores the integrity of defendant's search process and the seriousness with which it takes its obligations. In any case, defendant has since supplemented its original search (and the December 2006 follow-up) with an additional comprehensive search of potentially responsive records. Second Morrissey Decl. ¶¶ 4-5, 7-8; Ulmer Decl. ¶¶ 5-7. There is nothing more for defendant to do.

The reasonableness of a search is measured by the appropriateness of the methods used, not its results. Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003); Meeropol v. Meese, 790 F.2d 942, 953 (D.C. Cir. 1986) (holding that "a search [was] not unreasonable simply because it fail[ed] to produce all relevant material" as "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file") (emphasis in parenthetical statement in original). An agency is required to make "a good faith effort to conduct a search for the requested records, using methods reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency need not search every file where a responsive document could possibly exist for its search to be reasonable; the reasonableness of the search is measured in light of the

---

[10] Defendant's prior filings are incorporated herein by reference.

totality of the circumstances.  See Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Defendant conducted its original search using reasonable methods.  Plaintiff's FOIA request called on the Secret Service to produce records of visits by eight individuals to the White House Complex over a number of years.  FOIA Request at 1.  To find responsive records, defendant searched the records that then had been identified as memorializing visits to the White House Complex – WAVES and ACR records.  Lyerly Decl. ¶¶ 6-8.  In the course of litigating other FOIA cases, however, defendant has identified other categories of records as potentially responsive.  See Ulmer Decl. ¶ 11.  And it is not remarkable, for example, that defendant did not, at the start of this case, focus on Sensitive Security Records.  After all, the primary purpose of Sensitive Security Records is not to track those who visit the White House, but to facilitate additional background checks and other security-related activities with regard to certain individuals who visit the Complex.  Second Morrissey Decl. ¶ 3; Ulmer Decl ¶ 10.  Nonetheless, defendant has come to understand that these records, as an incident to their protective purpose, might reflect the fact of an appointment.  Second Morrissey Decl. ¶¶ 3-4; Ulmer Decl ¶ 10.  Accordingly, defendant conducted additional searches of other records that also might reflect entries to and exits from the White House Complex.  Second Morrissey Decl. ¶¶ 4-5, 7-8; Ulmer Decl. ¶¶ 5-7.  Setting aside the Large Event Summaries, no other responsive records were found.  Second Morrissey ¶¶ 5, 8; Ulmer ¶ 5.  And nothing else reasonably could be required of the Secret Service at this point.

The FOIA requires reasonableness, not perfection or omniscience.  See, e.g., Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (explaining that "an agency's search

need not be perfect, but rather need only be reasonable"). Defendant's diligent and thoughtful efforts to discover responsive records demonstrate its commitment to the FOIA and that statute's animating purpose of open government. Indeed, defendant's attempts to locate additional records that might prove responsive serve to enhance the integrity of its initial search. See Meeropol, 790 F.2d at 953. And the additional search demonstrates not only defendant's good faith, but when combined with defendant's earlier efforts (after which plaintiff received more than 350 pages of responsive records), it leaves no doubt regarding the reasonableness of defendant's search for responsive records. Based on defendant's prior submissions as supplemented here, the Court should conclude that defendant has discharged its obligation to conduct a reasonable search.

II.    **The Sensitive Security Records Are Exempt From Disclosure Under the FOIA**

The Court should hold that the potentially responsive Sensitive Security Records are exempt from disclosure pursuant to FOIA exemptions 2, 7(E), and 7(F) (5 U.S.C. §§ 552(b)(2), (b)(7)(E), and (b)(7)(F)): Revealing these records would undermine the Secret Service's ability to carry out its protective duties.[11] Ulmer Decl. ¶¶ 20, 22, 24.

Defendant addresses these records together because it cannot confirm or deny the existence of potentially responsive records with respect to any single individual without compromising its ability to carry out its protective function. Ulmer Decl. ¶ 22. Given that defendant already has furnished plaintiff with other records detailing the visits of individuals named in the FOIA request, releasing the name of an individual whose visit did or did not prompt

---

[11] To reiterate, plaintiff did not challenge the invocation of these exemptions in another case involving these records. See footnote 5 above.

10

the additional protective activities documented by the Sensitive Security Records would provide

valuable insight into the security-related circumstances in which such records are (or are not)

created. Id. This information could allow persons so inclined to determine the nature of the

protective activities reflected in these records.[12] Id.; see also Brunetti v. FBI, 357 F. Supp. 2d 97,

104 & n.4 (D.D.C. 2004).

A.    The Sensitive Security Records Are Categorically Protected by FOIA
       Exemption 2

Exemption 2 of the FOIA applies to "matters that are . . . related solely to the internal

personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). This exemption applies not

only to "trivial administrative matters of no genuine public interest" such as internal file numbers

and employee leave policies — referred to as "low 2" records — see Long v. U.S. Dep't of

Justice, 450 F. Supp. 2d 42, 54-57 & n.16 (D.D.C. 2006), but also, in some circumstances, to

more substantive records "designed to establish rules and practices for agency personnel," known

as "high 2" records. Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073

(D.C. Cir. 1981) (en banc).[13] Specifically, "high 2" records are exempt from disclosure if they

are "predominantly internal" and their disclosure would "significantly risk[ ] circumvention of

agency regulations or statutes." Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997)

(quoting Crooker, 670 F.2d at 1074).

---

[12] A refusal to either confirm or deny the existence of responsive records is a well-recognized and accepted response in circumstances such as these. Cf. Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976) (approving the CIA's refusal to confirm or deny the existence of records related to an underwater sea craft known as the "Glomar Explorer").

[13] The exemption for "low 2" information would justify defendant withholding other information contained in Sensitive Security Records. Ulmer Decl. ¶¶ 20-21.

The effect of a record need not be limited to agency personnel for the record to be considered "predominantly internal." In the law enforcement context, for example, "agency guidelines for conducting investigations and identifying law violators" are treated as "predominantly internal" even though they "directly affect[ ] the public at large." Wiesenfelder, 959 F. Supp. at 535; cf. Institute for Policy Studies v. Department of the Air Force, 676 F. Supp. 3, 5 (D.D.C. 1987) (acknowledging that Exemption 2 applies to "law enforcement records," among other types). The D.C. Circuit has held, for example, that Exemption 2 covers an ATF training manual regarding surveillance of suspects, finding that the manual was "predominantly internal" because its purpose was not "to modify or regulate public behavior [but] only to observe it for illegal activity." Crooker, 670 F.2d at 1076. Similarly, another judge of this Court has held that Exemption 2 covers "trigger figures" and "error rates" used by the Department of Education to determine when an educational institution may not be in compliance with federal guidelines in student financial aid programs. See Wiesenfelder, 959 F. Supp. at 534-36. The Court rejected a contention that these benchmarks constituted "secret law" governing the agency's "dealings with the public." Id. at 536. Public behavior, the Court observed, was governed by the statute; the trigger figures and error rates, in contrast, were used internally to "alert the Department . . . for enforcement purposes" and to enable the Department "to most closely scrutinize the institutions exhibiting the most serious violations." Id. at 536-37.

Nor is Exemption 2 limited to the actual text of agency "rules or practices." Rather, as stated in the statutory language, it extends to matters "related" to internal rules and practices. Thus, as the D.C. Circuit has held, Exemption 2 protects records whose "disclosure could lead to disclosure of the rule or practice itself." Schwaner v. Department of Air Force, 898 F.2d 793,

796 (D.C. Cir. 1990) (emphasis added). Thus, for example, another judge of this Court has held

that Exemption 2 covers informant numbers and file numbers used in FBI records to protect the

identity of informants. See Brunetti v. FBI, 357 F. Supp. 2d 97, 104 & n.4 (D.D.C. 2004).

Although disclosure of the numbers, alone, would not reveal informant identities, the Court

noted that their disclosure could lead to that result:

> Because these unique identifiers are used consistently across FBI records, it would
> be possible, with access to the numbers, to discern patterns of information
> associated with particular sources. An individual with knowledge of the people
> and facts would be able to deduce the identities of these sources, putting the
> sources at risk of exposure and potentially placing them in danger. Accordingly,
> the Court concludes that the release of the numbers would risk revealing the
> identities of informants in circumvention of FBI policies and practices related to
> information gathering and protecting confidential informants.

Id.

The requirement that disclosure of a "high 2" record would "significantly risk[ ]

circumvention of agency regulations or statutes" is met where disclosure would endanger the

safety of agency personnel or of persons under their protection. For example, a judge of this

Court has held that Exemption 2 protects an "internal investigation document used by the Secret

Service to analyze and profile factual information concerning individuals" who are "potential

threat[s] toward a Secret Service protectee." Dorsett, 307 F. Supp. 2d at 36. "As such," said the

Court, "the documents could be used to gain insight into the methods and criteria the Secret

Service utilizes to identify and investigate persons of interest, and could alter such individuals'

behavior to avoid detection" — thus presenting a "significant risk" of circumvention of statutes.

Id. Similarly, another judge has held that the exemption applies to guidelines used by an agency

security office in protecting the head of the agency, where disclosure would increase the potential

for "unlawful attacks." <u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 337 F. Supp. 2d 146,

166 (D.D.C. 2004).

Under this precedent, the Sensitive Security Records involved here fall squarely within

the protection of Exemption 2. <u>See</u> Ulmer Decl. ¶¶ 20, 22. Like the Department of Education

"trigger figures" and "error rates" at issue in <u>Wiesenfelder</u>, these records are designed to "alert"

defendant to potential security threats and to "most closely scrutinize" those White House

Complex visitors and visits that might present "the most serious" risk. <u>See</u> <u>Wiesenfelder</u>, 959

F. Supp. at 536-37; Ulmer Decl. ¶¶ 22. Although disclosing the names of persons whose visits

have prompted defendant to undertake additional security activities would not, alone, expose the

nature of defendant's protective activities, revealing that information could allow someone "with

knowledge of the people and facts" to "deduce" the nature of those additional protective

activities. <u>Brunetti</u>, 357 F. Supp. 2d at 104; <u>see</u> Ulmer Decl. ¶¶ 22. Like the records held

properly exempt in <u>Brunetti</u>, therefore, disclosing defendant's Sensitive Security Records could

"lead to" disclosure of certain aspects of the agency's fulfillment of its protective functions. <u>See</u>

<u>Brunetti</u>, 357 F. Supp. 2d at 104; Ulmer Decl. ¶¶ 22; <u>Schwaner</u>, 898 F.2d at 796. Finally, like the

records withheld in <u>Dorsett</u>, the records in question here "could be used to gain insight into the

methods and criteria the Secret Service utilizes" to secure the White House and its protectees;

disclosure, therefore, would "significantly risk[ ] circumvention" of statutes. 307 F. Supp. 2d at

36; Ulmer Decl. ¶ 22.

B.     The Sensitive Security Records Are Categorically Protected by FOIA
        Exemption 7(E)

"Exemption 7(E) provides categorical protection to information related to law

enforcement techniques." Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 496,

501 (D.D.C. 1997). Records "compiled for law enforcement purposes" may be withheld under

this exemption if release of the information "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk circumven-

tion of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit applies a "deferential standard to a

claim that information was compiled for law enforcement purposes when the claim is made by an

agency whose primary function involves law enforcement." Tax Analysts v. IRS, 294 F.3d 71,

77 (D.C. Cir. 2002); see Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 44 (D.D.C. 1999)

("Law enforcement agencies . . . face a lesser burden with regard to showing a legitimate law

enforcement purpose behind the compilation of such records than do other agencies.").

Specifically, in order to show that information was "compiled for law enforcement purposes," a

law enforcement agency must show that (1) the activity that gave rise to the documents is related

to the enforcement of federal laws or the maintenance of national security; and (2) the nexus

between the activity and one of the agency's law enforcement duties is based on information

sufficient to support at least a "colorable claim" of its rationality. See Pratt v. Webster, 673 F.2d

408, 420-21 (D.C. Cir. 1982); Blanton, 63 F. Supp. 2d at 44. Thus, "a court can accept less

exacting proof from [a law enforcement] agency that the purpose underlying disputed documents

is law enforcement." See Tax Analysts, 294 F.3d at 77.

15

In examining an Exemption 7 claim, the courts are sensitive to the inherent limitations on describing the purposes of law enforcement records, given that such a description may itself disclose law enforcement techniques and procedures. Therefore, "[i]n justifying the application of Exemption 7(E), the agency may describe the general nature of the technique while withholding the full details." Boyd v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, Civil Action No. 05-1096 (RMU), 2006 WL 2844912, at *9 (D.D.C. Sept. 29, 2006). In fact, "in some cases it may not even be possible for an agency to describe its law enforcement techniques in general terms without disclosing the very information it seeks to protect." Morley v. CIA, 453 F. Supp. 2d 137, 156 (D.D.C. 2006).

Under these standards, any Sensitive Security Records withheld by defendant in this case would be protected by Exemption 7(E). See Ulmer Decl. ¶¶ 22. As a threshold matter, defendant's protective function constitutes "law enforcement" for purposes of Exemption 7. See 18 U.S.C. § 3056A(a) (referring to Secret Service Uniformed Division as a "permanent police force"). As another judge of this Court has said, in holding that defendant's protective function is a "law enforcement" activity under Exemption 7:

> The Secret Service is unique in that its law enforcement efforts are geared primarily towards prevention rather than apprehension. . . . While most law enforcement agencies investigate suspected or on-going criminal activities, the Secret Service must protect persons such as the President from both known and unknown threats. Accordingly, many of its most important techniques and procedures are preventative rather than investigative. It is inconceivable, however, that Congress meant to afford these activities any less protection from disclosure simply because they do not fit within the traditional notion of investigative law enforcement techniques. Indeed, it is difficult to imagine agency procedures or techniques more deserving of protection.

U.S. News & World Report v. Dep't of Treasury, 1986 U.S. Dist. LEXIS 27634, at *6-7 (D.D.C.

March 26, 1986); see Moorefield v. U.S. Secret Service, 611 F.2d 1021, 1024 (5th Cir. 1980)

(holding that Secret Service records were "compiled for law enforcement purposes" where they

"were prepared to help the Service fulfill its duty under 18 U.S.C. § 3056 (1976) [of] ensuring

the lives and safety of the President, members of his family, and certain other persons"); see also

Dorsett v. U.S. Dep't of the Treasury, 307 F. Supp. 2d 28, 38-40 (D.D.C. 2004) (upholding Secret

Service's invocation of Exemption 7(C)); Fitzgibbon v. U.S. Secret Service, 747 F. Supp. 51, 59

(D.D.C. 1990) (upholding Secret Service's invocation of Exemptions 7(C) and (D)).

Obviously, therefore, the Sensitive Security Records are "compiled for law enforcement

purposes." 5 U.S.C. § 552(b)(7)(E); Ulmer Decl. ¶ 22; Second Morrissey Decl. ¶ 3. They are

created and used in the course of conducting background checks and other security-related

activities regarding certain visitors to the White House Complex, in furtherance of defendant's

statutory duties. See Ulmer Decl. ¶¶ 10, 22; Second Morrissey Decl. ¶ 3; see also Pratt, 673 F.2d

at 420-21; Blanton, 63 F. Supp. 2d at 44. Like the records involved in Moorefield, cited above,

these records were "prepared to help the Service fulfill its [protective] dut[ies]." 611 F.2d at

1024; see Ulmer Decl. ¶¶ 15, 22, 23; 18 U.S.C. §§ 3056, 3056A.

Furthermore, disclosing these records "would disclose techniques and procedures," 5

U.S.C. § 552(b)(7)(E), used by defendant in carrying out these duties. Ulmer Decl. ¶ 22. As

explained by defendant, these records are created in conducting additional background checks

and other security-related activities regarding certain visitors who are chosen based on certain

details in their backgrounds and/or the circumstances of their visits. See Ulmer Decl. ¶ 10;

Second Morrissey Decl. ¶ 3. Disclosing these records could, among other things, reveal the

criteria — not generally known to the public — that defendant uses in choosing visitors for these

additional background checks and other security-related activities.  See Ulmer Decl. ¶ 22.  See

Schwarz v. United States Department of Treasury, 131 F.Supp. 2d 142, 150 (D.D.C. 2000)

(concluding that "information concerning personal characteristics used by the Secret Service in

evaluating the dangerousness of a subject and the threat potential to individuals protected by the

Secret Service" is "clearly exempt from disclosure" pursuant to Exemptions 2 and 7(e))

 Under these circumstances, the Sensitive Security Records are categorically protected

from disclosure by FOIA Exemption 7(E).

  C. The Sensitive Security Records Are Categorically Protected by FOIA
    Exemption 7(F)

 Exemption 7(F) of the FOIA exempts from disclosure "records or information compiled

for law enforcement purposes," the disclosure of which "could reasonably be expected to

endanger the life or physical safety of any individual."  5 U.S.C. §  552(b)(7)(F).  "While courts

generally have applied Exemption 7(F) to protect law enforcement personnel or other specified

third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any

individual' reasonably at risk of harm."  Long v. U.S. Dep't of Justice, 450 F. Supp. 2d 42, 79

(D.D.C. 2006).  "In evaluating the validity of an agency's invocation of Exemption 7(F), the court

should within limits, defer to the agency's assessment of danger."  Peter S. Herrick's Customs &

Inter'l Trade Newsletter v. U.S. Customs & Border Protection, Civil Action No. 04-00377 (JDB),

2006 WL 1826185, at *9 (D.D.C. June 30, 2006) (internal quotation marks omitted).  This

exemption "does not require a balancing of interests, but rather focuses on the potential harm to

the third party."  Brunetti v. FBI, 357 F. Supp. 2d 97, 109 n.9 (D.D.C. 2004).

Defendant's factual submissions in this case establish that the Sensitive Security Records are categorically protected by Exemption 7(F). Ulmer Decl. ¶ 24. As discussed above in relation to Exemption 7(E), disclosure of these records would reveal certain "techniques and procedures" used by defendant in securing the White House Complex, by revealing when various security checks and security measures are taken in connection with individuals seeking entrance into the Complex. Id. Disclosing those techniques and procedures would permit an individual or organization to attempt to avoid certain security checks, potentially impeding defendant's efforts to identify persons who may be a threat to its protectees. Id. Because the function of defendant includes the protection of particular personnel, disclosing these records "could reasonably be expected to endanger the life or physical safety" of one or more Secret Service protectees, 5 U.S.C. § 552(b)(7)(F). See Ulmer Decl. ¶ 24.

### III. Portions of the Large Event Summaries Are Exempt from Disclosure Under the FOIA Pursuant to Exemptions 2 and 7(e)

To protect the security of the White House Complex, the Secret Service redacted from Large Event Summaries, under Exemption (b)(2) in conjunction with Exemption (b)(7)(E), limited information from background checks performed by the Secret Service and instructions to Secret Service officers. Ulmer Decl. ¶ 23. This information was compiled, at least in part, for law enforcement purposes, and releasing it would create a security risk as the information reflects

19

the circumstances in which individuals may be admitted to the White House Complex.[14] Id.; see also Schwarz, 131 F.Supp. 2d at 150; Parts II(A) and (B) above.

## CONCLUSION

For the reasons stated above, the Court should enter summary judgment in favor of defendant.

Dated: December 11, 2007                    Respectfully submitted,

                                            JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General

                                            JEFFREY A. TAYLOR
                                            United States Attorney

                                            CARL J. NICHOLS

---

[14] The law not only supports defendant's argument that responsive Sensitive Security Records and certain portions of Large Event Summaries are exempt from diclosure for security reasons, but it also justifies defendant in withholding information under Exemptions 6 and 7(C), to protect individuals' privacy interests. From Sensitive Security Records, defendant would withhold the names of the individuals requesting that visitors be given access to the Complex, the Social Security numbers and dates of birth of the individuals for whom access is sought, and the name of an Access Control Officer. See Ulmer Decl. ¶¶ 25, 27, 29-31. Birth dates and Social Security numbers are typical of the sensitive personal information whose disclosure would "constitute a clearly unwarranted invasion of personal privacy," see 5 U.S.C. § 552(b)(6), (b)(7)(C), and plaintiff can show no legitimate interest in their disclosure here. See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146 (D.D.C. 2004) ("[T]he disclosure of [dates of birth and other personal] information has little to do with the public's understanding of the manner in which the DOC conducts business."); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 86 n.13 (D.D.C. 2003) ("The Court agrees with defendant . . . that there is a significant privacy interest in social security numbers, and no legitimate purpose would be served by their release."); Kuffel v. U.S. Bureau of Prisons, 882 F. Supp. 1116, 1122-23 (D.D.C. 1995) (upholding exemption of "the social security numbers of Plaintiff's prospective visitors in prison"). From Large Event Summaries, defendant has withheld, for the reasons stated above, dates of birth and Social Security numbers of visitors to the Complex, as well as the name of a Secret Service Uniformed Division Officer. Ulmer ¶¶ 25, 28-31.

Deputy Assistant Attorney General

JOSEPH H. HUNT
Branch Director

ELIZABETH J. SHAPIRO
Assistant Branch Director

s/ Justin M. Sandberg
JUSTIN M. SANDBERG
(Ill. Bar. No. 6278377)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7224
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-3489
Facsimile: (202) 616-8202
E-mail: justin.sandberg@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

LIZA MURPHY
MOLLY WEBER
United States Secret Service

21

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CITIZENS FOR RESPONSIBILITY AND         )
ETHICS IN WASHINGTON,                   )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )
                                        )       Civil Action No. 06-883 (RCL)
UNITED STATES DEPARTMENT OF             )
HOMELAND SECURITY,                      )
                                        )
            Defendant.                  )
_____ )

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON CLAIMS I - III**

1.    By a letter dated February 2, 2006, plaintiff submitted a FOIA request seeking "all

records relating to any visit" made by eight named individuals, including "Shawn

Vassell," "to the White House or the residence of the Vice President from January 1,

2001, to the present."  FOIA Request, Feb. 2, 2006, at 1 (attached as Exhibit A to Second

Amended Complaint for Declaratory and Injunctive Relief, Aug. 9, 2006 ["Second

Amend. Compl."], Doc. No. 30)

2.    In September 2006, following a reasonable search, defendant released to plaintiff all

known responsive records, which amounted to more than 350 pages.  See Memorandum

in Support of Defendant's Motion to Dismiss Plaintiff's FOIA Claims, Sept. 21, 2006

("Memo."), at 1-2 (attached to Defendant's Motion to Dismiss Plaintiff's FOIA Claims,

1

Sept. 21, 2006 ("Motion to Dismiss"), Doc. No. 45); Declaration of Kathy J. Lyerly, September 21, 2006 ("Lyerly Decl.") (attached to Memo.)**,** ¶ 3

3.      The records released comprised predominantly Worker and Visitor Entrance System ("WAVES") data/records and Access Control Records System ("ACR") data/records, which generally speaking record the dates and times of visits by individuals to the White House Complex (also "Complex"), and which were described in detail in the declaration of Kathy J. Lyerly, <u>see</u> Lyerly Decl. ¶¶ 6-8.

4.      In December 2006, defendant filed a declaration describing additional potentially relevant categories of records that it had not previously identified.  <u>See</u> Declaration of Paul S. Morrissey, Dec. 12, 2006 ("Morrissey Decl.") (attached to Notice of Filing, Dec. 12, 2006, Doc. No. 59)).  Though it was not clear whether the records in all of these categories were responsive, defendant searched them.  <u>See id.</u> ¶ 4.  One responsive record was located and released to plaintiff as a discretionary matter.  <u>Id.</u>

5.      In the course of reviewing potentially responsive records for a different FOIA case, defendant has identified as potentially responsive several categories of records that were not discussed in previous filings in this case, including (i) certain Large Event Summaries that were transferred to the White House Office of Records Management ("WHORM"), and (ii) Sensitive Security Records.  Second Declaration of Paul S. Morrissey, Dec. 11, 2007 ("Second Morrissey Decl."), ¶¶ 4-5, 7-8 (attached **as Exhibit 1**); Declaration of Craig W. Ulmer, Dec. 11, 2007 ("Ulmer Decl."), ¶¶ 5-7, 11 (attached as **Exhibit 2**). .

6.      These categories of records were searched.  Second Morrissey Decl. ¶¶ 4-5, 7-8; Ulmer Decl. ¶¶ 5-7, 11.  Two responsive Large Event Summaries were located by the WHORM,

2

and defendant located one or more Sensitive Security Records relating to one or more of the individuals named in plaintiff's FOIA request.[1]  Second Morrissey Decl. ¶¶ 4, 7; Ulmer Decl. ¶¶ 6-7; 12-13.  No other responsive records were found.  Second Morrissey Decl. ¶¶ 5, 8; Ulmer Decl. ¶ 5.

7.    Large Event Summaries are created using data from the WAVES and reflect the names and appointment times of those individuals scheduled to visit the White House for events of 20 or more people.  Second Morrissey Decl. ¶ 6.

8.    The WAVES Center, a component of defendant, sometimes prints out these summaries. Id.  Summaries printed by the WAVES Center are transferred to the WHORM.[2]  Id.

9.    With the consent, and at the direction, of the Office of the President ("OP") and the Office of the Vice President ("OVP"), the WHORM searched for potentially responsive Large Event Summaries and located two, each containing the name "Shawn Vasell." Second Morrissey Decl. ¶¶ 7.

10.    These records were transferred to defendant for processing under the FOIA (i.e., for an assessment of what, if any, exemptions should be claimed.).  Second Morrissey Decl. ¶ 7; Ulmer Decl. ¶¶ 13.

11.    To protect the security of the White House Complex, defendant redacted from Large Event Summaries, under Exemption 2 in conjunction with Exemption 7(e), limited

---

[1] For simplicity's sake, the potentially responsive record or records will be referred to only in the plural form.

[2]  Officers on posts, as well another operational section of defendant, print out these summaries; prior to early 2007, the other operational section retained the summaries for several months before discarding them, while the officers likely discarded the lists shortly after printing them.  Second Morrissey Decl. ¶ 6 n.3.

information from background checks and instructions to Secret Service officers.  Ulmer
Decl. ¶ 23.  Releasing this information would create a security risk as the information
reflects the circumstances in which individuals may be admitted to the White House
Complex.  Ulmer Decl. ¶ 23.

12.  To protect the privacy interests of individuals, defendant also redacted, from Large Event
Summaries, dates of birth and Social Security numbers of visitors to the Complex, as well
as the name of a Secret Service Uniformed Division Officer.  Ulmer ¶¶ 25, 28-31.
Defendant made these redactions pursuant to Exemptions 6 and 7(c).  Ulmer ¶ 28.
Releasing this information would unduly invade individuals' privacy interests.  Id.

13.  With the consent of the OP, defendant, through its counsel, has released to plaintiff with
this filing, and with the redactions discussed above, the Large Event Summaries relating
to "Shawn Vasell."   Ulmer Decl. ¶ 7.

14.  Sensitive Security Records relate to the background investigation and security processes
sometimes undertaken in connection with visits to the White House Complex.  Second
Morrissey Decl. ¶ 3; Ulmer Decl. ¶ 10.  These records are created in the course of
conducting additional background checks and other security-related activities regarding
certain visitors, who are chosen based on certain details in their backgrounds and/or the
circumstances of their visits.  Second Morrissey Decl. ¶ 3; Ulmer Decl. ¶ 10.   Included in
these records are the names and other identifying information concerning such visitors
(including, in some cases, their birth dates and/or Social Security numbers) and
background information on them or information regarding their visits to the Complex,

4

which may include criminal history and/or other security-related information.  Second Morrissey Decl. ¶ 3.

15.    Defendant searched the Sensitive Security Records and located responsive records. Second Morrissey Decl. ¶ 4; Ulmer Decl. ¶¶ 6, 12.

16.    Defendant addresses these records together because it cannot confirm or deny the existence of potentially responsive records with respect to any single individual without compromising its ability to carry out its protective function.  Ulmer Decl. ¶ 22.

17.    Releasing the name of an individual whose visit did or did not prompt the additional protective activities documented by the Sensitive Security Records would provide valuable insight into the circumstances in which such records are (or are not) created.  Id. This information could allow persons so inclined to figure out the nature of the protective activities reflected in these records.  Id.

18.    The responsive Sensitive Security Records are exempt from disclosure because they contain information that (i) is useless to the general public because it relates solely to the internal practices of the Secret Service, Ulmer Decl. ¶ 21, or if released, would impinge (ii) on the Secret Service's ability to fulfill its protective duties, Ulmer Decl. ¶¶ 22, 24, or (iii) on individuals' privacy interests, Ulmer Decl. ¶¶ 25, 27, 29-31.


Dated: December 11, 2007                    Respectfully submitted,

                                            JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General

                                            JEFFREY A. TAYLOR

United States Attorney

CARL J. NICHOLS
Deputy Assistant Attorney General

JOSEPH H. HUNT
Branch Director

ELIZABETH J. SHAPIRO
Assistant Branch Director

OF COUNSEL:

LIZA MURPHY
MOLLY WEBER
United States Secret Service

s/ Justin M. Sandberg
JUSTIN M. SANDBERG
(Ill. Bar. No. 6278377)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7224
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 514-3489
Facsimile:  (202) 616-8202
E-mail:  justin.sandberg@usdoj.gov

Attorneys for Defendant