UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES DEPARTMENT OF ) HOMELAND SECURITY, ) ) Defendant. ) | Civil Action No. 06-0883 (RCL) |

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Citizens for Responsibility and Ethics in Washington (CREW), a non-profit organization and self-described government watchdog, filed a Freedom of Information Act request with the United States Secret Service, a component of the United States Department of Homeland Security (DHS), for records relating to former-lobbyist Jack Abramoff. CREW sought all records showing that Mr. Abramoff, and seven other individuals thought to be associated with Mr. Abramoff, had recently visited the White House or the Vice President's Residence. When the Secret Service failed to fully respond to this request in a timely fashion, CREW filed the present action under the Freedom of Information Act (FOIA), the Federal Records Act (FRA), and the Administrative Procedure Act (APA), challenging not only the Secret Service's failure to respond to its request, but the legality of the DHS's recordkeeping guidelines with respect to the White House visitor records.

There are two issues presented by the DHS's motion to dismiss claim four [34].  First, the Court must determine whether CREW has standing to seek prospective injunctive and declaratory relief.  Second, and alternatively, the Court must determine whether – and to what extent – a private litigant may use the APA as a vehicle to challenge an agency's recordkeeping policies under the FRA.  For the following reasons, the DHS's motion is granted.  CREW has not demonstrated that it has constitutional standing to seek prospective relief.

### BACKGROUND[1]

By letter dated February 2, 2006, CREW filed a FOIA request with the Secret Service seeking "all records" concerning "any visit" that Jack Abramoff and seven other named individuals had made "to the White House or the residence of the Vice President [since] January 1, 2001."  *See* Second Amended Complaint For Declaratory Judgment And Injunctive Relief (2d Am. Compl.), ¶ 24.[2]  In its letter to the Secret Service, CREW asked the agency to expedite its handling of the FOIA request.  *Id*. at ¶ 25.  CREW wrote that there was "a particular urgency in informing the public about whether the President, the Vice President, and/or their staff met with Jack Abramoff," explaining that the public is entitled "to know" whether Mr. Abramoff "may have influenced the President and his staff." *Id*., Ex. A.  The Secret Service acknowledged receiving the request roughly a month later and

---

[1] Today the Court issued an opinion in a related case, *Citizens For Responsibility And Ethics In Washington v. U.S. Department of Homeland Security, et al.*, No. 06-1912 (D.D.C. Dec. 17, 2007), in which it determined that White House visitor records – including WAVES records, the same records at issue in this case – are agency records subject to the FOIA.  A more detailed description of the types of visitor records created at the White House can be found in the Court's opinion.

[2] The seven other individuals named in the FOIA request, Michael Scanlon, Neil Volz, Tony Rudy, Shawn Vassell, Kevin Ring, Edwin Buckham, and Patrick Pizzella, were alleged to be "associated with Mr. Abramoff."  2d Am. Compl., Ex. A.

explained that a "search for files" was "being conducted." *Id*. at ¶ 27, Ex. B. CREW was informed that it would be "notified" of "the results of the search" once they were "known." *Id*, Ex. B.

Failing to receive a response to its request that it perceived to be adequate or timely, *see id*. at ¶¶ 27-28, 33-40, CREW filed the present action on May 10, 2006. *See* Complaint for Declaratory Judgment and Injunctive Relief.[3] Claim four of the complaint, which is the sole focus of the present motion to dismiss, challenges whether the DHS's recordkeeping policy with respect to White House visitor records is in conformity with the FRA. Specifically, CREW claims that "[t]he policy of the Secret Service and the DHS to erase from its computer system all WAVES records . . . is arbitrary, capricious, and contrary to law, because it permits the disposal of records that have not been subject to a disposition schedule that has been subject to public comment and approved by the [National] Archivist." 2d Am. Compl. at ¶ 46. CREW reasons that due to this "unlawful policy" it has been denied "a right of access to information in the public interest" and "its right to notice and the opportunity to comment on the proposed destruction of agency records." *Id*. at ¶¶ 47, 48.

CREW seeks both "declaratory relief that [the DHS's] policy of destroying WAVES records without complying with the requirements of the FRA is arbitrary, capricious, and contrary to law, and injunctive relief that [the DHS] immediately take all necessary steps to cease destruction of WAVES records and to secure the return of the WAVES records [previously transferred] to the White House." *Id*. at ¶ 2.

The DHS's motion to dismiss claim four was filed on August 30, 2006. This case was reassigned to the undersigned judge on October 25, 2007.

---

[3] CREW's original complaint did not invoke the FRA. CREW twice amended its complaint, first on May 23 and again on July 27, 2006, adding the FRA claim.

**DISCUSSION**

The DHS moves to dismiss claim four on the ground that the Court lacks subject matter jurisdiction over this claim. This argument rests on two assertions. First, the DHS asserts that CREW does not have standing to seek prospective declaratory and injunctive relief. Second, the DHS asserts that the FRA, as interpreted by the D.C. Circuit in *Armstrong v. Bush*,[4] precludes APA suits for injunctive relief regarding the retention of agency records. The Court will examine each assertion in turn, after summarizing the relevant legal standard.

**I.    Legal Standard**

The DHS moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). When confronted with a motion to dismiss for lack of subject matter jurisdiction, the Court must "'accept all of the factual allegations in [the] complaint as true.'" *Jerome Stevens Pharms., Inc. v. FDA*, 365 U.S. App. D.C. 270, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (quoting *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276 (U.S. 1991) (other citation omitted)). "[A] plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction." *Hallinan v. United States*, 498 F. Supp. 2d 315, 316 (D.D.C. 2007) (citing *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998)). "[I]n deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005) (citing *EEOC v. St. Francis Xavier*

---

[4] *See Armstrong v. Bush*, 288 U.S. App. D.C. 38, 924 F.2d 282 (D.C. Cir. 1991) (*Armstrong I*).

*Parochial Sch.*, 326 U.S. App. D.C. 67, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997) (other citations omitted)).

    **II**    **Constitutional Standing**

The DHS asserts that the Court should dismiss claim four, to the extent CREW seeks prospective declaratory or injunctive relief, because CREW lacks Article III standing. *See* U.S. CONST. art. III, § 2, cl. 1. The Court agrees. CREW has not adequately alleged that it will suffer a future injury-in-fact, that is both imminent and concrete, to satisfy the basic requirements of constitutional standing.

"Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S. Ct. 1003 (1998) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717 (1990)). The "irreducible constitutional minimum of standing" contains three elements, which the "party invoking federal jurisdiction bears the burden of establishing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596 (1990); *Warth v. Seldin*, 422 U.S. 490, 508, 95 S. Ct. 2197 (1975)). First, "there must be alleged (and ultimately proven) an 'injury in fact' -- a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not "conjectural" or "hypothetical."'" *Steel Co.*, 523 U.S. at 103 (citing *Whitmore v. Arkansas*, *supra*, 495 U.S. at 155 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660 (1983))). Next, "there must be causation -- a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id*. (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, 96 S. Ct. 1917 (1976)). Lastly, plaintiff must show "redressability -- a likelihood that the requested relief will redress the alleged injury." *Id*. (citing *Simon*, *supra*); *see*

*also Lujan*, 504 U.S. at 555 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citation and internal quotation marks omitted).

In this case, CREW lacks standing to seek injunctive or declaratory relief because it has failed to adequately allege the first element of standing – injury-in-fact. In its second amended complaint and opposition brief, CREW contends that it has suffered a number of injuries. These alleged injuries can be divided into two categories: past and future. CREW claims that it has been injured – in the past – because it was denied "access to <u>all</u> of the records" that were responsive to its FOIA request. Plt.'s Opp'n at 10 (emphasis in original). These were records which, according to CREW, it would have used to educate the public on the internal workings of the White House. *See* 2d Am. Compl. at ¶ 47 ("As a result of [the DHS's] unlawful policy . . . [CREW] was denied a right of access to information in the public interest, including an important part of the historical record concerning the relationship between the White House and convicted felon Jack Abramoff."). Indeed, CREW notes that its organizational mission is to "inform[] [the public] about the activities of government officials and to ensur[e] the integrity of government officials." *See also* 2d. Am. Compl. at ¶ 4. The DHS's inability to completely respond to the FOIA request, because it had allegedly deleted some visitor records responsive to the request, necessarily "frustrated" CREW's organizational mission. *See* Plt.'s Opp'n at 11 ("Because of [the DHS's] refusal to comply with the requirements of the [FRA], CREW has been unable to disseminate and publish information in furtherance of its programmatic activities.") (footnote omitted). In short, information that should have been available for public consumption, was not.

The Court agrees that CREW has properly alleged a past injury-in-fact. CREW alleges that it submitted a FOIA request with the DHS and that the DHS failed to respond to this request in a

timely or plenary fashion.  This is sufficient under our case law.  *See Zivotofsky v. Sec'y of State*, 370 U.S. App. D.C. 269, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose [FOIA] request for specific information has been denied has standing to bring an action; the requester's circumstances - why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose - are irrelevant to his standing." (citing *Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989))).  "The requester is injured-in-fact for standing purposes because he does not get what the [FOIA] entitles him to receive."  *Id*. at 617-18 (citing *FEC v. Akins*, 524 U.S. 11, 23-25, 118 S. Ct. 1777 (1998) (other citations omitted)).  It is immaterial, for purposes of standing, whether the DHS has released some or even all of the records responsive to the FOIA request since CREW filed suit.  Standing is evaluated as of the time the suit is filed.  *See Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999) ("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent . . .").  Later events, like for instance whether the agency eventually responds to the FOIA request, implicate the related doctrine of mootness.

      That CREW has adequately alleged a past injury-in-fact, however, does not in of itself give CREW standing to seek prospective relief.  *See O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.")  When a party seeks prospective relief, such as a declaratory order invalidating an agency policy, it must show that it is likely to suffer a future injury.  *See Lyons*, *supra*, 461 U.S. at 109 (noting plaintiff must allege that he is "realistically threatened by a repetition of his [past] experience" to have standing to seek injunctive relief); *Wagshal v. Foster*, 307 U.S. App. D.C. 382, 28 F.3d 1249,

1251 (D.C. Cir. 1994), *cert. denied*, 514 U.S. 1004 (1994) (finding plaintiff "lack[ed] standing to seek . . . an injunction . . . [where he had] alleged no likelihood whatever that he himself [would] again suffer the alleged injury." (citing *Lyons*, *supra*.)); *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990) ("To establish a present case or controversy in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer future injury from defendant's threatened illegal conduct." (citing *Lyons*, *supra*.)).  *See also* 15 MOORE'S FEDERAL PRACTICE, § 101.61[6][b] (Matthew Bender 3d ed.) ("A plaintiff who seeks declaratory and injunctive relief must show . . . [that he] is likely to suffer future injury.").  This is where CREW's allegations falter.

In regards to future injury, CREW claims that it "is subject to a continuing injury" because it "will continue to use the FOIA to gain access to agency records that relate to the propriety of government activity." Plt.'s Opp'n at 10.  CREW seems to reason that it will be injured in the future, as long as the DHS continues its "policy of document destruction," because its future FOIA requests will be fruitless.  *See id*. at 10-11 ("[F]or any future [FOIA] request, CREW is at the complete mercy of the Secret Service[.]").  This will, as explained above, likely frustrate CREW's "ability to provide full, accurate, and current information to the public."  2d Am. Compl. ¶ 6.

These alleged future injuries – while certainly plausible – are too speculative and remote at this point to give CREW standing to seek prospective relief.  CREW, by its own account, "is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." 2d Am. Compl. at ¶ 4.  To "advance its mission," CREW "uses a combination of research, litigation and advocacy [work]."  *Id*.  But while CREW may allege that FOIA requests comprise a "part of its research" work, *see id*. at ¶ 4, nothing in the record before the Court suggests how frequent these requests are made, which

agencies are subject to these requests, and whether (or when) CREW expects to file future FOIA requests. Most notably, CREW does not allege anywhere in its complaint or opposition brief that it has a FOIA request pending with the DHS or that it intends to file a specific FOIA request with the DHS for WAVES records in the near future. Without this information, the Court cannot say that the alleged future injury is either real or imminent. That CREW may one day file another FOIA request with the DHS does not represent a cognizable, palpable injury which presents a case or controversy for the Court to consider.[5]

As the DHS notes in its motion, another judge on this court reached nearly the same result in an analogous situation. In *American Historical Association v. National Archives And Records Administration*, the plaintiffs, a group of research organizations, individual researchers and public interest organizations, sought "access to former President Ronald Reagan's presidential records, which they claim[ed] [were] being improperly withheld." 310 F. Supp. 2d 216, 218 (D.D.C. 2004). The plaintiffs sought, *inter alia*, a declaratory judgment that Executive Order No. 13,233, which purported to "implement" the Presidential Records Act,[6] was unlawful. *Id*. at 218, 224-25.

Judge Kollar-Kotelly held that the plaintiffs lacked standing to challenge the lawfulness of the executive order. In reaching this decision, she explained that plaintiffs had not "properly demonstrate[d] [a] future injury in fact that [wa]s imminent and not conjectural and hypothetical." Central to Judge Kollar-Kotelly's injury analysis was the fact that the plaintiffs had "no outstanding

---

[5] Although CREW alleges that it "was denied its right to notice and the opportunity to comment on the proposed destruction of agency records," 2d Am. Compl. at ¶ 48, it completely fails to address the DHS's argument that this procedural shortcoming "fails provide CREW with standing to pursue an injunction," Def.'s Mot. Dismiss at 13.

[6] *See* 44 U.S.C. §§ 2201-2207.

requests" for records and that they had, by that point, been given "access to [nearly] all the Reagan presidential records." 310 F. Supp. 2d at 227-28. She explained that while there was:

> a significant likelihood that Plaintiffs will again seek access to presidential records, and face indeterminate delays in accessing them. . . . the Court cannot find that this future injury is sufficiently imminent, and not conjectural and hypothetical. . . . This Court . . . is not prescient, and cannot know at this point in what way the facts will reveal themselves when Plaintiffs themselves, or indeed other interested parties, seek the records of a different president.

*Am. Historical Ass'n*, 310 F. Supp. 2d at 228.

The same shortcoming Judge Kollar-Kotelly identified in *American Historical Association* is present here. The Court cannot discern when, if ever, CREW will seek access to WAVES records in the DHS's possession. While there is, admittedly, a reasonable possibility that CREW will seek these records in the future, this presumption is not enough to establish an imminent, non-speculative injury-in-fact.[7] Accordingly, the Court finds that based on this record CREW does not have standing to seek prospective declaratory or injunctive relief with regards to claim four in the second amended complaint.

### III    Scope of Judicial Review[8]

The DHS asserts that claim four "should be dismissed for lack of subject matter jurisdiction, to the extent that the claim seeks an order that either <u>prohibits</u> [the] DHS from removing records

---

[7] Unable to allege a cognizable future injury-in-fact, CREW also fails to satisfy the third element of standing – redressability. The third element of constitutional standing requires CREW to demonstrate that its alleged injury will likely be redressed by a favorable decision. *Steel Co.*, *supra*, 523 U.S. at 103. Prospective relief, like a declaratory judgment, will not redress CREW's past injuries.

[8] Although the Court's conclusion that CREW lacks standing is by itself sufficient to render claim four nonjusticiable, the Court will nonetheless address the issue of FRA preclusion as an alternative basis for limiting the claim.

from its system or requires [the] DHS to retrieve records from the White House, because there is no applicable waiver of sovereign immunity." Reply In Support of Defendant's Motion To Dismiss Claim Four, 3 (emphasis added). Relying on the D.C. Circuit's opinion in *Armstrong v. Bush*, the DHS argues "that APA claims seeking the kind of injunctive relief that CREW seeks are precluded by the FRA." *Id*. "This preclusion," the DHS reasons, "renders the APA's waiver of sovereign immunity inapplicable, and because the FRA does not waive the government's sovereign immunity, there is no applicable waiver. . . . [and] the Court lacks jurisdiction." *Id*. at 4.[9] According to the DHS, if agency records have been improperly removed, only "the FRA's detailed and exclusive administrative enforcement system" can remedy the violation. *See* Motion To Dismiss Claim Four of Plaintiff's Second Amended Complaint, 6. The Court agrees.

**A**

The Federal Records Act refers to a series of statutes that collectively govern the creation, management, and disposal of records by federal agencies.[10] *See* 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. *See generally Armstrong v. Executive Office of the President*, 288 U.S. App. D.C. 38, 1 F.3d 1274, 1278-79 (D.C. Cir. 1993) (*Armstrong II*); *American Friends Service Committee v. Webster*, 231 U.S. App. D.C. 265, 720 F.2d 29, 36-37 (D.C. Cir. 1983). This series of statutes "establish[es] a unified system for handling the 'life cycle' of federal records -- covering

---

[9] In making this argument, the DHS draws a distinction between suits that seek declaratory relief versus those that seek injunctive relief, explaining that the D.C. Circuit has "emphatically *reject*[*ed*]" the notion that a private litigant may use the APA to seek "injunctions against the improper removal of records or for their retrieval." Reply Br. at 4 (emphasis in original).

[10] For "the purposes of this motion" only, the "DHS assumes that the documents at issue are records under the Federal Records Act and subject to FOIA." Deft.'s Reply Br. at 2 n.1.

their creation, maintenance and use, and eventually their disposal by either destruction or deposit for preservation." *American Friends*, 720 F.2d at 36. "[T]he FRA reflects a congressional intent to ensure that agencies adequately document their policies and decisions, and that their records management programs strike a balance 'between developing efficient and effective records management, and the substantive need for Federal records.'" *Armstrong I*, 924 F.2d at 292 (quoting S. Rep. No. 94-1326, 94th Cong., 2d Sess. 2 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News 6150, 6150-51) (other citations omitted); *see also* 44 U.S.C. § 2902 (enumerating the seven "goals" of the FRA).

The basic unit of "government information" contemplated by the FRA is the "record," James Lewis, Note, *White House Electronic Mail and Federal Recordkeeping Law: Press "D" To Delete History*, 93 MICH. L. REV. 794 (Feb. 1995), which includes "all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics," 44 U.S.C. § 3301. These materials qualify as records if they are "made or received by an agency . . . in connection with the transaction of public business" and are "preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them." *Id*. § 3301.

No record may be "alienated or destroyed" apart from the FRA's exclusive disposal provisions. *See id*. § 3314; *Armstrong I*, 924 F.2d at 285. The Archivist of the United States and the head of each federal agency play crucial and somewhat symbiotic roles under the FRA's record retention scheme.

The FRA imposes a number of requirements on each federal agency head. *See* 44 U.S.C. §

3101 *et seq*. The head of each agency must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency," *id*. at § 3101, and "establish safeguards against the removal or loss of records he determines to be necessary and required by regulations of the Archivist," *id*. at § 3105. The agency head is also required to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency." *Id*. at § 3302. Should it "come to his attention" that records in the agency's custody are (or may be) "unlawful[ly] remov[ed], defac[ed], alter[ed], or destr[oyed]," the agency head is required to "notify" the Archivist. *Id*. at § 3106.

The Archivist, meanwhile, acts in concert with the various federal agencies and agency heads. The FRA mandates that the Archivist must "provide guidance and assistance to Federal agencies with respect to . . . ensuring proper records disposition," 44 U.S.C. § 2904(a), "promulgate standards, procedures, and guidelines with respect to records management," *id*. at § 2904(c)(1), and "conduct inspections or surveys of the records and the records management programs and practices within and between Federal agencies," *id*. at § 2904(c)(1). If the Archivist discovers that any provision of the FRA "has been or is being violated," the Archivist must notify the agency "of the violation and make recommendations for its correction." *Id*. at § 2115(b). If the agency fails to implement "satisfactory corrective measures . . . within a reasonable time," the Archivist must "submit a written report of the matter to the President and the Congress." *Id*.

A document that qualifies as a federal record may not, as explained above, be discarded by agency fiat. *See Armstrong II*, 1 F.3d at 1278. Instead, both the Archivist and agency head participate in the threshold decision whether to preserve a record. *See* Lewis, *supra*, at 801. This

is normally accomplished in a two-part process. First, the agency will submit a list of records to the Archivist that it proposes should be discarded. *Id*. at 1279; 44 U.S.C. § 3303. If the Archivist agrees that the records do not "have sufficient administrative, legal, research, or other value to warrant their continued preservation," the Archivist may, after providing an opportunity for notice and comment, "empower the agency to dispose of [the] records." *Id*. at § 3303a(a).[11] With the Archivist's blessing, the agency may properly dispose of the records.

In addition to acting as the gatekeeper for record disposal, the Archivist may assume an enforcement role if records are being disposed of contrary to the FRA. Should the Archivist learn "of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of [an] agency," *id*. at § 2905(a), the Archivist "must notify the agency head of the problem and assist the agency head in initiating an action through the Attorney General for the recovery of wrongfully removed records or for other legal redress." *Armstrong II*, 1 F.3d at 1279 (citing *id*. at § 2905(a)).[12] If the agency head is recalcitrant in remedying the infraction, the Archivist must ask the Attorney General to initiate action and then notify Congress of the request. *Id*. Notably, the FRA specifies only these enforcement roles and does not provide an express cause of action for private litigants to redress the unlawful removal of agency records. *See* Lewis, *supra*, at 802 (footnotes omitted).

**B**

---

[11] In some circumstances an agency "may jettison certain common types of records pursuant to disposal schedules promulgated in advance by the Archivist." *Armstrong II*, 1 F.3d at 1279 (citing 44 U.S.C. § 3303a(d)).

[12] The FRA imposes symmetrical notification requirements on both the Archivist and agency head. In the event that either one learns of the improper destruction of records they must notify the other. *See* 44 U.S.C. §§ 2905(a) & 3106.

In *Armstrong I*, which both parties seem to agree is directly on point, the Court of Appeals examined the availability and extent of judicial review under the APA. Three aspects of the court's decision are controlling.

First, *Armstrong I* held that a district court is authorized to review the adequacy of an agency's recordkeeping guidelines and directives under the APA. *Armstrong I*, 924 F.2d at 293 ("[W]e hold that the district court was authorized to hear plaintiffs' APA claim that the [National Security Council's] recordkeeping guidelines and directives do not adequately describe the material that must be retained as 'records' under the FRA."); Lewis, *supra*, at 821 ("[T]he D.C. Circuit ruled in *Armstrong I* that courts may consider whether agency recordkeeping guidelines and directives meet the mandate of the FRA."). The *Armstrong I* court rejected the notion that the FRA implicitly precluded judicial review of the adequacy of an agency's recordkeeping guidelines. *Armstrong I*, 924 F.2d at 297 ("[T]he APA authorizes judicial review of plaintiffs' claim that the [[National Security Council's] recordkeeping guidelines and directives are arbitrary and capricious.").

In this case, CREW claims that the DHS's record disposal policy does not "conform to the requirements of the FRA." 2d. Am. Compl. at ¶ 45. In particular, CREW claims that the Secret Service's "policy" of "eras[ing] from its computer all WAVES records" is "unlawful" "because it permits the disposal of records that have not been subject to a disposition schedule that has been subject to public comment and approved by the Archivist." *Id*. at ¶¶ 46, 48. The crux of CREW's FRA claim seems to be that the DHS has not received the Archivist's permission before deleting certain agency records. *See id*. This would, ostensibly, violate sections 3303 and 3303a of the FRA, which require the Archivist to determine – before the records are discarded – that they "do not . . . have sufficient administrative, legal, research, or other value to warrant their continued

preservation." 44 U.S.C. § 3303a(a). This, in turn, would deprive the public of an opportunity to comment on the proposed destruction of records.

Second, *Armstrong I* held that a district court is authorized to review whether the Archivist or the head of an agency have properly performed their FRA enforcement duties. 924 F.2d at 296 ("On the basis of such clear statutory language mandating that the agency head and Archivist seek redress for the unlawful removal or destruction of records, we hold that the agency head's and Archivist's enforcement actions are subject to judicial review."). In reaching this decision, the *Armstrong I* court noted both "the agency head and [the] Archivist are required to take action to prevent the unlawful destruction or removal of records." *Id.* at 296 n.12. If they failed to initiate remedial action in a timely matter, "private litigants may sue under the APA to require them to do so." *Id*. While CREW does not, in its second amended complaint, explicitly allege that the secretary of the DHS has shirked his enforcement obligations under the FRA, *see* 44 U.S.C. § 3106,[13] the implication from reading the complaint in its entirety is that, according to CREW at least, he has. *See* 2d. Am. Compl. at ¶ 46. Under *Armstrong I*, the APA permits judicial review of an agency head's enforcement obligations, as they are defined by the FRA.[14]

---

[13] Section 3106 provides in relevant part:

> The head of each Federal agency <u>shall</u> notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency of which he is the head that shall come to his attention and with the assistance of the Archivist <u>shall</u> initiate action through the Attorney General for the recovery of records he knows or has reason to believe have been unlawfully removed from his agency, or from another Federal agency whose records have been transferred to his legal custody.

44 U.S.C. § 3106 (emphasis added).

[14] CREW does not allege that the Archivist has violated the FRA.

Third, despite the FRA's categorical precept that agency records may only be disposed of in accordance with its disposal provisions, *see* 44 U.S.C. § 3314, the *Armstrong I* court held "that the FRA precludes direct private actions to require [] agency staff [to] comply with the agency's recordkeeping guidelines." 924 F.2d at 297. Invoking the Supreme Court's decision in *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 148, 100 S. Ct. 960 (1980), the court noted that the FRA "'establishes only one remedy for the improper removal of a "record" from the agency': the agency head, in conjunction with the Archivist, is required to request the Attorney General to initiate an action to recover records unlawfully removed from the agency." *Armstrong I,* 924 F.2d at 294 (quoting *Kissinger*, *supra*, 445 U.S. at 148). "Because it would clearly contravene [the] system of administrative enforcement to authorize private litigants to invoke federal courts to prevent an agency official from improperly destroying or removing records," the court "h[e]ld that the FRA precludes judicial review of such actions." *Id*. at 294 (citation omitted). Thus, while a private litigant may challenge an agency's recordkeeping guidelines, it is up to the Archivist and agency head "to prevent the unlawful removal or destruction of records." *Id*. As the Supreme Court explained in *Kissinger*: "Congress expressly recognized the need for devising adequate statutory safeguards against the unauthorized removal of agency records, and opted in favor of a system of administrative standards and enforcement." *Kissinger*, 445 U.S. at 149. It is not for the judiciary to supplant this enforcement scheme.

Given the firm language in *Armstrong I*, CREW is precluded from suing the DHS to enjoin the agency from acting in contravention of its own recordkeeping guidelines or the FRA. The Court may not, in other words, prohibit the DHS from improperly discarding agency records, *see Armstrong I*, 924 F.2d at 294 (noting "private litigants" may not "invoke federal courts to prevent

an agency official from improperly destroying or removing records"), or require the DHS to retrieve records that have already been transferred to the White House, *see Kissinger*, 445 U.S. at 148 (noting "the Federal Records Act establishes only one remedy for the improper removal of a 'record' from the agency. The head of the agency is required . . . to notify the Attorney General"). If any remedy is to be had, it will come from the statutory safeguards devised by Congress.

In conclusion, the APA authorizes judicial review of a claim – properly pleaded, of course – that the DHS's recordkeeping policies are arbitrary and capricious and do not comport with the requirements of the FRA. The APA also authorizes the Court to entertain a claim that the head of the DHS or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency. The FRA, however, precludes a private action, like this one, that seeks to require agency staff to comply with the agency's recordkeeping guidelines or the FRA, or to retrieve records lost. This relief is only available via the FRA's enforcement scheme.[15]

## CONCLUSION

The Department of Homeland Security's motion to dismiss claim four is granted. The Court finds that based on this record CREW does not have standing to seek prospective declaratory or injunctive relief with regards to claim four in the second amended complaint. Even if CREW was

---

[15] While the FRA precludes a private action seeking to require an agency to comply with its recordkeeping guidelines, in some circumstances the Court may, temporarily, order an agency to preserve records until the Archivist is able to ensure that federal records are not destroyed. *See, e.g.*, *Armstrong v. Executive Office of President*, 810 F. Supp. 335, 349 (D.D.C. 1993) ("[T]his Court does have jurisdiction to authorize the preservation of these [agency] materials until the Archivist can ensure that federal records are not destroyed."), *aff'd*, *Armstrong II*, 1 F.3d at 1288 n.12 ("[T]he district court used its discretion appropriately in insisting upon a full-scale method for preventing the records' destruction until the agencies came up with new, adequate records management guidelines to replace the ones voided by the district court[.]").

able to satisfy the requirements of constitutional standing, it is precluded, based on the D.C. Circuit's decision in *Armstrong v. Bush*, from seeking an injunction that would require agency staff to comply with agency recordkeeping guidelines or the FRA, or to retrieve visitor records transferred to the White House. An order consistent with this memorandum opinion will be issued on this same date.

Signed by Royce C. Lamberth, United States District Judge, December 17, 2007.